## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

IN RE MATTER OF THE *EX PARTE* APPLICATION OF THE RENCO GROUP INC. AND THE DOE RUN RESOURCES CORPORATION FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Applicants.

Case No. 22-MC-21115-JAL

## OPPOSITION TO
## RODRIGUEZ TRAMONT + NUÑEZ, P.A. AND NAPOLI SHKOLNIK PLLC'S
## MOTION  FOR LEAVE TO INTERVENE, AND FOR A PROTECTIVE ORDER

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

PROCEDURAL HISTORY ................................................................................................1

ARGUMENT .......................................................................................................................5

    A. **The Law Firms Cannot Establish the Requirements for Intervention as a Matter of Right** ...........................................................................................................5

        1.   The Motion to Intervene Is Untimely ...........................................................6

        2.   The Law Firms Do Not Have a Requisite Interest, So It Doesn't Matter How They are Situated or Who is Representing It................................................7

            a.   Their Clients' Privilege Does Not Amount to an Interest Held by the Law Firms.................................................................................................7

            b.   The Law Firms Have No Legal Interest in the § 1782 Proceeding ..........8

            c.   The Law Firms Have No Property or Transaction at Stake Here ............9

            d.   With No Legal Interest, It Doesn't Matter How the Law Firms Are Situated or Represented .......................................................................9

    B. **The Law Firms Do Not Have Standing to Ask The Court to Vacate its Order to Take Discovery Pursuant to 28 U.S.C. § 1782, Would Lack Any Grounds to Do So if They Had Standing, and Have Waited Too Long To Ask** .....................11

    C. **The Court Should Not Issue a Protective Order Because the Companies Do Not Seek Privileged Information About Current Plaintiffs**...................................12

CONCLUSION .................................................................................................................16

CERTIFICATE OF SERVICE .........................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Chiles v. Thornburgh*,

    865 F.2d 1197 (11th Cir. 1989) ................................................................5

*Drummond Co., Inc. v. Conrad & Scherer, LLP*,

    885 F.3d 1324 (11th Cir. 2018) ............................................................. 15

*Equal Emp. Opportunity Comm'n v. Sirdah Enterprises, Inc.*,

    2015 WL 12630686 (N.D. Ga. 2015) ..................................................... 11

*Fox v. Tyson Foods, Inc.*,

    519 F.3d 1298 (11th Cir. 2008). ..............................................................6

*In re Clerici*,

    481 F.3d 1324 (11th Cir. 2007) ...............................................................9

*In re Grand Jury Subpoena*,

    831 F.2d 225 (11th Cir. 1987) ............................................................... 14

*In re Sealed Search Warrant & Application for a Warrant*,

    2020 WL 6274987 (S.D. Fla. 2020)..........................................................8

*Intel Corp. v. Advanced Micro Devices, Inc.*,

    542 U.S. 241 (2004)......................................................................... 12, 13

*Lyttle v. Trulieve, Inc.*,

    2021 WL 2379395 (M.D. Fla. June 2021) ...............................................6

*MCC Mgmt. of Naples, Inc. v. Arnold & Porter, LLP*,

    2008 WL 4642835 (M.D. Fla. 2008) ........................................................8

*Purcell v. BankAtlantic Fin. Corp.*,

    85 F.3d 1508 (11th Cir. 1996) .................................................................5

*Smith v. Powder Mountain, LLC*, No.,

    2009 WL 10698489 (S.D. Fla. 2009) ...................................................................................8

*United States v. Eighty Thousand Six Hundred Thirty-Three Dollars ($80,633.00) in United States Currency*,

    2006 WL 8457242 (M.D. Ala. 2006) .............................................................................. 14

*United States v. El Paso Co.*,

    682 F.2d 530 (5th Cir. 1982) ......................................................................................... 14

*United States v. Hooker Chems. & Plastics Corp.*,

    749 F.2d 968 (2d Cir.1984) ............................................................................................ 10

*Wesolek v. Wesolek*,

    2021 WL 3572221 (M.D. Fla. 2021) ............................................................................ 11

*Worlds v. Dep't of Health & Rehab. Servs., State of Fla.*,

    929 F.2d 591 (11th Cir. 1991) .........................................................................................7

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,

    142 S. Ct. 2078, 2088 (2022) ........................................................................................ 13

**Statutes**

Fla. Stat. § 90.502(2)-(3) (2022)..............................................................................................8

**Rules**

Fed. R. Civ. Pro. 24(a) ....................................................................................................... 5, 11

L.R. 26.1(e)(2)(C) ................................................................................................................ 13

The Renco Group Inc. and The Doe Run Resources Corporation (collectively "the petitioners" or "the companies") oppose the Rodriguez Tramont + Nuñez, P.A. and Napoli Shkolnik PLLC's (collectively "the law firms") motion, [ECF No. 20] and state:

## I.  INTRODUCTION

The law firms—not on behalf of any party to any action anywhere, but on their own behalf[1]—come to this Court *nine months* after the Court properly granted petitioners' request for discovery under 28 U.S.C. § 1782, hoping to prevent the taking of discovery for use by Peruvian criminal authorities investigating a long-standing pattern of misconduct in that country by the discovery target, Victor Careaga, and the law firms that have employed him. Not being a party in interest, the law firms have no right to intervene. There is no basis to overturn the § 1782 order, having long ago been granted on more than sufficient grounds — even if the law firms had standing to ask, which they do not. The theoretical privilege concerns raised in the proposed motion for protective order—which seeks to prohibit document production relating to current plaintiffs in a separate action—having been mooted, there is nothing for a protective order to protect.

## II.  PROCEDURAL HISTORY

Almost a year ago, on April 12, 2022, the petitioners filed an application for an Ex Parte Order from this Court, pursuant to 28 U.S.C. § 1782, authorizing them to take discovery from Victor Careaga, a resident of the Southern District of Florida.[2] The petition was for

---

[1] The Notice of Appearance, ECF No. 14, filed by counsel for the law firms, makes this clear: "PLEASE TAKE NOTICE that Paulino A. Nuñez Jr., Esq., of the law firm of Rodriguez Tramont & Nuñez, P.A., hereby appears as counsel for Intervenors, Rodriguez Tramont & Nuñez, P.A. and Napoli Shkolnik PLLC." Likewise, their motion (like its prior, rejected iterations) seeks intervention of the law firms and no one else. ECF No. 20 at 8-9.

[2] Ex Parte Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 and Incorporated Memorandum of Law, ECF No. 1 ("the § 1782 application.")

discovery in aid of Peruvian criminal authorities in their investigation into wrongdoing in Peru, implicating conduct by Careaga and the law firms that have employed or worked with him over the years[3] in connection with toxic tort cases by Peruvian plaintiffs proceeding in the Eastern District of Missouri.[4]

On June 8, 2022, this Court granted the petition to depose Careaga and unsealed the petition. ECF Nos. 8 and 7. On July 13, 2022, the law firms filed a motion for an anti-suit injunction, pursuant to the All-Writs Act, in the Eastern District of Missouri seeking to close down the § 1782 process and to shut down discovery in a malicious prosecution action pending in Florida state court against Careaga and yet another law firm. *See J.Y.C.C., et al. v. The Doe Run Resources Corporation, et al.*, 15-cv-01704-RWS, ECF No. 671, 672.

Although petitioners were not bound to postpone proceedings here to entertain the law firms' All Writs motion in Missouri, for the sake of good order and to avoid any irremediable prejudice, they agreed to wait to serve Careaga with a subpoena for a second time "*pending the Missouri court's ruling on Plaintiff's Motion for Anti-Suit Injunction.*" *See* Exhibit A, Notice Informing the Court of Holding Subpoena Duces Tecum and Postponing Dep. and Doc. Produc., *J.Y.C.C.,* ECF No. 680.

The anti-suit injunction motion was fully briefed and argued in a joint hearing on

---

[3] Careaga is a disbarred Florida lawyer.

[4] The cases, in the Eastern District of Missouri, are *J.Y.C.C., et al v. Doe Run Resources, Corp., et al*, Case. No. 4:15-cv-01704-RWS, presided by the Hon. Rodney W. Sippel, and *A.O.A., et al. v. Ira L. Rennert, et al.*, Case No. 4:11-CV- 44-CDP, presided by the Hon. Catherine D. Perry (together the "Missouri lawsuits"). Although each case involves many plaintiffs, the matters are not class actions. *See* Tr. of Status and Mot. Hr'g before J. Sippel, Dec. 17, 2020. ECF. No. 458. ("The COURT: . . . [A]lthough each case involves many plaintiffs, the matters are not class actions. And when the cases were removed to the district, I'm sure you've seen, appreciated the fact that I've separated each of them out, because this is not a class action. Each plaintiff's case will stand or fall on their own merits.") p. 4:18-22.

October 28, 2022, in front of Judges Sippel and Perry. Judge Sippel requested petitioners provide this Court the transcript of those proceedings, and they did so. ECF No. 12. Judge Sippel denied the anti-suit injunction in an order issued on January 26, 2023, and, at Judge Sippel's request, the order was also filed in this matter. ECF 13-1. In the order, Judge Sippel held that the companies "have the right to seek discovery in aid of the criminal investigation underway in Peru" in the Florida case. *Id*. at 4. He directed that ". . . Defendants may not ignore my rulings that limited any discovery *from current plaintiffs* regarding Defendants' allegations of the fraudulent recruitment of plaintiffs." *Id*.

On January 30, 2023, the companies informed Careaga of their intent to take his long-delayed deposition and asked him to provide a convenient date. *See* correspondence to Careaga attached as Exhibit B. Careaga responded that "Tuesday March the 7th would be my preference, at 10:00 a.m." *See* Exhibit C, Careaga's correspondence. On February 1, 2023, the companies served Careaga with the subpoena duces tecum to testify at deposition.[5] A copy of the subpoena is attached as Exhibit D. Careaga accepted service via email on February 9, 2023, stating that he "ha[s] agreed to the deposition on March 7th at 10:00 a.m." *See* Exhibit E.

Meanwhile, the law firms filed a motion to intervene, for a protective order, and a complaint in intervention on February 15, 2023. *See* ECF No. 15-18. Magistrate Lauren F. Louis issued a paperless order striking the motion to intervene, declaration, motion for a protective order, and memorandum in support of the motion for multiple procedural failings. *See* Paperless Order, ECF No. 19. On February 27, 2023, the law firms filed the motion at issue here. ECF No. 20.

---

[5] In accord with Judge Sippel's order the companies also provided plaintiffs' counsel in the Missouri cases, including the law firms, a copy of the Careaga subpoena.

There followed a meet-and-confer conference with petitioners' counsel (conducted by telephone on February 27, 2023), followed by a flurry of correspondence from the law firms. While steadfastly insisting that they did not represent Careaga—an insistence repeatedly echoed by Careaga—the law firms implored petitioners to forego the deposition. While pointing out that the law firms' papers are fatally flawed, petitioners counsel *did* offer to discuss the document requests in the Careaga subpoena one-by-one. The law firms declined. Beyond the question of documents, petitioners counsel also pointed out that, even if the law firms did represent Careaga—they don't—it was impossible for them to be objecting to a deposition *examination* where the first question hadn't yet been asked. Over the following days, petitioners' counsel reiterated these positions numerous times. Furthermore, and crucially, they clarified for Careaga that *he needn't produce any documents related current Missouri plaintiffs*. In an abundance of caution, despite the law firms' lack of any role in these proceedings, petitioners' counsel shared that communication to Careaga, along with Careaga's acknowledgment, with the law firms, thus assuring *them* no current Missouri plaintiffs were implicated in Careaga's production.[6] A selection of this correspondence is attached as Composite Exhibit F.

In any event, having filed no motions of any sort with this Court, Careaga simply chose not to appear at his deposition. A copy the certificate of non-appearance is attached as Exhibit G. Careaga's contumacious conduct is the subject of a Motion to Compel filed March

---

[6] Petitioners' counsel need hardly have bothered. Careaga has, throughout, been sharing all communications and coordinating all action with his bosses at the law firms.

9, 2023.[7] ECF No. 21.

### III. ARGUMENT

The law firms, as demonstrated below, cannot intervene here because they cannot satisfy the requirements of Rule 24. The law firms cannot vacate the Court's order granting the § 1782 petition because they lack the standing to ask, because there aren't grounds to do so, and because they have waited too long. And even if the law firms had properly sought a protective order on behalf of some party with a privilege to protect—they haven't—any theoretical privilege concerns of current Missouri plaintiffs regarding Careaga's document production have been mooted, and there cannot rationally be an objection to an examination that hasn't yet been begun.

#### A. The Law Firms Cannot Establish the Requirements for Intervention as a Matter of Right

The law firms have sought intervention on their own behalf, not on behalf of any party they represent in the Missouri lawsuits or anywhere else. And they have sought intervention only under Fed. R. Civ. Pro. 24(a), Intervention of Right.[8]

---

[7] Careaga's conduct was bad enough on his own behalf. When properly understood as Careaga engaging in self-help on behalf of his bosses at the law firms, it is all the more egregious.

[8] The law firms having declined here to move in the alternative for permissive intervention under Rule 24(b), no detailed analysis of that rule seems required. But it's clear the law firms would fare no better under that provision, which permits—but does not require—intervention by a party who "has a claim or defense that shares with the main action a common question of law or fact."

If there is "no right to intervene under Rule 24(a), it is wholly discretionary with the court whether to allow intervention under Rule 24(b). *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996). A party seeking permissive intervention under Rule 24(b)(1)(B) "must show that: (1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common." (*citing Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989).) *Lyttle v. Trulieve, Inc.*, 2021 WL 2379395, at *3 (M.D. Fla. June

A movant must establish the following requirements to satisfy Rule 24(a) and be permitted to intervene as of right:

> (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.

*Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302–03 (11th Cir. 2008).

The law firms fail on every test.

### 1.  The Motion to Intervene Is Untimely

The law firms have known that the companies intended to take Careaga's deposition since the § 1782 application was granted nine months ago, on June 8, 2022, and unsealed the same day. ECF Nos. 8 and 9. If they wanted relief from this Court, they could and should have appeared—albeit on behalf of some actual party in interest, not merely on their own behalf—then or shortly thereafter.[9] Judge Sippel removed all doubt the deposition would go forward with his January 26 order. The law firms have known the precise day and time of the deposition since Careaga was, by his agreement, subpoenaed for the March 8 deposition on February 1, 2023.[10]

---

2021). "Significantly, a district court maintains discretion to deny intervention even if each of these requirements is met . . ." *Id*. Here, the attempt to intervene is not timely, as set forth *infra*. And the "main action" where the law firms might raise a claim or defense is the criminal proceeding in Peru, which this § 1782 action exists to serve.

[9] In fact, the law firms have not even bothered to appear on behalf of the Rodriguez firm's employee, discovery target Careaga. Careaga, and the law firms, have instead steadfastly maintained that Careaga appears before this Court pro se.

[10] And likely before then, unless one imagines Careaga kept the information to himself at work. Any notion that Careaga did not work closely with, and likely at the direction of, the law firms strains credulity. *See generally*, Mot. to Compel the Dep. of Victor Careaga and Incorporated Mem. of Law, filed March 9, 2023. ECF No. 21.

Yet, they chose to wait until the eleventh hour—and to derail Careaga's deposition—before litigating their concerns in any fashion before the court that authorized the deposition. This was no accident. As the law firms know, with respect to the Peruvian criminal investigation for which this § 1782 discovery was sought nearly a year ago, time is of the essence. The progress of the investigation is dependent, in part, on the discovery to be gathered from Careaga, who operated at the center of criminal activities there. Criminal investigations do not last forever, and if the prosecutor is denied useful evidence, the Peruvian investigation could be concluded without it being considered. Delay, especially strategic delay, is not rewarded by Rule 24(a).

### 2. The Law Firms Do Not Have a Requisite Interest, So It Doesn't Matter How They are Situated or Who is Representing It

It is well-established that in determining sufficiency of interest, this Circuit requires that an intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding. This interest has also been described as a direct, substantial, legally protectable interest in the proceedings. *Worlds v. Dep't of Health & Rehab. Servs., State of Fla.*, 929 F.2d 591, 594 (11th Cir. 1991). The law firms cannot establish that interest.

#### a. *Their Clients' Privilege Does Not Amount to an Interest Held by the Law Firms*

Thus, in the first instance, the law firms' seeking intervention on their own behalf is a non sequitur. The sole gravamen of their papers is that the discovery granted by the Court might invade an attorney-client privilege belonging to current plaintiffs in the Missouri lawsuits. That's nonsense, for reasons set forth here, but the law firms have not, in fact, filed a motion for any one of those *plaintiffs* to intervene.

The law firms' claims that they seek to intervene, on their own behalf, to protect attorney-client privilege, are unavailing. Florida law makes it clear that the attorney client

7

privilege belongs to the client and dictates that the privilege may be claimed by "(a) [t]he client

. . . (e) [t]he lawyer, but only on behalf of the client." *See* Fla. Stat. § 90.502(2)-(3) (2022). The

law firms themselves cannot invoke the attorney client privilege on their own behalf and they

are not entitled to a remedy, even if their clients or former clients' rights are violated. *In re*

*Sealed Search Warrant & Application for a Warrant*, 2020 WL 6274987, at *3 (S.D. Fla. 2020)

(quoting *MCC Mgmt. of Naples, Inc. v. Arnold & Porter, LLP*, 2008 WL 4642835, at *2 (M.D.

Fla. 2008)). Nor is it permissible for the law firms to invoke the attorney client privilege,

acting on their own behalf, as a means to protect themselves from disclosing unfavorable

information—which is the self-evident goal here. *See Smith v. Powder Mountain, LLC*, No.,

2009 WL 10698489, at *5 (S.D. Fla. 2009) (noting that attorneys, acting on their own behalf,

cannot assert the attorney client privilege as a means of protecting themselves from disclosing

evidence that might be harmful to them).

### b.  *The Law Firms Have No Legal Interest in the § 1782 Proceeding*

Likewise, the law firms, for their own part, cannot demonstrate the requisite Rule 24

interest because they do not possess an interest equivalent to that of a real party in interest in

the § 1782. Aside from an ill-founded concern that their present *clients'* information may be

sought by the companies, something addressed with law firms on several occasions by

petitioners' counsel,[11] they have failed to articulate their own interest in the criminal

---

[11] On February 27, 2023, at the meet and confer regarding the motion to intervene, petitioners' counsel explained to the law firms that no documents related to current plaintiffs were being sought. He also assured them that—although privilege objections to an examination that had yet to begin were nonsensical—he had constructed his line of questions for Careaga expressly not to invade any privilege. In addition, counsel told the law firms he was ready to go through the Careaga subpoena document requests item by item and see how the companies might limit or revise the requests. The law firms declined to engage in that process.

8

investigation being commanded by Peruvian authorities.[12] The law firm themselves can claim no direct, substantial, or *legally protectable* interest in sidetracking or stalling an official investigation being conducted by Peruvian law enforcement, the true matter at issue in the case of § 1782 discovery ordered in aid of that investigation. The level of generality that plagues the law firms' alleged interest renders it insufficient to support a claim for intervention of right.

### c.   *The Law Firms Have No Property or Transaction at Stake Here*

Furthermore, the law firms do not and cannot demonstrate an interest in the "property or transaction that is the subject of the action," as Rule 24(a) demands, because a §1782 application is not a lawsuit where a "property or transaction" is at stake. Rather, §1782 exists, and is being utilized here, so that federal courts can assist foreign proceedings—and the scope of that assistance is broad. *See generally In re Clerici*, 481 F.3d 1324, 1331 (11th Cir. 2007). The companies provided detailed and expansive evidence to the Court to support their application to take discovery under the provision, and the Court ordered they should be able to do so in aid of the Peruvian proceedings. *See* the § 1782 application.

### d.   *With No Legal Interest, It Doesn't Matter How the Law Firms Are Situated or Represented*

The third and fourth elements required for intervention of right are quickly disposed.

---

Counsel communicated with Careaga via email on March 2, 2023, that "[f]or the avoidance of doubt, let us be clear: We do not seek from you discovery specific to any plaintiff whose claim is currently pending in the Missouri litigation (the only limitation that Judge Sippel placed on discovery in the Florida matters)." In later correspondence, counsel told the law firms that "Mr. Careaga has been advised—and he has confirmed that he has been advised—that we are not seeking, and he need not produce, documents related to current plaintiffs." See Composite Exhibit F.

[12] Although it may be supposed they have the generalized interest any criminal suspect has into an investigation of his crimes, that is hardly the interest required by Rule 24(a) for intervention here, and they haven't even tried that argument.

Because the law firms do not have an interest of their own in these proceedings, it cannot matter how they are situated to protect that non-existent interest, or how the actual parties to the proceeding may protect it. The law firms insist that "Careaga cannot represent the interests of the plaintiffs whose cases are pending in Missouri" to support the contention that the law firms should intervene to adequately represent the interest of plaintiffs. ECF No. 20-1 ¶ 33. But with *no* interest in this proceeding, the law firms cannot demonstrate that any interest is inadequately protected by the single existing litigant. *See United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 984 (2d Cir.1984) (affirming denial of intervention because appellants failed to demonstrate "that their interests may be inadequately represented by the existing parties").

At bottom, the law firms' argument for intervention is so incoherent that it is actually difficult to address. In the first place, the law firms did *not* bring their motion on behalf of any of the current Missouri plaintiffs, but on the law firms' own behalf. In the second place, the companies do not, in any case, seek the allegedly privileged materials or personal information about current plaintiffs the law firms struggle to claim they are protecting. In the third place, for reassurance, the companies have repeatedly *clarified* the limits of the documents sought from Careaga, explaining those limits both to him and the law firms, so the law firms can have no doubt. (*See* n.8, supra.) In the fourth place, the law firms—despite claiming their concern for current Missouri plaintiffs' privilege—have at least twice declined offers to discuss the § 1782 subpoena's document requests item-by-item, gambling instead that they can stop the entire process. In the fifth place (as more fully discussed in the motion to compel Careaga's appearance, ECF No. 21) neither law firms, nor anyone, can logically have an objection—on privilege grounds or any other—to a question that hasn't yet been asked.

10

But this much is clear: the law firms cannot satisfy the requirements of Rule 24(a). They have no right to intervene.

### B. The Law Firms Do Not Have Standing to Ask The Court to Vacate its Order to Take Discovery Pursuant to 28 U.S.C. § 1782, Would Lack Any Grounds to Do So if They Had Standing, and Have Waited Too Long To Ask

The law firms' demand that this Court vacate its nine-month-old order granting the § 1782 petition is another nonstarter.

Firstly, the law firms—whose papers make it clear they are acting on their own behalf—do not have standing to seek that relief, because standing only exists "if the party alleges a 'personal right or privilege' with respect to the subpoenas." *Equal Emp. Opportunity Comm'n v. Sirdah Enterprises, Inc.*, 2015 WL 12630686, at *4 (N.D. Ga. 2015). *See also*, *Wesolek v. Wesolek*, 2021 WL 3572221, at *3 (M.D. Fla. 2021) (holding that "non-parties, unlike parties, have no personal interest in the scope of discovery in a pending action, and the Court is, therefore, not inclined to extend the holding to non-parties").

The law firms do not, because they cannot, even assert standing of their own to seek that relief, as they cannot allege any personal right or privilege with respect the Careaga subpoena.[13] They are adamant that they are not here for Careaga, nor does he rely on them,[14] so there's no standing there. They do not represent *former* Missouri plaintiffs who are no

---

[13] As for Careaga, the only objections he *ever* raised were that the subpoena's "subject matter" fell "squarely within the purview of the protective order entered in Missouri dated March 24, 2022" (ECF 10 ¶¶ 6–7) and that the petition should fall to the All-Writs Act anti-suit motion he adopted. Careaga told this court then that he objected "to the taking of a deposition . . . *until such time as this Court and the Missouri Federal District Court have determined the propriety of the discovery sought by the Applicants.*" ECF No. 10 ¶ 11. [Emphasis supplied.] Those judges have decided, and they've decided the Peruvian criminal discovery should proceed.

[14] Mr. Rodriguez: "[I]t's not correct that we are writing any papers for Victor Careaga. Victor Careaga is representing himself. We're not representing him in that case." October 28, 2022 Hr'g Tr., ECF No. 12-1 at 57:22-25 [Referring to these proceedings].

longer plaintiffs, whose documents Careaga *might* produce. Nor do they appear here on behalf of any *current* plaintiff—although, in any case, as discussed *infra*, current plaintiffs' concerns are not at stake.

Secondly, even if the law firms had standing to seek to overturn the Court's order, they haven't offered a single argument in opposition to the exhaustive pleadings and sworn evidence the companies submitted to obtain the § 1782 order. Judicial economy demands we not reiterate 23 pages of briefing and hundreds of pages of exhibits here. The application may be reviewed at ECF No. 1. Suffice to say the petitioners more than fulfilled the statutory prerequisites of § 1782 and more than satisfied the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). The law firms have addressed these matters not at all.

Thirdly, and lastly, if the law firms had standing—and they don't—or grounds—they don't—then the time to be heard on the § 1782 petition was nine months ago when it was granted and unsealed. Instead, the law firms chose to put all their eggs in an All-Writs Act basket in the Eastern District of Missouri, and the judges of that district rightly sent them home with an empty basket.

### C. <u>The Court Should Not Issue a Protective Order Because the Companies Do Not Seek Privileged Information about Current Plaintiffs</u>

As Careaga and the law firms have endlessly been told, the companies do not seek from Careaga any document from a current Missouri plaintiff. And, of course, the law firms understand this full well, and thus understand that their desired protective order has nothing to protect. But they persist, because the real goal here is to forestall the collection of discovery in aid of the Peruvian prosecution altogether. The proper response to even valid, properly

advanced claims that some documents may be privileged is not to shut down the inquiry in its entirety, as the law firms seek to do here.[15]

"[T]he animating purpose of § 1782 is comity: Permitting federal courts to assist foreign and international governmental bodies promotes respect for foreign governments and encourages reciprocal assistance." *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078, 2088 (2022). Leave aside for a moment the persisting problem that the law firms are here only on their own behalf, and not on behalf of any party, including any Missouri lawsuit plaintiff. The law firms' requested protective order, prohibiting this discovery wholesale, would undermine the procedural mechanism Congress enacted to "respect[] foreign nations and the governmental and intergovernmental bodies they create." *Id.* As the Supreme Court has noted, "nonparticipants in foreign proceedings [like Careaga] may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel Corp.*, 542 U.S. at 246.

In addition to mooting the law firms' supposed concern regarding document production from current plaintiffs, they have likewise been told—and as simple logic dictates—no one can possibly lodge a privilege objection to a deposition question until the

---

[15] Judge Sippel's sole directive, that discovery does not implicate current Missouri Plaintiffs, is already satisfied. Insofar as Careaga, in producing the documents demanded of him, believes any other responsive document to be subject to a privilege, he can and should do what anyone producing documents must do: prepare the relevant privilege log to catalog the privilege claims, which can then be addressed—accepted, objected to, litigated, ruled on by the Court, as may be—in the normal course, as routinely occurs in matters before this Court. *See, e.g.,* L.R. 26.1(e)(2)(C) ("This rule requires preparation of a privilege log with respect to all documents, electronically stored information, things and oral communications withheld on the basis of a claim of privilege or work product protection except the following: written and oral communications between a party and its counsel after commencement of the action and work product material created after commencement of the action.")

question is asked.[16] A deposition may not be avoided because of the possibility that a question asked there might touch on privilege. "Attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents . . . [t]he privilege must be specifically asserted with respect to particular documents." *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982). A witness may not refuse to appear on the notion that anything asked of him must necessarily be an invasion of some privilege. *United States v. Eighty Thousand Six Hundred Thirty-Three Dollars ($80,633.00) in United States Currency*, 2006 WL 8457242, at *2 (M.D. Ala. 2006) ("The assertion of the privilege may not be a blanket refusal to attend a noticed deposition and to testify or respond to a request for production of documents."). In the same way, instead of making a blanket assertion of privilege to forestall any production at all, "an attorney seeking to quash a subpoena must assert the attorney-client privilege on a document-by-document basis." *In re Grand Jury Subpoena*, 831 F.2d 225, 227 (11th Cir. 1987).

Furthermore, the law firms' motion misrepresents the use to which the petitioners will—or can—put the discovery obtained in these proceedings. They falsely state that the discovery sought here would "interfere with the progress of" the Missouri cases (*See* ECF No. 20 p. 1-2), when petitioners have submitted a sworn § 1782 application stating the discovery is for use in the Peruvian criminal matter, when the Court has granted the application for that use, *and when Judge Sippel has stated that discovery obtained in this proceeding won't be admitted in his court in any event. See* Mem. and Order, *Y.C.C., v. Doe Run Resources, Corp.,* ECF No. 718, p. 5. Equally false is their representation that Judge Sippel, "denied the discovery sought" here. *Id.* at 4. Rather, after litigation over the law firms' All Writs Act anti-suit motion before Judge

---

[16] And as they have repeatedly been assured, the line of questions for Careaga will not implicate any attorney-client privilege, because it need not do so to examine the conduct of interest in the Peruvian criminal investigation.

Sippel and Judge Perry, Judge Sippel ruled that the Eastern District of Missouri lacked the authority to constrain or prohibit proceedings in this district or in Florida state courts. Judge Sippel's order unequivocally stated that the companies "have the right to attempt to assert malicious prosecution claims against former plaintiffs and have the right to seek discovery in aid of the criminal investigation underway in Peru." ECF No. 13-1 at 4, Judge Sippel's order, filed with this Court. This is *exactly* what the companies are doing, exactly what fulfillment of the subpoena will accomplish. No one, least of all the law firms, is entitled to be "protected" from that.

Additionally, although nothing that may have happened in the Missouri's dockets *prior* to Judge Sippel's January 26 order is relevant to these proceedings, even if it were, the discovery sought here is not that same as the discovery denied by Judge Sippel's March 24, 2022 order, erroneously relied upon by the law firms in their motion. ECF No. 20 at 5-6. The discovery granted here under Section § 1782 seeks evidence to support a separate Peruvian criminal investigation. However stubbornly the law firms distort the meaning of the § 1782 action. Careaga, the sole discovery target, is neither a counsel of record nor a party to the Missouri actions. Nor does the § 1782 action seek to, nor could it, relitigate or disturb the Missouri court's protective order, as it does not seek discovery from active plaintiffs.

Finally, insofar as the discovery sought here, in support of the Peruvian criminal matter, leads to the discovery of forged or falsified documents, of unlawful plaintiff recruitment practices, of coercion or compulsion or deception of plaintiffs, of the recruitment of bogus plaintiffs including documents reflecting false or misleading statements made to any or potential plaintiff, and more, none of that can possibly be subject to any privilege. *See Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018) (The crime fraud exception allows a party to obtain discovery of information that would otherwise be

15

protected by the attorney client privilege or the work product doctrine under certain circumstances.).

The law firms know this full well, and they know that the § 1782 inquiry, like the Florida state court malicious prosecution action Careaga's conduct has earned him, doesn't implicate the current Missouri plaintiffs. During the October 28, 2022 hearing, the following exchange took place:

> JUDGE SIPPEL: Let's cut to the chase. But on its face, filing a state court action in Florida against plaintiffs dismissed with prejudice from malicious prosecution is no longer a concern of this Court; right?
>
> MR. RODRIGUEZ: The ones that are dismissed, you're right, Judge.

ECF No. 12-1, p. 14:14-19.

The law firms likewise know that no current plaintiffs' legitimate privilege interests are at stake in these proceedings. They are simply, understandably, desperate to keep Careaga out of the witness chair. No protective order should be granted for the purpose of protecting the law firms from the exposure of their wrongdoing.

## IV. CONCLUSION

For the good reasons set forth here, The Renco Group and The Doe Run Resources Corporation, request the Court to:

1. Deny the law firms' motion to intervene;

2. Deny the law firms' request to vacate this Court's order granting the application to take discovery pursuant to § 1782;

3. Deny the law firms' request for a protective order barring Careaga's deposition; and

4. Expedite resolution of this motion so that the Careaga deposition, for which time is of the essence and which has been long delayed, may proceed post-haste.

March 13, 2023.

Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for The Renco Group, Inc. and The Doe Run Resources Corporation*
2525 Ponce de Leon Blvd. Suite 1000 Miami, Florida 33134
Tel.: (305) 445-2500
Fax: (305) 445-2505

By: */s/ Robert J. Kuntz*
Robert J. Kuntz, Jr.
Florida Bar No. 94668
rkuntz@riveromestre.com
Jorge A. Mestre
Florida Bar No.: 88145
jmestre@riveromestre.com
Angelica Mecias
Florida Bar No. 1031690
amecias@riveromestre.com

## CERTIFICATE OF SERVICE

I certify that on March 13, 2023, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF and via email to pro se party Victor Careaga at victoracareaga23@gmail.com.

*/s/ Robert J. Kuntz*
Robert J. Kuntz, Jr.

17