**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE MATTER OF THE *EX PARTE* APPLICATION OF THE RENCO GROUP INC. AND THE DOE RUN RESOURCES CORPORATION FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782<br><br>Applicants. | Case No. 1:22-mc-21115-JAL |

**OMNIBUS RESPONSE IN OPPOSITION TO INTERVENORS'[1] RENEWED**
**MOTION FOR PROTECTIVE ORDER AND**
**HALPERN SANTOS & PINKERT, P.A.'S MOTION FOR PROTECTIVE ORDER**

The Renco Group Inc. ("Renco") and The Doe Run Resources Corporation ("Doe

Run") (together, the "Petitioners"), submit their Omnibus[2] Response in Opposition to the

Rodriguez/Napoli's Renewed Motion for Protective Order (D.E. 58) and Halpern Santos &

Pinkert, P.A.'s Motion for Protective Order (D.E. 57) (individually "Halpern" and together

with Rodriguez/Napoli, the "Intervenor Law Firms").

### I.     INTRODUCTION

There are no grounds for vacating the Court's § 1782 Order (as the Intervenor Law

Firms ask for the third or fourth time). The firms have likewise failed, again, to meet the

burden to support with evidence their assertions of privilege, and have failed substantiate the

---

[1] The law firms of Rodriguez Tramont + Nuñez, P.A., and Napoli Shkolnik PLLC were previously permitted to intervene in this matter. For clarity, they are referred to here as "Rodriguez/Napoli."

[2] The Intervenor Law Firms have filed two separate, 15 and 18-page motions. To conserve judicial and party resources, Petitioners address both motions in this omnibus response.

1

2015 post-litigation time limitation they asserted. In fact, such evidence as they have provided—a single declaration—demonstrates, instead, that they are not entitled to the sweeping privileges they claim.

## II.   **PROCEDURAL POSTURE**

On July 31, 2023, this court held a discovery hearing to address the deficiencies noted in Petitioners' Notice of Hearing (D.E. 52) regarding the three[3] privilege logs submitted by the Intervenor Law Firms. The Notice of Hearing cataloged five particular deficiencies related in the logs.[4] Because a privilege log discovery dispute requires briefing and evidence, the Court provided a clear briefing schedule on the matter and permitted the Intervenor Law Firms to submit argument and evidence as to three discrete topics. They were to (1) substantiate their assertions of privilege; (2) justify the 2015 time-constraint in the logs; and (3) address Judge Sippel's limitation that discovery relate solely to dismissed plaintiffs. *See* July 31, 2023, Hearing Transcript at 21:1-10; 38:20-22; 39:14-16; 42:19-24, attached as **Exhibit A**. The court also made clear that the Intervenor Law Firms had to support their privilege assertions with evidence (Ex. A at 38:17-19; 51:10-16) and that they carry the evidentiary burden. Ex. A at 39:10-13; 51:8-10. Moreover, the Court cautioned

---

[3] As clarified during the hearing, two of the privilege logs correspond to Rodriguez/Napoli and the other privilege log corresponds to Halpern. The log was initially submitted by Victor Careaga and Halpern's motion refers to it as the "Careaga Privilege Log," *see* D.E. 57 at 6, ¶ 17, although Careaga told the Court it was prepared by Halpern.

[4] Those were (1) lack of particularity in identifying documents and asserting privilege; (2) improper work product assertions over third-party documents; (3) improper assertion of the attorney-client privilege in the Halpern log; (4) improperly limiting the time-frame of the logs up to October 2015, the date when the first of the non-class Missouri lawsuits was filed; and (5) discrepancies between the purported number of responsive documents (in the thousands) and the number of documents accounted in the logs (fewer than 500).

that the briefing be done "fairly concisely" to prevent it from getting "unwieldly." Ex. A at 38:25-39:1.

Despite the warning, the Intervenor Law Firms submitted briefing totaling 33 pages, re-hashing previously resolved issues outside the scope of what the parties were permitted to brief, ignoring topics that were supposed to be addressed, and relying solely on the already-produced Victor Careaga Affidavit (D.E. 54-1) to carry their evidentiary burden.

The Rodriguez/Napoli renewed motion requests (again) that the Court vacate the § 1782 Order (a request previously raised in D.E. 20 and not subject to briefing here, according to the Court's instructions), that the Court limit discovery to dismissed plaintiffs (which it has already done), and that the work-product assertions be sustained. *See* D.E. 58 at 1-2. Halpern's motion requests the work-product and attorney-client privilege assertions be sustained, and claimed that the crime-fraud exception does not apply.[5,6] D.E. 57 at 8-16. Meanwhile, the Intervenor Law Firms failed to address the 2015 time-constraint,

---

[5] Halpern's motion also re-hashed the arguments regarding assertion of attorney-client privilege on behalf of all plaintiffs (dismissed or current). *Compare* D.E. 57 at 16-18 *with* D.E. 45 at 8-9 and D.E. 34. The Court has granted Halpern leave to assert "attorney-client privileges on behalf of its *former* clients" and provided instructions on the evidentiary burden to assert the privilege (D.E. 59 at 13-14, ¶¶ 2-3), which Halpern has not yet attempted to do.

[6] Argument over the applicability of the crime fraud exception is not ripe this point given that the Intervenor Law Firms have failed to establish that any privilege applies in the first place. If the Court sustains Careaga's and the Intervenor Law Firms' assertions of privilege, Petitioners will bring a motion to overcome any such privileges based on the crime fraud exception. As for Halpern's argument that Petitioners have not established a *prima facie* entitlement to apply the exception, the § 1782 application itself (heavy with sworn evidence and filed over a verification), combined with Careaga's own affidavit (and its sworn admissions of wrongdoing) are *prima facie* evidence in and of themselves and already in the record. The RM Report (which Petitioners are moving to file under seal) adds a tremendous weight of evidence the Court can consider when and if the crime fraud exception is under consideration.

3

abandoning the argument altogether and opting instead to provide a revised log purporting to provide "the level of detail customary for a privilege log." D.E. 58 at 13; D.E. 58-5. The same is true for their now abandoned argument that documents related to former plaintiffs necessarily apply to current ones and so are not discoverable. Having foregone both arguments in their briefings, those positions are now waived.

As we demonstrate, there are no grounds for vacating the § 1782 Order and all of Intervenor Law Firms' privilege assertions are insufficient because they have failed to meet their evidentiary obligations or substantiate the 2015 time limitation.

### III.   MEMORANDUM OF LAW

**A.   THERE ARE NO GROUNDS TO VACATE THE COURT'S JUNE 8, 2022, ORDER GRANTING LEAVE TO TAKE THE § 1782 DISCOVERY, OR TO MODIFY IT FURTHER**

Rodriguez/Napoli's primary argument that this Court should vacate the June 8, 2022, § 1782 Order is premised on the falsehood that Petitioners are improperly seeking discovery in this proceeding for use in the Eastern District of Missouri actions and not for use in the pending criminal investigation in Peru where they are the crime victims. D.E. 58 at 4-8. Rodriguez/Napoli's charge that Petitioners have acted with a "lack of candor" (D.E. 58 at 4, 7) could not be further from the facts.

As Rodriguez/Napoli admit, Petitioners have consistently maintained, in both this Court and the Eastern District of Missouri, that the § 1782 discovery is for use in the Peruvian proceedings.[7] The July 31, 2023, Missouri filings to which Rodriguez/Napoli

---

[7] Although, as Petitioners recently briefed in the Eastern District of Missouri, the law of this Circuit permits the later use of § 1782 discovery in domestic proceedings if the domestic court allows its use:

referred to (which consisted of a Motion for Sanctions and Remedial Measures, accompanied by the Rivero Mestre Report ("RM Report")), detailing the results of an extensive investigation into the fraud and criminality that has occurred in Peru (*see* Exhibit B to the Rodriguez/Napoli motion, D.E. 58-2)) did ***not*** contain any discovery obtained in this proceeding. As of July 31, 2023, this proceeding had not yet yielded a single piece of evidence, not one document, not one word of testimony—so there was nothing from this proceeding ***to*** present to the Missouri court. Rodriguez/Napoli's argues a factual impossibility and that can only serve to mislead the Court by proffering hypothetical scenarios and gross mischaracterizations of Petitioners' conduct.[8]

---

> [W]e find nothing in the language of § 1782 that purports to limit later uses of evidence that have been properly obtained under § 1782. Had Congress intended to restrict the use of evidence previously obtained under § 1782 to proceedings in foreign or international tribunals, it easily could have expressed that intention in any number of ways, even by simply adding the word "only" or "solely" to the phrase "for use in a proceeding in a foreign or international tribunal." But it did not do that.

*Glock v. Glock, Inc.*, 797 F.3d 1002, 1006 (11th Cir. 2015) (reversing order prohibiting party from using evidence obtained under Section 1782 in domestic RICO proceeding). In fact, "[a]s a general rule, in United States litigation, to help prosecute or defend their lawsuits, parties may use any evidence they lawfully possess." *Glock*, 797 F.3d at 1007. But, as always, the Court is the gatekeeper of the evidence before it. *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) ("[W]e hold that Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise.").

[8] In similar fashion, Napoli Shkolnik PLLC submitted a Motion to Deny and Revoke Pro Hac Vice Admission of Petitioners counsel in the Eastern District of Missouri with the same mischaracterizations of the record. Petitioners responded, including an affidavit that attested to the timeline of events. *See J.Y.C.C. v. DRRC, et al.*, No. 15-cv-01704-RWS (E.D. Mo.) ("*Collins*"), D.E. 764, attached here as **Exhibit B**. This timeline is consistent with Careaga's ***own*** statements to this Court that, as of July 31, 2023, he had produced no documents to Petitioners. Ex. A. at 18:9-15.

The key exhibit to that Missouri motion for sanctions and remedial measures was the RM Report, an encyclopedic compendium of the fraud scheme in Peru, where Careaga has now sworn he was working at the direction of and under protocols laid down by, the Intervenor Law Firms. The RM Report contains twenty sworn statements. It contains witness interviews conducted by Peruvian criminal authorities. It contains sworn investigator summaries of other interviews. It contains the formalized criminal charges brought by Peruvian officials, naming Careaga and others. It contains more than 2,000 pages of supporting documents. It contains evidence of a decade-long scheme of systematic fraud, cynical coercion of and misrepresentation to prospective plaintiffs, near industrialized forgery, bribery of public officials, improper solicitation, and sweeping corruption which Careaga helped to manage in Peru. What is does *not* contain is any evidence gathered from this § 1782 proceeding.[9]

There was absolutely no misrepresentation, material omission, or lack of candor in the initial § 1782 application, nor in any of Petitioners' subsequent filings or representations to the Court. Judicial economy demands we not reiterate the extensive briefing and hundreds of pages of exhibits here, but Petitioners more than fulfilled the statutory prerequisites of § 1782 and more than satisfied the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). Meanwhile, Petitioners have respected the boundaries and rulings of both Eastern District of Missouri judges and this Court.

---

[9] Concurrent with the filing of this Response, Petitioners are filing a motion to seal in order to put the RM Report and its exhibits before the Court.

Rodriguez/Napoli's hypothetical, counter-factual allegations regarding an imagined misuse of this proceeding are meritless and do not support vacating an order granted on exhaustive pleadings and sworn evidence.

To the extent that Rodriguez/Napoli seek a modification of the subpoena "to the files of plaintiffs whose cases were dismissed" (D.E. 58 at 8-10), the argument is moot. That modification was already made. *See* modified subpoena at D.E. 51-1, specifying that discovery is not sought regarding "any plaintiff whose claim is currently pending" in the Eastern District of Missouri cases, but only as to plaintiffs whose cases have been dismissed; *see also* D.E. 59 at 3-4 (court order detailing this information in the factual findings).

Finally, other than a footnote in Halpern's motion (D.E. 57 at 6, n.2) the Intervenor Law Firms failed to raise *any* argument or offer *any* evidence that the document requests related to former plaintiffs somehow implicate current ones. The Intervenor Law Firms have thus waived this argument. *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."); *Horowitz v. Allied Marine, Inc.*, 2023 WL 3568113, at *17 (S.D. Fla. 2023) ("[W]e don't grant [relief on] arguments a party hasn't supported with either evidence or legal citations.").

The renewed request to vacate the June 8, 2022, § 1782 order, first raised long ago at D.E. 20, is outside the scope of the briefing the Court permitted on the privilege logs, and fails on its merits.

**B.     THE INTERVENOR LAW FIRMS HAVE PROVIDED INSUFFICIENT EVIDENCE TO SUPPORT THEIR PRIVILEGE ASSERTIONS OR TO VALIDATE THEIR LOGS[10]**

The party invoking the privilege has the burden of establishing all essential elements. *See Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1287 (S.D. Fla. 2012). Furthermore, "the proponent of the privilege must demonstrate the existence of the privilege by a preponderance of the evidence." *PDV USA, Inc. v. Commc'n Sols., Inc.*, 2023 WL 3171990, at *3 (S.D. Fla. 2023) (Louis, J.) (internal citations omitted) (emphasis added). That evidence may include an affidavit but "if the affidavit is not precise enough to bring the document within the rule, the Court has no basis on which to weigh the applicability of the claim of privilege." *Siegmund v. Xuelian Bian*, 2018 WL 3725775, at *4 (S.D. Fla. 2018) (Louis, J.); *Payrange, Inc. v. Kiosoft Techs., LLC*, 2021 WL 1312939, at *2 (S.D. Fla. 2021) (Louis, J.) ("Conclusory assertions will not suffice; the party asserting the privilege must offer underlying facts demonstrating the existence of the privilege, which may be accomplished by affidavit.").[11]

**1.  The Intervenor Law Firms Have Not Established with Evidence that They Are Asserting the Attorney-Client Privilege on Behalf of a Client**

In respect of the Intervenor Law Firm's assertion of the attorney-client privilege, the Court instructed both firms to provide affidavits of former clients on whose behalf they were purporting to assert the attorney-client privilege. Notwithstanding that Rodriquez/Napoli

---

[10] Petitioners, on the other hand, have established a "substantial need" for the discovery *ab initio*. *See* D.E. 1, D.E. 8. The very purpose of this proceeding is to obtain discovery for a foreign nation criminal matter that cannot be obtained in another jurisdiction or in any other matter.

[11] Halpern's contention that that ***Petitioners*** have not "met the burden" to compel production of attorney work product (D.E. 57 at 10-14) is thus an utter non sequitur.

was ordered to do this in the Court's May 26, 2023. D.E. 29. They have not done so. Similarly, the Court ordered Halpern to provide by August 23, 2023 affidavits of former clients on whose behalf the attorney-client privilege is asserted or "[t]o the extent any former client cannot be contacted or located despite [Halpern's] reasonable efforts . . . the firm may assert the privilege on their behalf but must file an affidavit attesting to the efforts undertaken and identifying the former clients that could not be located or contacted despite those efforts." D.E. 59 at 14, ¶ 3. Halpern must also "identify the former clients on whose behalf it seeks to assert the attorney-client privilege." *Id*. So far no one from the Intervenor Law Firms has submitted any such evidence.

### 2.  The Intervenor Law Firms Have Not Met Their Evidentiary Burden to Establish the Applicability of the Work-Product Privilege

Although the work-product protection is "broader" than the attorney-client privilege, "[l]ike maintaining a claim for attorney-client privilege, the party seeking to withhold discovery . . . bears the burden of establishing *by a preponderance of the evidence* that the documents should be afforded work-product protection." *Payrange, Inc.*, 2021 WL 1312939, at *3 (internal citations omitted) (emphasis added).

Here, the Intervenor Law Firms have completely missed—in fact, seemingly ignored—their evidentiary burden. Ex. A at 39:11; *see id.* at 38:17-19; 51:8-16. The Rodriguez/Napoli firm simply offers its *belief* that "the vast majority of the documents appear presumptively protected" and think the inquiry should end there. D.E. 58 at 11. That is not this Court's standard, as the Court made clear during July 31 hearing. Indeed, the Court specifically instructed the Intervenor Law Firms to bring evidence to support their

9

claims of privilege. They chose not to do so. In solely relying on Careaga's affidavit[12] to support the assertion of this privilege (D.E. 58 at 12; D.E. 57 at 9) the Intervenor Law Firms have failed to substantiate that the privilege applies. In fact, the Careaga affidavit mostly evidences the contrary conclusion.

### 3. The Careaga Affidavit Does Not Establish a Basis for Application of Any Privilege

In the first instance, much of the affidavit describes Careaga engaging in activities to which, patently, no privilege could apply – his research of a potential claim on behalf of himself or other lawyers, and his solicitation of clients on whose behalf to bring such a claim. Careaga's work on behalf of himself or others – to create a claim in search of a client and then to find clients – is not privileged.

Indeed, according to Careaga, he "began to develop the strategy and framework for identifying and communicating with *prospective Peruvian clients*" (D.E. 54-1 at ¶ 9) (emphasis added); "decided to assist Peruvian clients *who remained unrepresented* and to find legal representation for them" (*id.* at ¶ 12);[13] "assisted in [the Intervenor Law Firms'] development of the strategies and framework they would implement in order *to identify, communicate and retain prospective Peruvian clients*" (*id.* at ¶ 13) (emphasis added); "coordinat[ed] the efforts of the ground team *to sign up clients*" (*id.* at ¶ 14a) (emphasis added). None of these activities are privileged.

---

[12] Tellingly, the affidavit was already in the record when the Court told the Intervenor Law Firms they'd need to bring evidence.

[13] Query how a person qualifies as a "Peruvian *client*" when that person "remained unrepresented"?  A client of whom?

First, it is self-evident that without a client, there can be no attorney-client privilege. *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) (internal citations and quotations omitted) (Holding the attorney client privilege "belongs solely to the client[.]"); *MCC Mgmt. of Naples, Inc. v. Arnold & Porter, LLP,* 2008 WL 4642835, at *2 (M.D. Fla. 2008) ("[T]he privilege belongs to the client, not the attorney. Thus, the 'attorney-client privilege belongs to the client, and is not intended to protect the attorney and is designed to protect confidential information only.'").

Second, unlike an attorney's conduct performed on behalf of his client or the court, "solicitation by a lawyer of remunerative employment is a business transaction." *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 457 (1978)); *see also, In re: 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL 952315, at *6 (N.D. Fla. Mar. 12, 2021) ("The communications in issue were created for the business purposes (marketing and advertising) of the attorneys . . . not in anticipation of impending litigation for a *particular plaintiff*.") (emphasis added); *Holbourn v. NCL (Bahamas) Ltd.*, 305 F.R.D. 685, 687 (S.D. Fla. 2014) (work product protection does not extend to "materials or documents drafted or created in the ordinary course of business").

Third, Careaga's affidavit identifies third party communications (D.E. 54-1 at ¶¶ 14c, 14e, 14f) and payment information (*id.* at ¶ 14d) to which privilege also does not attach. As to third party communications, Careaga attests to "obtain[ing] necessary documentation from schools and other higher institutes of learning, medical institutions, and employers" (*id.* at ¶ 14c) and coordinating travel and security logistics. It is well settled that "the work product doctrine does not shield from discovery documents created by third-parties." *Hunter's Ridge Golf Co. v. Georgia-Pac. Corp.*, 233 F.R.D. 678, 681 (M.D. Fla. 2006). Further,

communications with third parties are generally not protected. *Cavallaro v. United States*, 284 F.3d 236, 246-47 (1st Cir. 2002); *In re Total Containment, Inc.*, 2007 WL 1775364, at *3 (Bankr. E.D. Pa. 2007) ("Therefore, the voluntary disclosure to a third party of purportedly privileged communications has long been considered inconsistent with an assertion of the privilege.") (internal citations omitted). Likewise, the work product doctrine does not apply to financial records. *In re Grand Jury Investigation*, 769 F.2d 1485, 1488 (11th Cir. 1985) (holding work product privilege did not apply over financial records, stating "[a]n attorney who acts as his client's business advisor, or his agent for receipt or disbursement of money or property to or from third parties . . . is not acting in a legal capacity, and records of such transactions are not privileged."); *Chemoil Corp. v. MSA V*, 2013 WL 944949, at *5 (M.D. Fla. 2013) ("Further the work product privilege objection does not apply to the RFP's because they relate to normal business transactions . . . . If documents and materials are produced in the ordinary course of business or other non-litigation purposes, they do not qualify as work product . . . . Thus, the work product privilege does not apply to requested documents because the fuel payments are a normal business transaction for the Plaintiff.")

Finally, Careaga's affidavit makes reference only to the representation of current plaintiffs in the Missouri action. D.E. 54-1 at ¶¶ 3-5. Nowhere does he attest to facts related to *former* plaintiffs, to whom the discovery sought is now limited. And although Careaga purports to reframe the Intervenor Law Firms' intervention as one on behalf of "all the Peruvian clients they represent" (*id.* at ¶ 4), the Intervenor Law Firms have not yet identified a single client on whose behalf they are asserting privilege. *See* D.E. 29 and D.E. 59 (requiring submission of client affidavits to assert privilege).

Far from supporting the Intervenor Law Firms' claims of privilege, Careaga's affidavit substantially evidences that those claims are meritless.

**C.      THE INTERVENOR LAW FIRMS' PRIVILEGE LOGS ARE STILL SO DEFICIENT THAT LINE BY LINE OBJECITON IS IMPOSSIBLE AND THEIR MOTIONS DO NOT PROVIDE ANY SUPPORT OF THEIR SELF-IMPOSED TIME CONSTRAINTS**

"[A] proper privilege log should contain the following information for each withheld document: (1) the name and job title or capacity of the author of the document; (2) the name and job title or capacity of each recipient of the document; (3) the date the document was prepared and, if different, the date(s) on which it was sent to or shared with persons other than the author(s); (4) the title and description of the document; (5) the subject matter addressed in the document; (6) the purpose(s) for which it was prepared or communicated; and (7) the specific basis for the claim that it is privileged." *Anderson v. Branch Banking & Tr. Co.*, 2015 WL 2339470, at *2 (S.D. Fla. 2015). Detail is the sine qua non of proper privilege log, because only with sufficient detail can the parties and the Court determine the validity of each privilege claim. *In re Denture Cream Prod. Liab. Litig.*, 2012 WL 5057844, at *9 (S.D. Fla. 2012) ("[A] privilege log should identify each document and the individuals who were parties to the communications with sufficient detail to permit the compelling party or court to determine if the privilege is properly claimed.").

Having largely failed to revise the deficient logs they originally provided, the Intervenor Law Firms leave Petitioners and the Court in same quandary as before: Even if they were generally justified to assert the privileges they seek (they're not), Intervenor Law

Firms haven't given the Court (or the Petitioners) the information necessary address each particular claim.[14]

What can be sussed out from the logs suggest many of the documents there aren't privileged, no matter what Careaga did or for whom. Work-product privilege assertions over communications with, and documents created by, third-parties, including third-party invoices, requests sent to third parties, third-party records, records of payment to third parties, airline tickets, boarding passes, hotel reservations, travel insurance, transportation receipts, meal receipts, electronic tickets, passport copies, third-party medical records requests, requests for school transcripts, and third-party vendor invoices—none of these can stand.

Finally, the Intervenor Law Firms failed even to brief their self-granted time and scope constraints keyed to the commencement of the Eastern District of Missouri actions in 2015 and predicated on the supposed applicability of Southern District of Florida Local Rule 26.1(e)(2)(C). The Court was very specific in its instructions:

> I think that the insistence or cap at 2015 is in this case artificial for a variety of reasons. I'm going to let you brief and defend it, . . . It seems wildly inapplicable to the circumstances that I think I understand to be the case, but I am going to give you another crack at telling me that that is not so. If you are going to do so, please make sure that it is awfully specific about -- not a generalized we shouldn't have to look at what's in 2015, but we shouldn't have to log what is post-2015 because the nature and the categories of those documents are.

Ex. A at 21:2-22. Arguments not raised in the initial briefs, or supported with evidence and the law, are waived. *In re Egidi*, 571 F.3d at 1163; *Horowitz*, 2023 WL 3568113, at *17.

---

[14] Although Rodriguez/Napoli have provided an amended log which they attach as Ex. E to their motion, similar to the "pre-litigation" log, it still lacks sufficient details for Petitioners to challenge, or for this Court to discern, the applicability of the privilege.

For these reasons, the Intervenor Law Firms have failed to support the privilege designations and the motion for protective order fails.

## CONCLUSION

For these good reasons, the Court should deny the Intervenor Law Firms' motions for protective order and order production of the withheld documents.

Dated: August 16, 2023                    Respectfully submitted,

                                          **RIVERO MESTRE LLP**
                                          2525 Ponce de Leon Blvd., Suite 1000
                                          Coral Gables, Florida 33134
                                          Telephone: (305) 445-2500
                                          Facsimile: (305) 445-2505

                                          */s/ Robert J. Kuntz*
                                          Robert J. Kuntz, Jr.
                                          Florida Bar No. 94668
                                          rkuntz@riveromestre.com
                                          Jorge A. Mestre
                                          Florida Bar No.: 88145
                                          jmestre@riveromestre.com
                                          Angelica Mecias
                                          Florida Bar No. 1031690
                                          amecias@riveromestre.com
                                          Sylmarie Trujillo
                                          Florida Bar No. 112768
                                          strujillo@riveromestre.com
                                          *Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I certify that on August 16, 2023, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF and via email to pro se party Victor Careaga at victoracareaga23@gmail.com.

                    By:        */s/ Robert J. Kuntz*
                               ROBERT J. KUNTZ, JR.

15