# Exhibit A

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA

                      CASE NO. 22-MC-21115-JAL


IN RE:  THE RENCO GROUP, INC.
AND THE DOE RUN RESOURCES
CORPORATION,
                                    Miami, Florida
            Petitioner(s),
                                    July 31, 2023
         vs.

VICTOR CAREAGA,

            Respondent(s).       Pages 1 – 54

-----------------------------------------------------------

                      DISCOVERY CONFERENCE
              TRANSCRIBED FROM DIGITAL AUDIO RECORDING
              BEFORE THE HONORABLE LAUREN FLEISCHER LOUIS
                  UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PETITIONER(S):   ROBERT J. KUNTZ, JR., ESQ.
                         MEAGAN NICHOLSON, ESQ.
                         RIVERO MESTRE, LLP
                         2525 Ponce De Leon Boulevard
                         Miami, FL 33134
                         305-445-2500
                         rkuntz@riveromestre.com
                         mnicholson@riveromestre.com
```

APPEARANCES (CONT'D)


FOR INTERVENOR PLAINTIFF(S):   FRANCISCO R. RODRIGUEZ, ESQ.
Rodriguez Tramont & Nunez      STEPHANIE T. NUNEZ, ESQ.
Napoli Shkolnik                RODRIGUEZ TRAMONT & NUNEZ, P.A.
                               255 Alhambra Circle
                               Coral Gables, FL 33134
                               305-350-2300
                               frr@rtgn-law.com
                               stn@rtgn-law.com


FOR THE RESPONDENT(S):         VICTOR CAREAGA
                               10420 NW 74th Street, #304
                               Medley, FL 33178

ALSO PRESENT:
Ernesto Santos
Kenneth Chesebro


TRANSCRIBED BY:       Joanne Mancari, RPR, CRR, CSR
                      Court Reporter
                      jemancari@gmail.com

Thereupon,

the following proceedings were held via Zoom videoconference:

THE DEPUTY CLERK:  Calling case No. 22 21115, MC, Judge Lenard.  In Re:  The Renco Group, Inc. and The Doe Run Resources Corporation.

Counsel, would you please note your appearances for the record.

MR. KUNTZ:  Good afternoon, your Honor.  Robert Kuntz and Meagan Nicholson for the petitioners.

MR. RODRIGUEZ:  Good afternoon, your Honor.  Frank R. Rodriguez and Stephanie Nunez, from the law firm of Rodriguez Tramont & Nunez, on behalf of the intervenors, along with Kenneth Chesebro, who is not admitted but he is here because he has some familiarity with the process and might assist the court.

MR. SANTOS:  Good afternoon.

THE COURT:  Go ahead.  Mr. Santos.

MR. SANTOS:  Ernesto Santos, on behalf of Halpern Santos & Pinkert.  We have a pending motion to intervene, your Honor.

THE COURT:  I thought I saw Mr. Careaga, but now I don't.

MR. RODRIGUEZ:  I know he was trying to get in, Judge. Here he is.

THE COURT:  There you are, Mr. Careaga.  Can you hear

me?  You are on mute, but I can see you mouthing the words yes, I can.

MR. CAREAGA:  OK.  Now I think you can hear me.

THE COURT:  I do indeed.  Thank you so much.

MR. CAREAGA:  Thank you.

THE COURT:  Mr. Kuntz, you noticed this dispute, I think.

MR. KUNTZ:  I did, your Honor.  Thank you very much.

Your Honor, we're here about deficiencies in three privilege logs that were served on us in accord with the court's order.

There are three big problems and a catalog of smaller ones, but before I get there, I want to note that on Friday the intervenors filed a welter of documents in the open docket, not sending them to your Honor as you require for discovery disputes.  They also filed a bunch of emails, which violates local Rule 7.7.  There was a declaration.  I don't know what any of that is for.  Perhaps they are going to tell us.

For us, your Honor, the source materials are the three privilege logs.  So I want to address what the big and the small concerns with those are.

THE COURT:  OK.

MR. KUNTZ:  The big concern with -- so we have two from the intervenors and one supposedly from Mr. Careaga, but as you will hear in a minute, it's probably really from

Mr. Halpern's firm.

The biggest problem with the privilege log provided by Mr. Rodriguez's firm is that they essentially provide a post-litigation exception from October of 2015, the time they first filed an action in the Eastern District of Missouri, and simply don't file anything after that because they say that's post-litigation. Of course, and we will go into this in some detail -- I want to get the cards on the table -- but that is not the case.

The matter in question here is the 1782 petition. But even if it were an Eastern District matter, that is not a class action suit. There's been suits filed serially along the years. That October 2015 date is wildly inappropriate.

The second thing is that, although we have made some progress in a meet and confer and a few documents have been added, at one point Mr. Rodriguez was telling me that of the 10,000 emails that Mr. Careaga said were responsive and the hundreds of documents that he said were responsive, only one wasn't going to be on a privilege log. Now, we've added a few dozen since then after our meet and confer.

Then finally, with respect to Mr. Careaga, we couldn't actually meet and confer with Mr. Careaga. When he got on the meet-and-confer call, we started to ask him about deficiencies in the privilege log that he had produced. He said: I did what the lawyers told me. I asked him: What lawyers? He

said:  You can ask me that in deposition.  That was the end of that discussion.

It is evident from the privilege log he produced that what it really is is a privilege log on behalf of the Halpern firm, which hasn't yet been permitted to intervene.

When I spoke originally to Mr. Halpern, really thinking that it was his log, he told me:  I'm not meeting and conferring with you; I'm not intervened.  If you will consent to my intervention, then we'll intervene.

So those are sort of the three big systemic problems with these.

Then, as evidenced in our notice, your Honor, and I can go through them seriatim or as your Honor would like me to, there are any number of individual problems with these logs.

Mr. Careaga's log isn't Bates stamped.  Many of the logs, in all three of the logs, many of the documents in all three of the logs are undated or have unclear time frames. They don't include who authored or received them.  The document titles have been removed.

Substantively, the privilege log that the intervenor submitted, which should only assert work product, asserts work product for a wide variety of things that have already been sent to third parties.  Now we made a little bit of progress on some travel documents, and the log that you see before you includes a few things that weren't on the original log, that

weren't included in the original log.  The whole post-litigation log part is in issue.

Mr. Careaga's log, which, as I say, is really, I think, Mr. Halpern's log, asserts attorney-client privilege.

Mr. Careaga -- I don't know where to start -- Mr. Careaga hasn't been a lawyer for a decade.  Your Honor hasn't permitted anybody to assert attorney-client privilege by the procedure that your Honor set forth, and yet there it is.

The privilege logs are improperly limited in time and scope.  And substantively, Judge, it looks like thousands of things are missing, because we all heard Mr. Careaga say how many documents he, the only person your Honor said is supposed to select what documents are responsive, he said how many documents he sent off to the law firm, the intervening law firm, and by no means have we accounted for all of those.

Now, I don't know how deep in the individual weeds your Honor wants to get on each of these, but that is the lay of the land, if you will, at this point.

THE COURT:  OK.  I am obviously most taken by the failure or refusal to confer.

Where are we with this dispute and who speaks for it?

I will start with Mr. Careaga.  You have one of these to three privilege logs, is that right?

MR. CAREAGA:  Your Honor, all I simply did -- I did not prepare any privilege logs.  What Mr. Kuntz is referring to

as the privilege log I prepared, which he just admitted might be essentially the privilege log prepared by Mr. Halpern's firm and his cocounsel in Missouri, all I did is I was asked to just file that privilege log that they had prepared up in Missouri. So I did not prepare a privilege log.

THE COURT: Wait. I'm sorry. None of that makes sense to me.

You filed something in Missouri. What?

MR. CAREAGA: No. Let me be clear. The law firms in Missouri, together with Mr. Halpern, who have filed a motion to intervene and is pending, they prepared a privilege log, because we made it clear to them, I made it clear to them, the --

THE COURT: Who is "them?"

MR. CAREAGA: -- that the subpoena that I had received addressed documents pertaining to them. So they felt that --

MR. RODRIGUEZ: Victor, Victor, don't use pronouns. The judge wants to know who "them" is.

THE COURT: Oh, Mr. Rodriguez, this will be our last Zoom hearing.

MR. CAREAGA: Yes. The law firm of Schlichter Bogard Denton is cocounsel with Jay Halpern, and they have their pending motion to intervene, your Honor. They prepared a privilege log for the time period that I was involved in this case with them from 2006 through 2013.

THE COURT: OK. Let me get this straight. In response to the subpoena that I compelled you to answer, you just shipped off the documents and sent it to Halpern.

MR. CAREAGA: Both physical documents and email documents, correct.

THE COURT: You didn't prepare any privilege log at all.

MR. CAREAGA: That's correct.

THE COURT: OK. But the affidavit that you all filed or somebody filed, how did that come about?

Mr. Careaga.

MR. CAREAGA: Yes.

THE COURT: It was signed by you.

MR. CAREAGA: Yes. It is an affidavit that I was requested to prepare in order to assist the court and give the court a historical context of my participation in this case from day one.

THE COURT: Whoever filed that, which exhibit number is it? 54 what?

MR. RODRIGUEZ: Yes. There is a Bates number --

THE COURT: No. It is Exhibit 54 dash what?

MR. SANTOS: One.

THE COURT: Thank you.

OK. So this just provides context. This doesn't explain anything about the documents themselves.

MR. CAREAGA:  That's correct.

THE COURT:  OK.  Who prepared this affidavit?

MR. CAREAGA:  I went ahead and drafted it from beginning to end, your Honor.

THE COURT:  OK.  But you gave it to a lawyer in this case, right?

MR. CAREAGA:  I turned it over to Mr. Rodriguez so he could file it.

THE COURT:  And then, Mr. Rodriguez, did you serve this with your privilege logs that you served to Mr. Kuntz?

MR. RODRIGUEZ:  No, Judge.  We filed it on Friday.

THE COURT:  But I mean, what evidence, in addition to these privilege logs, what evidence did you serve to support them?

MR. RODRIGUEZ:  Well, that particular affidavit, Judge, on Friday, we filed it on Friday and I believe we served them on Mr. Kuntz, and my understanding was we sent copies to your Honor, your Honor's email.

THE COURT:  OK.  I have a slightly different question.

MR. RODRIGUEZ:  OK.  I'm sorry.

THE COURT:  When you served your privilege logs, what evidence did you serve to support those privilege logs?  Was it limited to this affidavit from Mr. Careaga?

MR. RODRIGUEZ:  Yes, ma'am.

THE COURT:  OK.  All right.

MR. KUNTZ:  Well, the affidavit wasn't served with the privilege logs, your Honor.  The affidavit was served for the first time on Friday.

THE COURT:  OK.  Then the other two privilege logs are prepared or purport to be from who?

MR. RODRIGUEZ:  They're prepared by the intervenors, your Honor, Rodriguez Tramont & Nunez and Napoli Shkolnik.  I'm sorry, Judge.

To be clear, there's one other privilege log, and pursuant to Rule 26.1 we are only required to do a privilege log for documents that were prepared prior to the initiation of the litigation.  The lawsuit was initiated in October 12th of 2015.

The only reason we're intervening, the only reason your Honor allowed us to intervene is to protect the rights of our clients in the Missouri litigation.  So I think that should be the litigation that is referred to in Rule 26.1.

As a separate but related matter, your Honor, we gave a log of these posttrial work product assertions.  I don't know if your Honor has had a chance to review it.  Mr. Kuntz filed it as part of the materials for your Honor's consideration, and they're quite detailed.  I mean, they are almost as detailed as the privilege log itself.

We put a lot of detail into them so that your Honor could make -- I was very cognizant of your Honor at the June

15th hearing.  Your Honor said, look, you've got to give me some information so I can make rulings on your assertions of the work product privilege.  So I read 26.1 carefully, as your Honor suggested.

It seemed to me that the requirement was to prepare a privilege log for all documents that were prepared prior to the initiation of the litigation, which was October 12, 2015. After October 12, 2015, it was not a requirement.  It wasn't terribly clear to me how much detail, and I think we erred on the side of caution and gave quite a bit of detail.

Mr. Kuntz knows exactly how many pages of documents. We Bates stamped, at his request, we Bates stamped everything. There's 298 -- just so your Honor is clear, there's 25 documents that are reflected in the privilege log.  There's 298 documents that are reflected in the post-litigation work product assert descriptions, and there's like 600 something pages of documents that comprise the 298.  So we're talking about 25 and 298 documents.

Another issue, Judge, that is sort of intertwined in this is, and your Honor at the last hearing you said, hey, Careaga, Mr. Careaga, I asked you to cull these documents and only submit the ones that are -- I can't remember your Honor's exact words, but relate to dismissed clients.

Your Honor may recall the issue that Judge Sippel made it pretty clear that he thought that the existing clients and

all the issues relating to existing clients were off limits. It's not that kind of case.  That is one of the reasons why we asked Mr. Careaga to prepare the affidavit.  We asked him to do it, and he went ahead and did it.

The work that he did is really on behalf of all clients, beginning with the inception of the litigation when he was involved as a lawyer, as a cocounsel for Mr. Santos' firm, for Jay Halpern's firm and the Schlichter Bogard firm in St. Louis, and then when he got in our firm, we retained him to work as a -- have a paralegal function for it, and everything that he did is in anticipation of litigation.

These documents are benign, your Honor.  I have no issue at all, zero, and the last thing I want to do is create work for your Honor, is to have your Honor look at each and every one of them.  There is nothing here of the nature that Mr. Kuntz is looking for.

At the same time, we are opponents in litigation that's been going on.  It is very heavily litigated.

THE COURT:  You guys are arguing the merits of this and I am at least five steps behind you.

I am not going to resolve the privilege on any of the documents that are on this log.  I'm having trouble figuring out exactly how we are even going to address the sufficiency of the log or the search.

Mr. Rodriguez, we are just not there yet, not by like

a lot.  I'm still trying to figure out -- I mean, this should be by a motion.  I can almost guarantee you that it is going to be by a motion because everybody just kind of gave me materials and so far all I'm trying to do is get you guys to walk me through it, and I haven't gotten that yet.

I have to catch up to you.  You know what I mean?  All I have is really the notice that makes some specific but a lot of high-level complaints about the materials as a sort of placeholder to getting into the grit.

Mr. Kuntz has already said I don't know how far you want us to go.  The answer is I don't know yet.  I don't even know what these materials are.  I can't distinguish between the various privilege logs that I have been given so far.

MR. RODRIGUEZ:  If I can --

MR. KUNTZ:  Part of the confusion, your Honor, part of the confusion, your Honor, is that we had, internal to the ongoing work that your Honor is doing to bring forward this deposition, we had a discovery dispute.  Under your Honor's rules with regard to a discovery dispute, you said provide a privilege log.  We got some privilege logs.  We found them to be insufficient.  We met and conferred insofar as we were able with regard to those privilege logs.

With regard to the remaining insufficiency of the privilege logs, following your Honor's procedure for discovery disputes, trying to keep this discrete to these discovery

issues, we found a date, notice of the hearing, and provided a notice.  Didn't file anything in the public docket because we're following your Honor's discovery dispute rules.

The problem here, Judge, is -- let me address two things.  The first part of the problem you have is that Mr. Careaga is now acting as a cat's-paw for Mr. Halpern's firm, who you haven't allowed to intervene at all, and in his own words -- and I appreciate Mr. Careaga being so straightforward about it; he simply filed what he was told to do.

Your Honor, and this goes to the other thing as well, the 26.1, we're not in the Eastern District of Missouri litigating a toxic tort.  We're in the Southern District of Florida before your Honor litigating a 1782 petition, where my clients, victims of a crime in Peru, are seeking to obtain information under 1782 that they can hand over to the prosecutors there.

So what we need to be focused on, your Honor, is Mr. Careaga's testimony with regard to that, where in Peru he's now been named in a formalized criminal proceeding by the Peruvian authorities.

The case that we're in is that 1782.  Mr. Rodriguez's desire to somehow magically not have to speak at all about Mr. Careaga's work from, I guess October of 2015, Judge, that is a *non sequitur*.  That is not what this rule is about.

Mr. Careaga, who, as your Honor has heard a hundred times, keeps saying he doesn't have a lawyer, clearly not just does he have a lawyer, he's clearly acting on behalf of these lawyers Halpern and --

THE COURT:  I'm going to ask some questions.  I totally appreciate that you guys have tremendous expertise in what is happening, but no one is enabling me in any way, shape, or form to appreciate what the dispute is today.

So, Mr. Kuntz, I thought that is where you were going and then you pivoted.  So you said you noticed this for a discovery dispute, and the notice that you filed is not a discrete dispute.  So what is it that you thought you were noticing for today?

MR. KUNTZ:  Judge, I thought that what we were noticing for today was the insufficiency on their face, the insufficiency of the privilege logs that were provided to us as your Honor directed them to be provided.  They simply don't match what a privilege log should have, with the general problem, the biggest problem is they simply end in October of 2015.

THE COURT:  OK.

MR. RODRIGUEZ:  Can I weigh in just a second, your Honor?

THE COURT:  Sure.

MR. RODRIGUEZ:  OK.  Can I back up?  I understand how

we're all so immersed in this and you have a million different things going on and sometimes lawyers make assumptions that they shouldn't make.  Let me go back and kind of go right to the beginning, right.

The 1782 action, subpoena filed by Mr. Kuntz's firm, approved by her Honor, Judge Lenard, and we went before you to -- we initially, my firm, moved to intervene.  You allowed us to intervene.  We had a hearing in front of you on June 15th and we were discussing how this process should go forward.  Then you said to Careaga, listen, I know you're on vacation, but we've got to have this thing done by a date certain.  I think it was by July 13th.

THE COURT:  Mr. Rodriguez, it is not that I have your case confused with any other.  Anything that's happened in court I'm familiar with.

MR. RODRIGUEZ:  OK.

THE COURT:  What I need to do is orient a procedure. You have a privilege dispute.

MR. RODRIGUEZ:  Yes.

THE COURT:  I have a practice for discovery for privilege disputes.

MR. RODRIGUEZ:  Yes.

THE COURT:  It can't be resolved at a hearing, particularly where the issues that you are raising, Mr. Kuntz, and the almost tortured complexity in which the privilege logs

have been produced here, it does not in any way enable me to make privilege rulings.

So I thought that where you were heading, Mr. Kuntz, is there is a discrete like I think they should produce more of these emails, they are fighting over producing the emails, that lends itself to a discovery hearing, and that is not what I'm hearing.  I am going to at least try to summarize where I think you all are and what I think has to happen now.

So as best I can tell -- has there been any production, Mr. Kuntz?

MR. KUNTZ:  No, ma'am.

THE COURT:  OK.  Mr. Careaga, that is accurate?  You have produced no documents to Mr. Kuntz?

MR. CAREAGA:  Not yet, your Honor, but I'm ready to do so.

THE COURT:  And your holdup is?

MR. CAREAGA:  I was waiting for the court's guidance on the matter.

THE COURT:  But I ordered you to produce documents some time ago.

MR. CAREAGA:  I do not believe there --

THE COURT:  Nonprivileged --

MR. CAREAGA:  I do not believe there any --

THE COURT:  Nonprivileged documents.  We've only been talking about privileged documents.  But you have nonprivileged

documents to turn over to Mr. Kuntz?

MR. CAREAGA:  I would imagine so.  I'd have to confer with Mr. Rodriguez and also with the Missouri firm and Mr. Halpern's firm.

The same documents that were reviewed by me to make the responsiveness calls and that are not part of a privilege log I would be ready to turn them over.

THE COURT:  OK.  When you say that you would have to confer with them, isn't that the privilege log?  Isn't that how that was made?

MR. CAREAGA:  They undertook the job of creating their own privilege logs, and if your Honor directed me to just turn over the documents that they've reviewed, I'm happy to do that. I want to facilitate the process, and I'm ready to go ahead and step in on August 10th and answer -- and be ready for deposition.  I do not want me to be the reason why they are being held up.

THE COURT:  I hear you.  OK.  I hear you, Mr. Careaga.

So then let me just make sure I understand what these logs are, because they don't have any, as far as I can tell, meaningful identification.

One is called Revised Privilege Log.

MR. RODRIGUEZ:  Yes.

THE COURT:  How many pages is this?  Is it just two?

MR. RODRIGUEZ:  Yes.

THE COURT:  Just two?  Whose privilege log is this, Revised Privilege Log?

MR. RODRIGUEZ:  That is the Rodriguez Tramont & Nunez, Napoli Shkolnik privilege log.

Revised Privilege Log, your Honor, I believe -- I counted it before the hearing -- I believe there are 25 entries, 25 documents, not pages, that are identified in that privilege log.

THE COURT:  OK.  You created this privilege log, Mr. Rodriguez?

MR. RODRIGUEZ:  We created the privilege log.

THE COURT:  When you say "we," you created this privilege log?

MR. RODRIGUEZ:  Excuse me for the pronouns.  My law firm created the privilege log.

THE COURT:  OK.  And your top-level problem with this one, Mr. Kuntz, is that it is time restricted up to 2015, am I right?

MR. KUNTZ:  That is my top-level concern, among many others, Judge, yes.

THE COURT:  The others are going to be specific whether or not the descriptions are adequate or whether or not a proper privilege is here asserted.  That is going to require briefing and evidence, right?

MR. KUNTZ:  Yes, your Honor.

THE COURT:  OK.  But in terms of if there is anything we can get through here today, I think that the insistence or cap at 2015 is in this case artificial for a variety of reasons.

I'm going to let you brief and defend it, Mr. Rodriguez, but I would tell you that even if it were a litigation pending in the Southern District of Florida, which your Missouri case is not, so the conflation of relying on your Missouri case, but our local rule is at least one reason why I don't think it is a great fit.  But even if that were the case, there's often, whether it is arbitration or an insurance dispute, bad faith, that rule applies on a number of cases as a presumption that communication with outside counsel is going to be about this case and it would be onerous for the party to have to go through and log each one.

It seems wildly inapplicable to the circumstances that I think I understand to be the case, but I am going to give you another crack at telling me that that is not so.  If you are going to do so, please make sure that it is awfully specific about -- not a generalized we shouldn't have to look at what's in 2015, but we shouldn't have to log what is post-2015 because the nature and the categories of those documents are.  OK.

So that is one.

Then, Mr. Kuntz, I understand that you have got individual challenges, but that's got to be briefed.

MR. KUNTZ:  I understand, your Honor.

MR. RODRIGUEZ:  Your Honor --

THE COURT:  And then let me see -- yes, Mr. Rodriguez.

MR. RODRIGUEZ:  I don't want to interrupt, your Honor. I just want to say, with regard to the -- the log that we have titled Post-Litigation Work Product Document Descriptions, those are the documents that are post initiation of the Missouri litigation, which was October 12, 2015.

THE COURT:  All right.

MR. RODRIGUEZ:  The only thing I would point out to your Honor is, we're not trying to do anything -- we are trying to be, if anything, we err on the side of inclusion and providing information.

THE COURT:  OK.

MR. RODRIGUEZ:  We felt that the October 12, 2015 date was applicable, but we still described those documents to a great extent.  There's authors, there's the years of the documents.  There's not specific dates for those documents, but the years that they were created.  There's a lot of information about those documents to allow your Honor -- but I want to point out --

THE COURT:  Hold up.

MR. RODRIGUEZ:  I want to point out --

THE COURT:  So hang on.  You just produced two logs. One that is pre-2015 and one that is post.

MR. RODRIGUEZ:  Yes.  Yes.

THE COURT:  But you nonetheless looked at all the documents?

MR. RODRIGUEZ:  We looked at all the documents.

THE COURT:  Why are they so different?

MR. RODRIGUEZ:  Because one of them is the post -- what do you mean?  Stylistically different, Judge?  I'm sorry.

THE COURT:  Yes.  They seem like they have different information.  Like the privilege log looks like a privilege log and the other one looks like a printout of something.

MR. RODRIGUEZ:  Because we felt under 26.1 we were only required to do a privilege log for docs that were pre-October 12, 2015.  So those are the traditional privilege log.

The other ones, our understanding was that our obligation was to describe these other documents to an extent that your Honor could know what they were and determine if you could rule on our work product assertion, determine if you wanted to take a closer look at them, if you wanted to look at them *in camera*.

THE COURT:  OK.  But, Mr. Rodriguez, they all kind of say the same thing.  Emails with U.S., Peruvian counsel Re Client Sign-Up Issues and Strategies.

MR. RODRIGUEZ:  Those are --

THE COURT:  There's six pages of that.  And it's

emails plural, so I can't even tell if these are singular documents or what's going on here.

MR. RODRIGUEZ:  Again, keep in mind, your Honor, in good faith we thought we were complying because we felt that --

THE COURT:  I appreciate it, but, Mr. Rodriguez, that is just not helpful.  I just want to know the answers to my questions first.

MR. RODRIGUEZ:  OK.

THE COURT:  The author of these codes, V.A.C., E.M., F.R.R., are those individuals or law firms?

MR. RODRIGUEZ:  Those are individuals.

THE COURT:  Where is my code?  Is there a code or any evidence --

MR. RODRIGUEZ:  Yes.  Did we file the code, Steph? Did we forget to file the code?  Is that what happened? Because we have one.

MS. NUNEZ:  Yes.  I apologize.

MR. RODRIGUEZ:  We had a document that indicated what those initials were, who they were.  Who they are, rather.

THE COURT:  OK.  So now, Mr. Rodriguez, those are your two privilege logs?

MR. RODRIGUEZ:  Yes, your Honor.

THE COURT:  OK.  Then the third one, do I only have in the Excel format?

MR. SANTOS:  Your Honor, this is Ernesto Santos on

behalf of Halpern Santos & Pinkert.

I believe that, yes, it is only in the Excel format.

MR. KUNTZ:  Your Honor, can I just, for sake of good order, object.

Mr. Halpern and Mr. Santos' firm isn't here.  The privilege log in Excel that purports to be a Victor Careaga document, which is a *non sequitur* for Victor Careaga to be filing anyway, is not what it purports to be because it is really a Halpern Santos document filed in disregard of the fact that they haven't been permitted to intervene here.

THE COURT:  Forgive me, but what is your point?

MR. KUNTZ:  Well, my point, your Honor, is that it is impossible -- we have been trying for a year to get a deposition.  When we finally get this privilege log and we try to speak to somebody about it, I get caught in a catch-22, where Mr. Careaga says you have to talk to my lawyer and the guy I know is his lawyer says you can't talk to me, I haven't been permitted to intervene.

THE COURT:  So this is one of the things that we are going to address before we get to briefing because to the extent that that is the discovery dispute, we are going to drill down on it.

It is one or the other, Mr. Santos.  Now you prepare a privilege log, you confer on it.  Is Mr. Kuntz accurate in the proffer that he's given on his efforts to try to confer with

either you or Mr. Careaga?

MR. SANTOS:  I wasn't involved in the meet and confer, your Honor, but I believe that there was an issue as to whether we were going to confer with him with the intervenor with their motion to intervene still outstanding.

THE COURT:  Who are you talking about, Mr. Kuntz, when you tell me that someone refused to confer with you?

MR. KUNTZ:  When I was trying to set up meet and confer, I copied in Mr. Halpern, frankly believing that the Excel sheet was a Halpern Santos document.  Halpern told me, and I have the email --

THE COURT:  No, no.  What human?  What human told you?

MR. KUNTZ:  Mr. Halpern, Jay Halpern, told me no --

THE COURT:  OK.

MR. KUNTZ:  -- I'm not going to -- sorry, Judge. Mr. Halpern told me I'm not going to meet and confer because it's not my log; Careaga produced it.  We haven't been -- and if I would agree to drop my objection to their --

THE COURT:  I heard it.

MR. KUNTZ:  -- untimely --

THE COURT:  I heard it.  I just wanted to know the who, because, Mr. Santos, this is your last Zoom hearing.  You all are coming in from now on.  This is apparently a bad format for you guys.

So, Mr. Santos, you work for Mr. Halpern?

MR. SANTOS:  I do, your Honor.

THE COURT:  So it is either/or.  If you are going to create a spreadsheet in this incredibly odd nonrepresentative/representative relationship, we are going to also give you a chance to brief and defend.  But wow.

If there's going to be a motion defending the assertion of any type of privilege or even the purported attempt to block their production, you can't do that without conferring with Mr. Kuntz.  If you are going to insert yourself into this action, whether or not the motion to intervene is still pending, you just can't have it both ways.

We need a briefing schedule in order to deal with your issues of privilege, which at least, as far as I can tell, involve the following.  Tell me when to stop, Mr. Kuntz.

You have got previous identification by Mr. Careaga of at least tens of thousands of documents but only a handful of documents that are logged.  That doesn't quite tell us what the balance of nonprivileged stuff is, and nothing has yet been released, right?

MR. KUNTZ:  Correct.  Correct.

THE COURT:  So that is at least one thing for which I'm going to require meaningful conferral.

All the documents went to your firm, right, Mr. Rodriguez?

MR. RODRIGUEZ:  No.  The documents that were post when

Mr. Careaga began working with my firm -- I'm sorry.  Let me start again.

Judge, I have to apologize belatedly.  I went and read the transcript.  I know your Honor at the last hearing was somewhat confused, and I added to that confusion, and it's my fault.  I should know better.

What happened is we got Careaga the services of Consilio, which is an outfit that he works for, actually.  They are a management control outfit.  We hired a paralegal to work with him.  He then got documents that he believed to be responsive to the subpoena, which, as it relates to our firm, documents that were post the time that Mr. Careaga came to work with us, which is sometime around 2014, the second quarter of 2014.  Those documents, there were 298 and 25.  Those are the documents that are on the privilege log.

Beyond that, there were a few more documents, and I don't know the exact number, but there's not tens of thousands.  There were tens of thousands that he initially identified, which he culled through to then respond, and it was him -- your Honor was loud and clear.  I heard it.  I listen to federal district judges very carefully.  You said, hey, it better be Careaga deciding what was responsive.

Then he turned those documents to us and we created a privilege log to the ones that we deemed we wanted to assert a work product protection over.  We have not as of yet asserted

attorney-client.  We have asserted work product protection.

THE COURT:  OK.  All right.  Listen, I think that, Mr. Rodriguez, for whatever it is worth, I think I hear Mr. Kuntz saying that he is primarily going to fight you on when you logged things because of that 2015, and it may very well be the case that with a little meaningful conferral you guys are able to drill into whether the fastest and least-resistance path just has you supplementing the second privilege log.  We are going to get there, but that is how I see at least your dispute.

The Careaga privilege log, Halpern privilege log is a little bit both weirder and more difficult to figure out exactly where we go from here on it, because -- and it seems part of that problem is that Mr. Kuntz hasn't had a meaningful opportunity to confer with anybody.

Now you've heard Mr. Careaga say he didn't make this document.  There's no conferral with him.  I'm going to let you put in writing whether you think there's a problem with that. The insistence that they don't represent him and are viewing the documents, again --

MR. KUNTZ:  (Inaudible) a lot of privilege, Judge.

THE COURT:  What is that now?

MR. KUNTZ:  It would seem if nothing else to be waiving a lot of privilege.

MR. SANTOS:  Your Honor, if I can --

THE COURT:  Depends.

MR. SANTOS:  If I can --

MR. KUNTZ:  Facts.  I know.

MR. SANTOS:  If I can respond.

THE COURT:  To what?

MR. SANTOS:  This is Ernesto Santos.

THE COURT:  Right, but respond to what, just so that I'm oriented?

MR. SANTOS:  I guess what you were talking about regarding us representing Mr. Careaga and the privilege log, and maybe I can clear some things up.

Our firm does not represent Mr. Careaga.  Our relationship with Mr. Careaga began in 2006 and ended when Mr. Careaga had his issues with the Florida Bar.

During that period of time, and I believe it's 2006 to approximately 2012, if I'm correct, Mr. Careaga was a licensed attorney in good standing with the Florida Bar.  We were cocounsel on these cases from 2006 to 2012/2013.

Following that, our relationship as cocounsel ended.

The documents, similar to what Mr. Careaga did with Mr. Rodriguez's firm, Mr. Careaga combed through the documents that he believed were responsive and then provided us.  Because those cases, a majority of the documents that are identified in it, involve active cases.  But we are the attorneys that are representing those clients and it's our work product.

Mr. Careaga is not the sole owner of that privilege.  We are.

So since we are not admitted in the case, there is no other avenue for us to protect our work product except to advise Mr. Careaga that these are the documents that we believe are protected through attorney-client privilege as well as work product.  That's what that document represents.

It is not that we represent Mr. Careaga; it is that the work that was performed that is identified in the responsive documents that Mr. Careaga identified, those documents pertain to work that we have done and we did with Mr. Careaga in connection with the legal representation that was occurring between 2006 --

THE COURT:  So your law firm has a duplicate set of these documents that were also sent by Mr. Careaga to Mr. Rodriguez's firm?

MR. SANTOS:  It's a separate time period.  We are not involved --

THE COURT:  OK.  Stop.  Stop.  Please.  I just want straight answers.

MR. SANTOS:  No.

THE COURT:  Mr. Careaga, did you divide up your paperwork into two time periods --

MR. CAREAGA:  Yes.

THE COURT:  -- and send it to two law firms?

MR. CAREAGA:  Exactly, your Honor.

THE COURT: OK. Thank you.

MR. CAREAGA: Yes.

THE COURT: OK. What about the email --

MR. KUNTZ: Are you sure about that?

THE COURT: Hold up, Mr. Kuntz.

What about the emails, did you batch that to each of them?

MR. CAREAGA: Yes. Yes. Mr. Halpern's firm also hired a separate outfit, company, to comb through thousands of emails, just like Mr. Rodriguez hired a separate outfit to help me search through thousands of emails. So both different sets of firms hired their own respective document review outfits --

THE COURT: OK.

MR. CAREAGA: -- to go through the emails.

THE COURT: Thank you.

Mr. Rodriguez, what is the balance of emails that your team reviewed and did not assert a privilege to?

MR. RODRIGUEZ: It's a very small number. Judge, we didn't review --

THE COURT: You just told me you only asserted a privilege only like 25 and the other one is like six pages long.

MR. RODRIGUEZ: We didn't review any documents other than the documents that Mr. Careaga provided us. Your Honor was very clear in her --

THE COURT:  Mr. Rodriguez, please.  There are physical documents.  There were like a hundred or so of those, and there were tens of thousands of emails.

MR. RODRIGUEZ:  OK.

THE COURT:  Did your firm review the tens of thousands of emails?

MR. RODRIGUEZ:  No.  We reviewed the emails that Mr. Careaga sent to us as responsive to the subpoena.  We reviewed those emails only for privilege.  We did not review the tens of thousands of emails.

THE COURT:  OK.

MR. RODRIGUEZ:  We provided Mr. Careaga with Consilio, which, by the way, he will respond to this or he will testify to this, that he's had experience as a paralegal working with Consilio.  He knows them very well.  It was a software and a platform that he's familiar with.

To answer directly to your question, ma'am -- I'm sorry -- the answer to your question is nobody in my firm looked at any emails of the ten thousand.  Only the ones Careaga sent to us as responsive to the subpoena.

THE COURT:  Mr. Careaga, you told me at the last hearing that you sent them tens of thousands of emails.  Did you send them a new batch that was only a couple of emails?

MR. CAREAGA:  Allow me to provide some clarification, Judge.

I have reviewed pages 11, 12 and 13 of the transcript of the hearing that we last had, and at that time I went ahead and advised the court that the universe of people that I dealt with from 2014 to the present via email was around 10,000.  So that was the universe of people that I either sent an email to or that I received emails from that were connected to this case.

Once I went ahead and did that, then I was provided the assistance of Consilio in order to narrow down from that universe of 10,000 emails which would be responsive to the numbered items in the subpoena.

Once I identified the documents that were requested in the subpoena, that I felt that I had custody or possession of, then I went ahead and provided search terms to Consilio and say, listen, these are the numbered items in the subpoena that I believe I have documents for.  The universe is 10,000, but I'm going to give you search terms so that you can focus in on documents that would be responsive to the numbered items in the subpoena.

That exercise resulted in about 16 to 1700 emails I had to personally review in order to then make responsiveness calls, and that took me 19 hours to do to make sure that I complied with the court's deadline.

THE COURT:  And what was the balance that you determined were responsive?

MR. CAREAGA:  The number that then I turned over to Mr. Rodriguez's firm.  So I believe he just said they were --

MR. RODRIGUEZ:  About 700 documents, your Honor.

MR. CAREAGA:  That's correct.

THE COURT:  One at a time.

MR. RODRIGUEZ:  700 pages.  I'm sorry.  It's about roughly 300 documents.

THE COURT:  OK.  Even if we start with 300 documents, you've only got something like under a hundred logged.

MR. RODRIGUEZ:  No.  We have -- I'm sorry for the confusion, your Honor.  We have 25 logged in the revised privilege log and we have 298, for lack of a better term, described or logged in the post-litigation work product descriptions.

By the way, I don't know if you have the same problem I do, Judge.  I'm not terribly -- you have to look at them on Excel or else they're so small.  They're really difficult to look.  When I print them out from a PDF, it's like -- it hurts my eyes.  It is really tough.  You have to look at them, and I'm not terribly computer literate.  My son, who is my law clerk, I had him see if he could print out the Excels so I could see them, so I could actually see them as opposed to being so small that you can't really see them.  But you have to look at them through Excel.

If we haven't provided Judge Louis that, Stephanie, we

need to provide that to her because it's very difficult to look at from a PDF if you print them out.  I mean, maybe you can increase the size.

THE COURT:  I got it.  I got it.  What I'm looking at, though, has about 28 lines per page, six pages.  That is not 298.

The bottom line, Mr. Rodriguez --

MR. RODRIGUEZ:  Yes, ma'am.

THE COURT:  -- the number of emails that you received from Mr. Careaga over which you have not asserted a privilege is how many?

MR. RODRIGUEZ:  Stephanie, do you know the answer to that?  I know there's one for sure.  No, there's more.  I'm sorry.  Emails as distinct from hard documents, Judge?

THE COURT:  Yes.  Yes, emails.

MR. RODRIGUEZ:  All right.  OK.

Stephanie, do you know the answer to that?  I think there's one for sure.  I don't know the answer to that, though.

THE COURT:  Go ahead, Stephanie.

MS. NUNEZ:  Just one email.  Just one email, your Honor.

THE COURT:  Just one.  Oh God, we're doing an *in camera*.  I can feel it coming.

OK.  Same question to you, Mr. Santos.

MR. SANTOS:  Your Honor, I don't have that information

with me right now.  I think I can help in that, your Honor, because one of the things that your Honor should know is that based on the -- and I don't know what the right terminology is -- but based on how Mr. Careaga kept his emails, he could only retrieve emails back to 2014.  I don't know at some point in 2014 -- Victor, tell the judge, please, when in 2014.

So most of the emails, if not all the emails, relate to when he worked for Rodriguez Tramont & Nunez and on behalf of the intervenors.

MR. CAREAGA:  Yes, Judge.  To corroborate what Mr. Rodriguez is saying, I did not have the ability to look at any emails predating 2014, which is the time period in which I worked with Mr. Santos' firm and with --

THE COURT:  Can I ask a more discrete question, Mr. Careaga?

MR. CAREAGA:  Sure.

THE COURT:  Did you send emails to be reviewed by Mr. Halpern's law firm?

MR. CAREAGA:  No, because they were all purged.

THE COURT:  OK.  Zero was the answer.  OK.

OK.  Here's what we are going to end up having to do.

MR. KUNTZ:  Your Honor --

THE COURT:  Who is that?

MR. KUNTZ:  It is Robert Kuntz, Judge, and I hate to do this on Zoom.  There is one thing that I really, we can't

walk past.

In addition to sort of granting themselves a self-help motion to intervene, what the Halpern firm has done is they are now asserting attorney-client as well as work product privilege.  Your Honor will recall the whole discussion about how law firms don't own the attorney-client, their clients do.

You asked for people to be identified.  That didn't happen with the actual intervenors.  So they are just here on work product.  Now Halpern is intervening, again by its own self-help order, and some of the privilege assertions are attorney-client.  That seems wildly out of balance to me, your Honor.  So before you say what we are going to do, I wanted to put that issue in front of you.

THE COURT:  I saw it in your notice and I saw it on the privilege log.  I assume it is also a self-help motion for reconsideration.

I need this to be, frankly, presented in a way that is meaningful and I need to have the evidence that should have been advanced to support it.

In particular, I have not heard a fulsome argument, I admit, Mr. Rodriguez, on your reliance on the local rule or the institution of litigation in 2015.  It seems to me that at least the reliance on the local rule is misplaced.  I tell you that so that you know where to put your energies as you brief this.  We need to do it fairly concisely just because I don't

want it to get unwieldy.

Generally speaking, when I have, and so rarely does anybody try to notice a privilege dispute as opposed to briefing it, but when it comes up like this, I usually say, OK, your notice is essentially the motion to compel.  So now, person defending your assertion of privilege, it's functionally your motion for a ruling upholding your assertion of privilege, which means you bring to bear everything you intend to bring to bear to support it.

A quick Westlaw search will reveal that I can be a little sticky about the evidentiary burden that is associated with privilege.  I don't discourage anyone from looking at prior rulings on that point.

So, Mr. Rodriguez -- so anyway, I will have my movant, my privilege holder, assert in a motion that says this is why you should not overcome my assertion of privilege.  It is sort of a functional equivalent of like a protective order type of application.  Think of it that way from, again, the evidentiary standpoint.

Then once our cards are on the table, then the challenger and the court have a more meaningful opportunity to say, if that's all you got, here are your holes.

You all have to confer before you file this, though, meaningfully and recognizing that if I have to do this *in camera*, I will.  I don't want to, and I'm not going to until I

at least see the cards on the table that say if everything they say is true, then at least there's an assertion of privilege. *In camera* should be reserved for, yes, but we're not 100 percent sure that those characterizations are correct.  So we have to at least get there.

Did you all talk at all about timing before I came in here or are we doing this in a vacuum?

MR. RODRIGUEZ:  We didn't talk about timing.

THE COURT:  All right.  I don't know that we would need another hearing on this, and I also question -- this is, I think, what we imagined our Thursday hearing to be, but we are here today.

MR. KUNTZ:  Yes.

THE COURT:  Do we have anything else to do on Thursday?

MR. KUNTZ:  Your Honor, I am anticipating that you are going to tell somebody that they have to produce something, and if we got that production then, we are just rolling on into our deposition on the 10th and there shouldn't be any more business with the court.  With me just putting a stake in the ground that says whether all this is resolved by the time we get to the depo, I'm going to have to reserve some time so I can come become and get my second bite if I need it.

All of this is a long way to say, seems to me we can forego the hearing that was set for the 3rd, which was set for

Zoom, your Honor.  We can forego that because I think you're about to set a briefing schedule.  We have a depo in a little more than a week, and presumably I will have some documents and plenty to chew on by then.

THE COURT:  OK.  Well, it sounds like you're going to have one document, as far as I can tell.

MR. RODRIGUEZ:  That's --

THE COURT:  Mr. Santos, is there -- no, Mr. Rodriguez?  No?

MR. RODRIGUEZ:  No.  Again, there's a lot of moving parts here.  One email, but there's multiple documents from the group of one or 200 that are --

THE COURT:  The hard copy.

MR. RODRIGUEZ:  -- the hard copy documents.

Your Honor, I also have --

MR. KUNTZ:  Can I get those before the depo?

THE COURT:  Wait.  Wait.  Guys, come on.

Mr. Rodriguez, what is the holdup in having turned over those nonprivileged, hard copy documents?

MR. RODRIGUEZ:  It is up to Mr. Careaga to turn over the documents, Judge.

Listen, right now I'm all in favor of turning them over before the depo because right now the subpoena says bring them to the depo.  I'm all in favor of turning them over before the depo because it will make for a shorter depo.

THE COURT:  Yes.

MR. RODRIGUEZ:  I'd rather not be there longer than I have to, and I'd rather have Mr. Kuntz have a chance to review them.  So I'm fine when Mr. Careaga can produce these documents.  There's not that many of them.

I have to communicate with him.  I mean, I shared with him the logs, but we have to point out specifically which ones are the ones that he gave us that are not on the log so they get turned over to Mr. Kuntz.  I think he can do that in relatively short order.  I don't want to speak for him.

THE COURT:  Great.  OK.

MR. RODRIGUEZ:  Judge, I have one issue with regard to the papers we are going to file.  There is an issue that we've talked about in every one of the hearings, which is Judge Sippel's rulings, that I think your Honor had at least indicated that you would try to honor, which is that we not get into documents and things that relate to existing clients.

I think there is an argument to be made that --

THE COURT:  I've heard it.  I hear it.  That all of these documents apply to all the clients equally.

MR. RODRIGUEZ:  Right.

THE COURT:  Yes, but you have to substantiate that in some way, shape, or form.  It sounds like -- and I think this is why we're headed down to an *in camera* review.

MR. RODRIGUEZ:  OK.

THE COURT:  It is just a very -- you've seen them, we haven't, and so from my perspective it's a very generic argument that says, essentially, these are your instructions to go out into the world, and I don't know.

MR. RODRIGUEZ:  I'd like just an opportunity to include in my moving papers, to include that argument as to why it is that all these documents at least fall under what Judge Sippel had indicated he didn't want defendants getting into, in this case applicants, and in fact, in open court the applicant said, no, we're not going to go there; we're not going to go there, Judge.  I just want that issue, I want to be able to memorialize our position on that issue and then your Honor can rule.

By the way, I have zero problem -- I know it is an easy fix for everybody but you, and you have a lot of work if it is *in camera* -- I have zero problem with you looking at anything *in camera*.  There is nothing here of the nature of what Mr. Kuntz is looking for.  We're just opponents.  I don't want him looking under our tent and looking at what we're doing.  It is just not right.

Part of the documents that we filed for your Honor's consideration, and we are going to connect the dots in our papers, is they have been tough on us in La Oroya, because they're on a campaign of misinformation, blaming all the world's ills on the lawyers.  I don't necessarily think it is

appropriate for them to know where we go, what hotels we stay in, where we go, how much money we're spending.  I mean, it is in the nature of the work product process.

OK.  We're opponents in Missouri.  The judge said you can't have that information, and now they're coming and trying to get it this way.  I get it.  There is a balancing act here, and I get it.  I just want your Honor to at least understand where we're coming from, which is we feel everything here is work product because it's all done in anticipation of litigation or in furtherance of an ongoing litigation.  And things that might appear innocuous, you say, hey, well, receipts from third parties, but why should they know who we're dealing with?

They give a hard time to a lot of people that deal with us and are connected to the efforts of what they refer to as the plaintiffs' law firms, U.S. plaintiffs' law firms, because they blame all the problems of the town, economic problems on us, and that is not right.  I just want your Honor to take that into consideration.

We will brief it extensively, but third parties, just because documents are going to third parties or from third parties, that doesn't mean they're not work product.  It's different than attorney-client privilege, and we'll brief that.

THE COURT:  OK.

MR. KUNTZ:  I'll take any attempt at a response.

THE COURT:  Well, listen, what I'm chewing on is what sounds like another ground for a protective order.  The previous protective order was really predicated -- I mean, to the extent it was not a privilege but a relevance issue or propriety issue -- on not violating another judge's order.

Maybe this argument or these facts were present in the other filing.  I'm not sure that I was sensitive to them or that they were in the forefront.  But I hear Mr. Rodriguez making a new argument that really isn't privilege.  So what I'm trying to do is on the fly figure out whether this is all the same briefing because it's a different question altogether.  It is not can I sustain your assertion of privilege but whether it's privileged or not I should nonetheless preclude its production.

MR. KUNTZ:  Judge, it's been decided.  Two things, Judge.  Judge Leonard decided on the 1782.  They immediately took an all writs motion to Judge Sippel in the Eastern District of Missouri.  That ended up really becoming a motion before Judge Sippel and Judge Perry, who held a hearing jointly, which I've never had before, two district court judges holding a joint hearing, but they did, and all of these issues, can they get 1782 discovery when we're litigating like mad in the Eastern District and we're their opponents.  All of this was heard and decided by Judge Sippel.

Judge Sippel's final order on the 1782 was, and he

made it clear, your Honor, by the way, that nothing from the 1782, none of that may ever get in front of Judge Sippel.  He is going to decide whether he wants to hear any of that.  But he heard all of this in his courtroom.  Judge Perry heard all of this in her courtroom, on whether we should be entitled to this discovery, which is about a criminal action pending against Mr. Careaga and a bunch of other people in Peru, and those judges, concerned as they must be for the issues that Mr. Rodriguez just raised, Judge Sippel says, no, you can have the 1782, of course you can, that is a separate thing.

Your Honor's kind of being led into a rehash.  They want you to -- and you should, of course, honor Judge Sippel's orders.  We don't want to be violating one district's orders in another district.  But now they're saying, but maybe you should reconsider and do what Judge Sippel and Judge Perry, who lived with this case for a decade, didn't think they should do.

MR. RODRIGUEZ:  That is absolutely not --

THE COURT:  Well, listen, it is nuanced.  It is not just that.

The bottom line is, Mr. Rodriguez, if you want to use space in your briefing, we need to be efficient, we need to get this in writing, advance your positions, and it has to be specific.  That's part of the problem, is what was in front of Judge Sippel.

Now, I don't know if it means that for the first time

you all have actually looked at the documents and you're in a position to make the representation that these documents apply with equal force to the plaintiffs who are in or out of the case, because I know at least one of the times I spoke to you no one had even looked at the documents. So you weren't in a position to represent what they were.

Let's get a schedule on hand here.

Mr. Careaga, are you going to produce these documents that aren't logged to Mr. Kuntz by Friday?

MR. CAREAGA: No problem, your Honor.

THE COURT: Thank you, Mr. Careaga.

OK. And what format are you going to produce it? Have you two talked about that, whether you're mailing a package of documents or you're scanning it? How are we producing these things?

MR. CAREAGA: That's a good question. I'm open to suggestions.

THE COURT: What format do you have them now? You told me that you had a review platform. Are they digital?

MR. CAREAGA: I have physical documents in a banker's box. As far as email documents, I think that there's only one or two, as Mr. Rodriguez pointed out. So I was under the impression that I would be delivering copies of the physical documents that are not privileged.

THE COURT: Right.

MR. CAREAGA: I have those.

THE COURT: The physical documents, have they not been scanned by the review platform? Do they not exist in a digital format?

MR. CAREAGA: I would be guessing if they had, your Honor. All I know is I have those physical documents in my possession. They may have been scanned, yes. I could follow up with the services to see if they had. Chances are they were, but I'm happy to go ahead and just provide copies of the exact documents I have in my possession.

THE COURT: Mr. Rodriguez.

MR. RODRIGUEZ: Your Honor, my understanding is that the post -- the 10,000 emails, those things are digitized and in Consilio. I do not think that the other documents, the hard copies -- I may be wrong -- I don't think they have been scanned anywhere.

We have a scanner here, Victor. You can come into the office and we can get that done.

MR. CAREAGA: Super.

THE COURT: OK. Then, Mr. Rodriguez, you will likewise be in a position to file your motion to uphold your assertion of privilege by Friday?

MR. RODRIGUEZ: Ken?

THE COURT: Is that a yes?

MR. RODRIGUEZ: Well, Ken, can we do it? Yes.

MR. CHESEBRO:  Yes.  To file an opening motion protecting our --

MR. RODRIGUEZ:  Right, just asserting.  As the judge indicated, we're the moving party.

MR. CHESEBRO:  Right.  Yes.  That makes sense.  We would want to keep it moving.  Yes, that makes sense.

MR. RODRIGUEZ:  Right.

THE COURT:  OK.  Then, Mr. Kuntz, I know you don't know what you are about to get, but your time to respond?  You will have it on the 4th.

MR. KUNTZ:  Yes.  So we will respond in a week, Judge.  We will be preparing for the depo.

With regard to formal production, I guess, your Honor, my hope is that we will get things in accord with the rules, in the normal course of business, that electronic filings are going to be in their native form with their metadata, and all that, but we can certainly respond in a week.  Whatever that following Friday is.  The 10th is the day of the depo.  We will get a response out to your Honor on that.

Let me ask you, with regard to the depo going forward, Judge, since we're going to have some unresolved issues about some documents, and I also anticipate possible confusion in terms of objections.  You're going to have all these lawyers there.  None of them represent Mr. Careaga.  I don't want to end up on the phone to chambers in the middle of a deposition.

I know magistrates just love when that happens.

I wonder if your Honor is interested in providing a little guidance in terms of what that deposition looks like. It is going to be up to me to spare some time so I can come back on whatever documents I don't have there that I might later get. I understand that.

My concern is that you've seen how squishy it is about who is representing here for what reason, who is coming in. I'm trying to forestall a problem that I see coming, Judge, when we sit down to this deposition and I'm asking questions that don't go to documents. Because all we are talking about with Mr. Rodriguez and Mr. Halpern's firm are documents.

I'm trying to forestall that train going down that track, Judge, because I am already going to be limiting my time to make sure I can come back and pick up whatever documents I hope your Honor will later rule were improperly asserted privilege over.

THE COURT: OK. So I can't fairly tell what the question is other than is anyone allowed to assert objections. You object to the form of a question and you don't interrupt the testimony other than for the assertion of a privilege.

MR. KUNTZ: Your Honor, I wanted that to be here because I have a fear for how this is going to go and I wanted us to have that brief conversation now so that if I am put in the uncomfortable position of having to make a call in the

middle of a deposition, I have at least tried to act in good faith that that is a concern.  And we all know what the rules are.  There's a lot of experience on this phone, on this call, and one trusts that it will work that way.

THE COURT:  OK.  All right.

So after the 11th, Mr. Rodriguez, if you wish to file a reply, that date will be?  The 18th.  I'm giving you a full week.  You carry the burden, and you'll have your full seven days to file it on the 18th.

I just can't meaningfully address your objections or your challenge because, truth be told, as I sit here I don't understand the assertion of privileges that are put forth in this log because they're not substantiated by any evidence, and I don't even have the code.  So I would encourage you in your motion to make sure that I have everything that I would need in order to see it your way.

Then once I do, then, Mr. Kuntz, I will have a better sense of whether or not I agree with you on your challenges.

Since I know Mr. Rodriguez is a stickler for the local rules, I know that you will all meaningfully confer within not only the letter but the spirit of local Rule 7.1 before the motion is filed on Friday, and that means whoever needs to be on that conferral.  I don't, as I sit here, understand precisely who that is going to be, but I know that you guys will.

Once I have it fully briefed, if I think I need a hearing, then I will contact you to set it. But I am hopeful, as a motion on privilege should be sort of self-encapsulated, but this has been an unusual and complex case, so if I need to hear from you, I will. I will warn you now that I think we're doing it in person. Just saying. OK.

MR. KUNTZ: Does that forego the hearing on the 3rd, Judge?

THE COURT: Beg your pardon?

MR. KUNTZ: Do you want to forego the hearing that is coming up for this Thursday?

THE COURT: Well, I really set it for you and you're telling me you don't really think you need it on the 4th, and so I would be inclined to cancel it. I think that that would be a big waste of your time --

MR. KUNTZ: Sounds like it's covered. Yes.

THE COURT: -- collectively.

So why don't we go ahead and cancel that.

Mr. Santos, I anticipate your question is what is your briefing schedule, and I think that will depend on your motion to intervene, which we have under advisement and I suspect we will have a ruling on soon. If you are permitted to participate, you will have the same briefing schedule. So be warned.

MR. RODRIGUEZ: OK. Your Honor, any idea whether or

not that ruling will be entered on the motion to intervene prior to the deposition on August 10th.

THE COURT:  Yes.

MR. RODRIGUEZ:  OK.

THE COURT:  With that, once we have our fully-briefed and supported assertion of privilege, then I'll be in a better position to tell you yay, nay, or I need to see it.

MR. RODRIGUEZ:  Thank you, Judge.

MR. SANTOS:  Thank you, Judge.

THE COURT:  As we always do, one step at a time with this interesting case.

OK.  So I will look for your submissions and possibly seen you after that.  If not, good luck on the 10th.

Anything else?  I will go in order.

Mr. Kuntz.

MR. KUNTZ:  Nothing further for the court, your Honor. Thank you for your time today.

THE COURT:  Of course.

Mr. Careaga.

MR. CAREAGA:  Nothing further, your Honor.  Thank you for your time as well.

THE COURT:  Sure.

Mr. Rodriguez.

MR. RODRIGUEZ:  Nothing, Judge.  Thank you for your generosity.  I appreciate it.

THE COURT:  Of course.

All right.  You are all excused.

We will be adjourned.

(Adjourned)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription to the best of my ability of the digital audio recording in the above-entitled matter.

August 7, 2023              s/ Joanne Mancari
                           Joanne Mancari, RPR, CRR, CSR
                           Court Reporter
                           jemancari@gmail.com

MR. CAREAGA: [37]  4/3 4/5 7/24 8/9
8/15 8/21 9/4 9/8 9/12 9/14 10/1 10/3
10/7 18/14 18/17 18/21 18/23 19/2 19/11
31/23 31/25 32/2 32/8 32/14 33/24 35/1
35/4 37/10 37/16 37/19 47/10 47/16
47/20 48/1 48/5 48/19 53/20
MR. CHESEBRO: [2]  49/1 49/5
MR. KUNTZ: [34]  3/8 4/8 4/23 11/1
14/15 16/14 18/11 20/19 20/25 22/1 25/3
25/12 26/8 26/13 26/15 26/20 27/20
29/21 29/23 30/3 32/4 37/22 37/24 40/13
40/16 41/16 44/25 45/15 49/11 50/22
52/7 52/10 52/16 53/16
MR. RODRIGUEZ: [68]
MR. SANTOS: [15]  3/16 3/18 9/22
24/25 26/2 27/1 29/25 30/2 30/4 30/6
30/9 31/16 31/20 36/25 53/9
MS. NUNEZ: [2]  24/17 36/20
THE COURT: [136]
THE DEPUTY CLERK: [1]  3/3

**1**

10,000 [5]  5/17 34/4 34/10 34/16 48/13
100 [1]  40/3
10420 [1]  2/8
10th [5]  19/15 40/19 49/18 53/2 53/13
11 [1]  34/1
11th [1]  51/6
12 [6]  12/7 12/8 22/8 22/15 23/13 34/1
12th [1]  11/12
13 [1]  34/1
13th [1]  17/12
15th [2]  12/1 17/8
16 [1]  34/20
1700 [1]  34/20
1782 [10]  5/10 15/14 15/16 15/22 17/5
45/16 45/22 45/25 46/2 46/10
18th [2]  51/7 51/9
19 [1]  34/22

**2**

200 [1]  41/12
2006 [5]  8/25 30/13 30/15 30/18 31/12
2012 [1]  30/16
2012/2013 [1]  30/18
2013 [2]  8/25 30/18
2014 [7]  28/13 28/14 34/4 37/5 37/6
37/6 37/12
2015 [17]  5/4 5/13 11/13 12/7 12/8
15/24 16/20 20/17 21/3 21/21 21/21 22/8
22/15 22/25 23/13 29/5 38/22
2023 [2]  1/6 54/12
21115 [1]  3/3
22 [2]  3/3 25/15
22-MC-21115-JAL [1]  1/2
2300 [1]  2/5
25 [7]  12/13 12/18 20/6 20/7 28/14
32/21 35/11
2500 [1]  1/17
2525 [1]  1/16
255 [1]  2/4
26.1 [5]  11/10 11/17 12/3 15/12 23/11
28 [1]  36/5
298 [7]  12/13 12/14 12/17 12/18 28/14
35/12 36/6

**3**

300 [2]  35/7 35/8
304 [1]  2/8

305-350-2300 [1]  2/5
305-445-2500 [1]  1/17
31 [1]  1/6
33134 [2]  1/16 2/4
33178 [1]  2/9
3rd [2]  40/25 52/7

**4**

4th [2]  49/10 52/13

**5**

54 [3]  1/9 9/19 9/21

**6**

600 [1]  12/16

**7**

7.1 [1]  51/21
7.7 [1]  4/17
700 [2]  35/3 35/6
74th [1]  2/8

**A**

ability [2]  37/11 54/9
able [3]  14/21 29/7 43/11
about [35]  4/9 5/23 9/10 9/25 12/18 14/8
15/9 15/23 15/25 18/25 21/14 21/20
22/20 25/15 26/6 30/9 32/3 32/4 32/6
34/20 35/3 35/6 36/5 38/5 39/11 40/6
40/8 41/2 42/14 46/6 47/13 49/9 49/21
50/7 50/11
above [1]  54/10
above-entitled [1]  54/10
absolutely [1]  46/17
accord [2]  4/10 49/14
accounted [1]  7/15
accurate [3]  18/12 25/24 54/8
act [2]  44/6 51/1
acting [2]  15/6 16/3
action [5]  5/5 5/12 17/5 27/10 46/6
active [1]  30/24
actual [1]  38/8
actually [4]  5/22 28/8 35/22 47/1
added [3]  5/16 5/19 28/5
addition [2]  10/12 38/2
address [5]  4/20 13/23 15/4 25/20 51/10
addressed [1]  8/16
adequate [1]  20/22
adjourned [2]  54/3 54/4
admit [1]  38/21
admitted [3]  3/13 8/1 31/2
advance [1]  46/22
advanced [1]  38/19
advise [1]  31/4
advised [1]  34/3
advisement [1]  52/21
affidavit [8]  9/9 9/14 10/2 10/15 10/23
11/1 11/2 13/3
after [5]  5/6 5/20 12/8 51/6 53/13
afternoon [3]  3/8 3/10 3/16
again [6]  24/3 28/2 29/20 38/9 39/18
41/10
against [1]  46/7
ago [1]  18/20
agree [2]  26/18 51/18
ahead [10]  3/17 10/3 13/4 19/14 34/2
34/8 34/14 36/19 48/9 52/18
Alhambra [1]  2/4
all [60]
allow [2]  22/20 33/24

allowed [4]  11/15 15/7 17/7 50/19
almost [3]  11/22 14/2 14/25
along [2]  3/12 5/12
already [3]  6/22 14/10 50/14
also [10]  2/10 4/16 19/3 27/5 31/14 32/8
38/15 40/10 41/15 49/22
although [1]  5/14
altogether [1]  45/11
always [1]  53/10
am [10]  7/19 13/20 13/21 18/7 20/17
21/17 40/16 50/14 50/24 52/2
among [1]  20/19
another [6]  12/19 21/18 40/10 45/2 45/5
46/14
answer [9]  9/2 14/11 19/15 33/17 33/18
36/12 36/17 36/18 37/20
answers [2]  24/6 31/19
anticipate [2]  49/22 52/19
anticipating [1]  40/16
anticipation [2]  13/11 44/9
any [21]  4/18 6/14 7/25 9/6 13/21 16/7
17/14 18/1 18/9 18/23 19/20 24/12 27/7
32/23 33/19 37/12 40/19 44/25 46/3
51/13 52/25
anybody [3]  7/7 29/15 39/3
anyone [2]  39/12 50/19
anything [10]  5/6 9/25 15/2 17/14 21/1
22/11 22/12 40/14 43/17 53/14
anyway [2]  25/8 39/14
anywhere [1]  48/16
apologize [2]  24/17 28/3
apparently [1]  26/23
appear [1]  44/11
appearances [3]  1/13 1/19 3/6
applicable [1]  22/16
applicant [1]  43/9
applicants [1]  43/9
application [1]  39/18
applies [1]  21/12
apply [2]  42/20 47/2
appreciate [5]  15/8 16/6 16/8 24/5 53/25
appropriate [1]  44/1
approved [1]  17/6
approximately [1]  30/16
arbitration [1]  21/11
are [111]
aren't [1]  47/9
arguing [1]  13/19
argument [6]  38/20 42/18 43/3 43/6 45/6
45/9
around [2]  28/13 34/4
artificial [1]  21/3
as [55]
ask [5]  5/23 6/1 16/5 37/14 49/20
asked [6]  5/25 8/3 12/21 13/3 13/3 38/7
asking [1]  50/10
assert [7]  6/21 7/7 12/16 28/24 32/17
39/15 50/19
asserted [6]  20/23 28/25 29/1 32/20
36/10 50/16
asserting [2]  38/4 49/3
assertion [11]  23/18 27/7 39/6 39/7
39/16 40/2 45/12 48/22 50/21 51/12 53/6
assertions [3]  11/19 12/2 38/10
asserts [2]  6/21 7/4
assist [2]  3/14 9/15
assistance [1]  34/9
associated [1]  39/11
assume [1]  38/15
assumptions [1]  17/2

**A**

at [55]
attempt [2] 27/8 44/25
attorney [9] 7/4 7/7 29/1 30/17 31/5 38/4 38/6 38/11 44/23
attorney-client [8] 7/4 7/7 29/1 31/5 38/4 38/6 38/11 44/23
attorneys [1] 30/24
audio [2] 1/11 54/9
August [3] 19/15 53/2 54/12
author [1] 24/9
authored [1] 6/18
authorities [1] 15/21
authors [1] 22/17
avenue [1] 31/3
awfully [1] 21/19

**B**

back [5] 16/25 17/3 37/5 50/5 50/15
bad [2] 21/12 26/23
balance [4] 27/18 32/16 34/24 38/11
balancing [1] 44/6
banker's [1] 47/20
Bar [2] 30/14 30/17
based [2] 37/3 37/4
batch [2] 32/6 33/23
Bates [4] 6/15 9/20 12/12 12/12
be [67]
bear [2] 39/8 39/9
because [37] 3/13 5/6 7/11 8/12 14/3 15/2 19/20 21/21 23/6 23/11 24/4 24/16 25/8 25/20 26/16 26/22 29/5 29/13 30/22 36/1 37/2 37/19 38/25 41/1 41/23 41/25 43/23 44/9 44/17 44/21 45/11 47/4 50/11 50/14 50/23 51/11 51/13
become [1] 40/23
becoming [1] 45/18
been [24] 5/12 5/15 6/5 6/19 6/22 7/6 13/18 14/13 15/20 18/1 18/9 18/24 25/10 25/13 25/18 26/17 27/18 38/19 43/23 45/15 48/2 48/7 48/15 52/4
before [16] 1/12 4/13 6/24 15/14 17/6 20/6 25/20 38/12 39/23 40/6 41/16 41/23 41/24 45/19 45/20 51/21
Beg [1] 52/9
began [2] 28/1 30/13
beginning [3] 10/4 13/6 17/4
behalf [7] 3/12 3/18 6/4 13/5 16/3 25/1 37/8
behind [1] 13/20
being [4] 15/8 19/17 35/23 46/11
belatedly [1] 28/3
believe [11] 10/16 18/21 18/23 20/5 20/6 25/2 26/3 30/15 31/4 34/16 35/2
believed [2] 28/10 30/22
believing [1] 26/9
benign [1] 13/12
best [2] 18/9 54/9
better [5] 28/6 28/21 35/12 51/17 53/6
between [2] 14/12 31/12
Beyond [1] 28/16
big [5] 4/12 4/20 4/23 6/10 52/15
biggest [2] 5/2 16/19
bit [3] 6/23 12/10 29/12
bite [1] 40/23
blame [1] 44/17
blaming [1] 43/24
block [1] 27/8
Bogard [2] 8/21 13/8
both [4] 9/4 27/11 29/12 32/11

bottom [2] 36/7 46/20
Boulevard [1] 1/16
box [1] 47/21
brief [6] 21/5 27/5 38/24 44/20 44/23 50/24
briefed [3] 21/25 52/1 53/5
briefing [9] 20/24 25/20 27/12 39/4 41/2 45/11 46/21 52/20 52/23
bring [4] 14/17 39/8 39/8 41/23
bunch [2] 4/16 46/7
burden [2] 39/11 51/8
business [2] 40/19 49/15
but [66]

**C**

call [3] 5/23 50/25 51/3
called [1] 19/22
Calling [1] 3/3
calls [2] 19/6 34/22
came [2] 28/12 40/6
camera [7] 23/20 36/23 39/25 40/3 42/24 43/16 43/17
campaign [1] 43/24
can [45] 3/25 4/1 4/2 4/3 6/1 6/13 12/2 14/2 14/14 15/16 16/22 16/25 18/9 19/20 21/2 25/3 27/13 29/25 30/2 30/4 30/11 34/17 36/2 36/23 37/1 37/14 39/10 40/22 40/24 41/1 41/6 41/16 42/4 42/9 43/12 45/12 45/22 46/9 46/10 48/17 48/18 48/25 49/17 50/4 50/15
can't [12] 12/22 14/12 17/23 24/1 25/17 27/8 27/11 35/23 37/25 44/5 50/18 51/10
cancel [2] 52/14 52/18
cap [1] 21/3
cards [3] 5/8 39/20 40/1
CAREAGA [64]
Careaga's [4] 6/15 7/3 15/19 15/24
carefully [2] 12/3 28/21
carry [1] 51/8
case [23] 1/2 3/3 5/9 8/25 9/16 10/6 13/2 15/22 17/14 21/3 21/8 21/9 21/10 21/14 21/17 29/6 31/2 34/7 43/9 46/16 47/4 52/4 53/11
cases [4] 21/12 30/18 30/23 30/24
cat's [1] 15/6
cat's-paw [1] 15/6
catalog [1] 4/12
catch [2] 14/6 25/15
catch-22 [1] 25/15
categories [1] 21/22
caught [1] 25/15
caution [1] 12/10
certain [1] 17/11
certainly [1] 49/17
certify [1] 54/8
challenge [1] 51/11
challenger [1] 39/21
challenges [2] 21/25 51/18
chambers [1] 49/25
chance [3] 11/20 27/5 42/3
Chances [1] 48/8
characterizations [1] 40/4
Chesebro [2] 2/11 3/13
chew [1] 41/4
chewing [1] 45/1
Circle [1] 2/4
circumstances [1] 21/16
clarification [1] 33/24
class [1] 5/11
clear [11] 8/9 8/12 8/12 11/9 12/9 12/13

12/25 28/20 30/11 32/25 46/1
clearly [2] 16/2 16/3
clerk [1] 35/21
client [9] 7/4 7/7 23/23 29/1 31/5 38/4 38/6 38/11 44/23
clients [10] 11/16 12/23 12/25 13/1 13/6 15/15 30/25 38/6 42/17 42/20
closer [1] 23/19
cocounsel [5] 8/3 8/22 13/7 30/18 30/19
code [5] 24/12 24/12 24/14 24/15 51/14
codes [1] 24/9
cognizant [1] 11/25
collectively [1] 52/17
comb [1] 32/9
combed [1] 30/21
come [6] 9/10 40/22 41/17 48/17 50/4 50/15
comes [1] 39/4
coming [7] 26/23 36/23 44/5 44/8 50/8 50/9 52/11
communicate [1] 42/6
communication [1] 21/13
company [1] 32/9
compel [1] 39/5
compelled [1] 9/2
complaints [1] 14/8
complex [1] 52/4
complexity [1] 17/25
complied [1] 34/23
complying [1] 24/4
comprise [1] 12/17
computer [1] 35/20
concern [4] 4/23 20/19 50/7 51/2
concerned [1] 46/8
concerns [1] 4/21
concisely [1] 38/25
confer [17] 5/15 5/20 5/22 5/23 7/20 19/2 19/9 25/24 25/25 26/2 26/4 26/7 26/9 26/16 29/15 39/23 51/20
CONFERENCE [1] 1/11
conferral [4] 27/22 29/6 29/17 51/23
conferred [1] 14/21
conferring [2] 6/8 27/9
conflation [1] 21/8
confused [2] 17/14 28/5
confusion [5] 14/15 14/16 28/5 35/11 49/22
connect [1] 43/22
connected [2] 34/6 44/15
connection [1] 31/11
consent [1] 6/8
consideration [3] 11/21 43/22 44/19
Consilio [6] 28/8 33/12 33/15 34/9 34/14 48/14
CONT'D [1] 2/1
contact [1] 52/2
context [2] 9/16 9/24
control [1] 28/9
conversation [1] 50/24
copied [1] 26/9
copies [4] 10/17 47/23 48/9 48/15
copy [3] 41/13 41/14 41/19
Coral [1] 2/4
CORPORATION [2] 1/5 3/5
correct [8] 9/5 9/8 10/1 27/20 27/20 30/16 35/4 40/4
corroborate [1] 37/10
could [9] 10/8 11/25 23/17 23/18 35/21 35/22 35/22 37/4 48/7
couldn't [1] 5/21

**C**

counsel [3]  3/6 21/13 23/22
counted [1]  20/6
couple [1]  33/23
course [6]  5/7 46/10 46/12 49/15 53/18 54/1
court [13]  1/1 2/13 3/15 9/15 9/16 17/15 34/3 39/21 40/20 43/9 45/20 53/16 54/13
court's [3]  4/11 18/17 34/23
courtroom [2]  46/4 46/5
covered [1]  52/16
crack [1]  21/18
create [2]  13/13 27/3
created [6]  20/9 20/11 20/12 20/15 22/19 28/23
creating [1]  19/11
crime [1]  15/15
criminal [2]  15/20 46/6
CRR [2]  2/13 54/12
CSR [2]  2/13 54/12
cull [1]  12/21
culled [1]  28/19
custody [1]  34/13

**D**

dash [1]  9/21
date [5]  5/13 15/1 17/11 22/15 51/7
dates [1]  22/18
day [2]  9/17 49/18
days [1]  51/9
De [1]  1/16
deadline [1]  34/23
deal [2]  27/12 44/14
dealing [1]  44/13
dealt [1]  34/3
decade [2]  7/6 46/16
decide [1]  46/3
decided [3]  45/15 45/16 45/24
deciding [1]  28/22
declaration [1]  4/17
deemed [1]  28/24
deep [1]  7/16
defend [2]  21/5 27/5
defendants [1]  43/8
defending [2]  27/6 39/6
deficiencies [2]  4/9 5/23
delivering [1]  47/23
Denton [1]  8/22
depend [1]  52/20
Depends [1]  30/1
depo [10]  40/22 41/2 41/16 41/23 41/24 41/25 41/25 49/12 49/18 49/20
deposition [10]  6/1 14/18 19/16 25/14 40/19 49/25 50/3 50/10 51/1 53/2
describe [1]  23/16
described [2]  22/16 35/13
descriptions [4]  12/16 20/22 22/6 35/14
desire [1]  15/23
detail [4]  5/8 11/24 12/9 12/10
detailed [2]  11/22 11/22
determine [2]  23/17 23/18
determined [1]  34/25
did [28]  4/8 5/24 7/24 7/24 8/3 8/5 9/10 10/9 10/13 10/22 13/4 13/5 13/11 24/14 24/15 30/20 31/10 31/21 32/6 32/17 33/5 33/9 33/22 34/8 37/11 37/17 40/6 45/21
didn't [9]  9/6 15/2 29/16 32/19 32/23 38/7 40/8 43/8 46/16
different [8]  10/19 17/1 23/5 23/7 23/8 32/11 44/23 45/11

difficult [3]  29/12 35/17 36/1
digital [4]  1/7 47/19 48/3 54/9
digitized [1]  48/13
directed [2]  16/17 19/12
directly [1]  33/17
discourage [1]  39/12
discovery [13]  1/11 4/15 14/18 14/19 14/24 14/25 15/3 16/11 17/20 18/6 25/21 45/22 46/6
discrete [4]  14/25 16/12 18/4 37/14
discussing [1]  17/9
discussion [2]  6/2 38/5
dismissed [1]  12/23
dispute [13]  4/6 7/21 14/18 14/19 15/3 16/8 16/11 16/12 17/18 21/12 25/21 29/10 39/3
disputes [3]  4/16 14/25 17/21
disregard [1]  25/9
distinct [1]  36/14
distinguish [1]  14/12
district [12]  1/1 1/1 5/5 5/11 15/12 15/13 21/7 28/21 45/18 45/20 45/23 46/14
district's [1]  46/13
divide [1]  31/21
do [42]  4/4 11/10 13/3 13/13 14/4 15/10 17/17 18/14 18/21 18/23 19/13 19/16 21/19 22/11 23/7 23/12 24/23 27/1 27/8 34/22 35/16 36/12 36/17 37/21 37/25 38/6 38/12 38/25 39/24 40/14 40/14 42/9 45/10 46/15 46/16 47/18 48/3 48/14 48/25 51/17 52/10 53/10
docket [2]  4/14 15/2
docs [1]  23/12
document [10]  6/18 22/6 24/18 25/7 25/9 26/10 29/17 31/6 32/12 41/6
documents [97]
DOE [2]  1/4 3/4
does [5]  16/3 18/1 30/12 39/2 52/7
doesn't [4]  9/24 16/2 27/17 44/22
doing [5]  14/17 36/22 40/7 43/20 52/6
don't [44]  3/22 4/17 5/6 6/18 7/5 7/16 8/17 11/19 14/10 14/11 14/11 16/17 19/20 21/10 22/4 28/17 29/19 35/15 36/18 36/25 37/3 37/5 38/6 38/25 39/12 39/25 40/9 42/10 43/4 43/18 43/25 46/13 46/25 48/15 49/8 49/24 50/5 50/11 50/20 51/11 51/14 51/23 52/13 52/18
done [5]  17/11 31/10 38/3 44/9 48/18
dots [1]  43/22
down [5]  25/22 34/9 42/24 50/10 50/13
dozen [1]  5/20
drafted [1]  10/3
drill [2]  25/22 29/7
drop [1]  26/18
duplicate [1]  31/13
During [1]  30/15

**E**

E.M [1]  24/9
each [4]  7/17 13/14 21/15 32/6
Eastern [5]  5/5 5/11 15/12 45/17 45/23
easy [1]  43/15
economic [1]  44/17
efficient [1]  46/21
efforts [2]  25/25 44/15
either [3]  26/1 27/2 34/5
either/or [1]  27/2
electronic [1]  49/15
else [4]  29/23 35/17 40/14 53/14
email [10]  9/4 10/18 26/11 32/3 34/4

34/5 36/20 36/20 41/11 47/21
emails [32]  4/16 5/17 18/5 18/5 23/22 24/1 32/6 32/10 32/11 32/14 32/16 33/3 33/6 33/7 33/9 33/10 33/19 33/22 33/23 34/6 34/10 34/20 36/9 36/14 36/15 37/4 37/5 37/7 37/7 37/12 37/17 48/13
enable [1]  18/1
enabling [1]  16/7
encapsulated [1]  52/3
encourage [1]  51/14
end [5]  6/1 10/4 16/19 37/21 49/25
ended [3]  30/13 30/19 45/18
energies [1]  38/24
entered [1]  53/1
entitled [2]  46/5 54/10
entries [1]  20/7
equal [1]  47/3
equally [1]  42/20
equivalent [1]  39/17
Ernesto [4]  2/10 3/18 24/25 30/6
err [1]  22/12
erred [1]  12/9
ESQ [4]  1/14 1/15 2/2 2/3
essentially [4]  5/3 8/2 39/5 43/3
even [10]  5/11 13/23 14/11 21/6 21/10 24/1 27/7 35/8 47/5 51/14
ever [1]  46/2
every [2]  13/15 42/14
everybody [2]  14/3 43/15
everything [6]  12/12 13/10 39/8 40/1 44/8 51/15
evidence [7]  10/12 10/13 10/22 20/24 24/13 38/18 51/13
evidenced [1]  6/12
evident [1]  6/3
evidentiary [2]  39/11 39/18
exact [3]  12/23 28/17 48/10
exactly [4]  12/11 13/23 29/13 31/25
Excel [6]  24/24 25/2 25/6 26/10 35/17 35/24
Excels [1]  35/21
except [1]  31/3
exception [1]  5/4
Excuse [1]  20/14
excused [1]  54/2
exercise [1]  34/20
exhibit [2]  9/18 9/21
exist [1]  48/3
existing [3]  12/25 13/1 42/17
experience [2]  33/14 51/3
expertise [1]  16/6
explain [1]  9/25
extensively [1]  44/20
extent [4]  22/17 23/16 25/21 45/4
eyes [1]  35/19

**F**

F.R.R [1]  24/10
face [1]  16/15
facilitate [1]  19/14
fact [2]  25/9 43/9
facts [2]  30/3 45/6
failure [1]  7/20
fairly [2]  38/25 50/18
faith [3]  21/12 24/4 51/2
fall [1]  43/7
familiar [2]  17/15 33/16
familiarity [1]  3/14
far [7]  14/4 14/10 14/13 19/20 27/13 41/6 47/21

**F**

fastest [1]  29/7
fault [1]  28/6
favor [2]  41/22 41/24
fear [1]  50/23
federal [1]  28/20
feel [2]  36/23 44/8
felt [5]  8/16 22/15 23/11 24/4 34/13
few [4]  5/15 5/19 6/25 28/16
fight [1]  29/4
fighting [1]  18/5
figure [3]  14/1 29/12 45/10
figuring [1]  13/22
file [12]  5/6 8/4 10/8 15/2 24/14 24/15
 39/23 42/13 48/21 49/1 51/6 51/9
filed [18]  4/14 4/16 5/5 5/12 8/8 8/10 9/9
 9/10 9/18 10/11 10/16 11/20 15/9 16/11
 17/5 25/9 43/21 51/22
filing [2]  25/8 45/7
filings [1]  49/15
final [1]  45/25
finally [2]  5/21 25/14
fine [1]  42/4
firm [34]  3/11 5/1 5/3 6/5 7/14 7/15 8/2
 8/21 13/7 13/8 13/8 13/9 15/7 17/5 17/7
 19/3 19/4 20/15 25/5 27/23 28/1 28/11
 30/12 30/21 31/13 31/15 32/8 33/5 33/18
 35/2 37/13 37/18 38/3 50/12
firms [7]  8/9 24/10 31/24 32/12 38/6
 44/16 44/16
first [5]  5/5 11/3 15/5 24/7 46/25
fit [1]  21/10
five [1]  13/20
fix [1]  43/15
FL [3]  1/16 2/4 2/9
FLEISCHER [1]  1/12
FLORIDA [6]  1/1 1/5 15/14 21/7 30/14
 30/17
fly [1]  45/10
focus [1]  34/17
focused [1]  15/18
follow [1]  48/7
following [6]  3/2 14/24 15/3 27/14 30/19
 49/18
force [1]  47/3
forefront [1]  45/8
forego [4]  40/25 41/1 52/7 52/10
foregoing [1]  54/8
forestall [2]  50/9 50/13
forget [1]  24/15
Forgive [1]  25/11
form [4]  16/8 42/23 49/16 50/20
formal [1]  49/13
formalized [1]  15/20
format [6]  24/24 25/2 26/23 47/12 47/18
 48/4
forth [2]  7/8 51/12
forward [3]  14/17 17/9 49/20
found [2]  14/20 15/1
frames [1]  6/17
FRANCISCO [1]  2/2
Frank [1]  3/10
frankly [2]  26/9 38/17
Friday [9]  4/13 10/11 10/16 10/16 11/3
 47/9 48/22 49/18 51/22
front [4]  17/8 38/13 46/2 46/23
frr [1]  2/5
full [2]  51/7 51/8
fully [2]  52/1 53/5
fully-briefed [1]  53/5

fulsome [1]  38/20
function [1]  13/10
functional [1]  39/17
functionally [1]  39/6
further [2]  53/16 53/20
furtherance [1]  44/10

**G**

Gables [1]  2/4
gave [5]  10/5 11/18 12/10 14/3 42/8
general [1]  16/18
generalized [1]  21/20
Generally [1]  39/2
generic [1]  43/2
generosity [1]  53/25
get [31]  3/23 4/13 5/8 7/17 9/1 14/4 21/2
 25/13 25/14 25/15 25/20 29/9 39/1 40/5
 40/21 40/23 41/16 42/9 42/16 44/6 44/6
 44/7 45/22 46/2 46/21 47/7 48/18 49/9
 49/14 49/19 50/6
getting [2]  14/9 43/8
give [6]  9/15 12/1 21/17 27/5 34/17
 44/14
given [2]  14/13 25/25
giving [1]  51/7
gmail.com [2]  2/14 54/13
go [22]  3/17 5/7 6/13 14/11 17/3 17/3
 17/9 19/14 21/15 29/13 32/14 36/19 43/4
 43/10 43/10 44/1 44/2 48/9 50/11 50/23
 52/18 53/14
God [1]  36/22
goes [1]  15/11
going [54]  4/18 5/19 13/18 13/21 13/23
 14/2 16/5 16/9 17/2 18/7 20/21 20/23
 21/5 21/13 21/17 21/19 24/2 25/20 25/21
 26/4 26/15 26/16 27/2 27/4 27/6 27/9
 27/22 29/4 29/9 29/17 34/17 37/21 38/12
 39/25 40/17 40/22 41/5 42/13 43/10
 43/10 43/22 44/21 46/3 47/8 47/12 49/16
 49/20 49/21 49/23 50/4 50/13 50/14
 50/23 51/24
good [9]  3/8 3/10 3/16 24/4 25/3 30/17
 47/16 51/1 53/13
got [15]  5/22 12/1 13/9 14/20 17/11
 21/24 21/25 27/15 28/7 28/10 35/9 36/4
 36/4 39/22 40/18
gotten [1]  14/5
granting [1]  38/2
great [3]  21/10 22/17 42/11
grit [1]  14/9
ground [2]  40/20 45/2
group [3]  1/4 3/4 41/12
guarantee [1]  14/2
guess [3]  15/24 30/9 49/13
guessing [1]  48/5
guidance [2]  18/17 50/3
guy [1]  25/17
guys [7]  13/19 14/4 16/6 26/24 29/7
 41/17 51/24

**H**

had [22]  5/24 8/4 8/15 11/20 14/16
 14/18 17/8 24/18 29/14 30/14 33/14 34/2
 34/13 34/21 35/21 42/15 43/8 45/20 47/5
 47/19 48/5 48/8
Halpern [20]  3/18 6/4 6/6 8/10 8/22 9/3
 16/4 25/1 25/5 25/9 26/9 26/10 26/10
 26/13 26/13 26/16 26/25 29/11 38/3 38/9
Halpern's [9]  5/1 7/4 8/2 13/8 15/6 19/4
 32/8 37/18 50/12

hand [2]  15/16 47/7
handful [1]  27/16
hang [1]  22/24
happen [2]  18/8 38/8
happened [3]  17/14 24/15 28/7
happening [1]  16/7
happens [1]  50/1
happy [2]  19/13 48/9
hard [6]  36/14 41/13 41/14 41/19 44/14
 48/14
has [13]  3/14 11/20 14/10 16/1 18/8 18/9
 27/18 29/8 31/13 36/5 38/3 46/22 52/4
hasn't [4]  6/5 7/6 7/7 29/14
hate [1]  37/24
have [120]
haven't [7]  14/5 15/7 25/10 25/17 26/17
 35/25 43/2
having [4]  13/22 37/21 41/18 50/25
he [49]  3/13 3/13 3/23 3/24 5/18 5/22
 5/24 5/24 5/25 6/3 6/7 7/12 7/13 7/14
 8/1 10/7 12/25 13/4 13/5 13/6 13/9
 13/11 15/9 15/9 16/2 16/3 28/8 28/10
 28/10 28/18 28/19 28/23 29/4 29/16
 30/22 33/13 33/13 33/15 35/2 35/21 37/4
 37/8 42/8 42/9 43/8 45/25 46/2 46/3
 46/4
he's [5]  15/19 16/3 25/25 33/14 33/16
headed [1]  42/24
heading [1]  18/3
hear [10]  3/25 4/3 4/25 19/18 19/18 29/3
 42/19 45/8 46/3 52/5
heard [11]  7/11 16/1 26/19 26/21 28/20
 29/16 38/20 42/19 45/24 46/4 46/4
hearing [21]  8/20 12/1 12/20 15/1 17/8
 17/23 18/6 18/7 20/6 26/22 28/4 33/22
 34/2 40/10 40/11 40/25 45/19 45/21 52/2
 52/7 52/10
hearings [1]  42/14
heavily [1]  13/18
held [3]  3/2 19/17 45/19
help [5]  32/10 37/1 38/2 38/10 38/15
helpful [1]  24/6
her [4]  17/6 32/25 36/1 46/5
here [27]  3/13 3/24 4/9 5/10 13/15 15/4
 18/1 20/23 21/2 24/2 25/5 25/10 29/13
 38/8 39/22 40/7 40/12 41/11 43/17 44/6
 44/8 47/7 48/17 50/8 50/22 51/11 51/23
Here's [1]  37/21
hereby [1]  54/8
hey [3]  12/20 28/21 44/11
high [1]  14/8
high-level [1]  14/8
him [14]  5/23 5/25 13/3 13/9 26/4 28/10
 28/19 29/17 29/19 35/21 42/6 42/7 42/10
 43/19
hired [4]  28/9 32/9 32/10 32/12
his [9]  6/7 8/3 12/12 15/7 25/17 25/25
 30/14 37/4 46/4
historical [1]  9/16
Hold [2]  22/22 32/5
holder [1]  39/15
holding [1]  45/21
holdup [2]  18/16 41/18
holes [1]  39/22
honor [94]
Honor's [8]  10/18 11/21 12/22 14/18
 14/24 15/3 43/21 46/11
HONORABLE [1]  1/12
hope [2]  49/14 50/16
hopeful [1]  52/2

**H**

hotels [1] 44/1
hours [1] 34/22
how [20] 7/11 7/13 7/16 9/10 12/9 12/11
 13/23 14/10 16/25 17/9 19/9 19/24 29/9
 36/11 37/4 38/6 44/2 47/14 50/7 50/23
human [2] 26/12 26/12
hundred [3] 16/1 33/2 35/9
hundreds [1] 5/18
hurts [1] 35/18

**I**

I'd [4] 19/2 42/2 42/3 43/5
I'll [2] 44/25 53/6
I'm [45] 6/7 6/8 8/6 10/20 11/7 13/22
 14/1 14/4 16/5 17/15 18/6 18/14 19/13
 19/14 21/5 23/7 26/15 26/16 27/22 28/1
 29/17 30/8 30/16 33/17 34/17 35/6 35/10
 35/16 35/20 36/4 36/13 39/25 40/22
 41/22 41/24 42/4 45/1 45/7 45/9 47/16
 48/9 50/9 50/10 50/13 51/7
I've [2] 42/19 45/20
idea [1] 52/25
identification [2] 19/21 27/15
identified [7] 20/7 28/18 30/23 31/8 31/9
 34/12 38/7
if [47] 5/11 6/8 7/18 11/20 14/14 19/12
 21/1 21/6 21/10 21/18 22/12 23/17 23/18
 23/19 24/1 26/18 27/2 27/6 27/9 29/23
 29/25 30/2 30/4 30/16 35/8 35/15 35/21
 35/25 36/2 37/7 39/22 39/24 40/1 40/18
 40/23 43/15 46/20 46/25 48/5 48/8 50/2
 50/24 51/6 52/1 52/4 52/22 53/13
ills [1] 43/25
imagine [1] 19/2
imagined [1] 40/11
immediately [1] 45/16
immersed [1] 17/1
impossible [1] 25/13
impression [1] 47/23
improperly [2] 7/9 50/16
in [175]
inapplicable [1] 21/16
inappropriate [1] 5/13
Inaudible [1] 29/21
INC [2] 1/4 3/4
inception [1] 13/6
inclined [1] 52/14
include [3] 6/18 43/6 43/6
included [1] 7/1
includes [1] 6/25
inclusion [1] 22/12
increase [1] 36/3
incredibly [1] 27/3
indeed [1] 4/4
indicated [4] 24/18 42/16 43/8 49/4
individual [3] 6/14 7/16 21/25
individuals [2] 24/10 24/11
information [7] 12/2 15/16 22/13 22/19
 23/9 36/25 44/5
initially [2] 17/7 28/18
initials [1] 24/19
initiated [1] 11/12
initiation [3] 11/11 12/7 22/7
innocuous [1] 44/11
insert [1] 27/9
insistence [2] 21/2 29/19
insofar [1] 14/21
institution [1] 38/22
instructions [1] 43/3

insufficiency [3] 14/23 16/15 16/16
insufficient [1] 14/21
insurance [1] 21/11
intend [1] 39/8
interested [1] 50/2
interesting [1] 53/11
internal [1] 14/16
interrupt [2] 22/4 50/20
intertwined [1] 12/19
intervene [16] 3/19 6/5 6/9 8/11 8/23
 11/15 15/7 17/7 17/8 25/10 25/18 26/5
 27/10 38/3 52/21 53/1
intervened [1] 6/8
intervening [3] 7/14 11/14 38/9
intervenor [3] 2/2 6/20 26/4
intervenors [6] 3/12 4/14 4/24 11/6 37/9
 38/8
intervention [1] 6/9
into [13] 5/7 11/24 14/9 27/10 29/7 31/22
 40/18 42/17 43/4 43/8 44/19 46/11 48/17
involve [2] 27/14 30/24
involved [4] 8/24 13/7 26/2 31/17
is [218]
isn't [5] 6/15 19/9 19/9 25/5 45/9
issue [12] 7/2 12/19 12/24 13/13 26/3
 38/13 42/12 42/13 43/11 43/12 45/4 45/5
issues [9] 13/1 15/1 17/24 23/23 27/13
 30/14 45/21 46/8 49/21
it [138]
it's [20] 4/25 13/2 23/25 26/17 28/5
 30/15 30/25 31/16 32/18 35/6 35/18 36/1
 39/6 43/2 44/9 44/22 45/11 45/13 45/15
 52/16
items [3] 34/11 34/15 34/18
its [2] 38/9 45/13
itself [2] 11/23 18/6

**J**

JAL [1] 1/2
Jay [3] 8/22 13/8 26/13
jemancari [2] 2/14 54/13
Joanne [3] 2/13 54/12 54/12
job [1] 19/11
joint [1] 45/21
jointly [1] 45/20
JR [1] 1/14
judge [57]
judge's [1] 45/5
judges [3] 28/21 45/20 46/8
July [2] 1/6 17/12
June [2] 11/25 17/8
just [48] 8/1 8/3 9/3 9/24 12/13 13/25
 14/3 16/2 16/22 19/12 19/19 19/24 20/1
 22/5 22/24 24/6 24/6 25/3 26/21 27/11
 29/8 30/7 31/18 32/10 32/20 35/2 36/20
 36/20 36/22 38/8 38/25 40/18 40/20 43/1
 43/5 43/11 43/18 43/20 44/7 44/18 44/20
 46/9 46/19 48/9 49/3 50/1 51/10 52/6

**K**

keep [3] 14/25 24/3 49/6
keeps [1] 16/2
Ken [2] 48/23 48/25
Kenneth [2] 2/11 3/13
kept [1] 37/4
kind [5] 13/2 14/3 17/3 23/21 46/11
know [43] 3/23 4/17 7/5 7/16 8/18 11/19
 14/6 14/10 14/11 14/12 17/10 23/17 24/6
 25/17 26/21 28/4 28/6 28/17 30/3 35/15
 36/12 36/13 36/17 36/18 37/2 37/3 37/5

38/24 40/9 43/4 43/14 44/1 44/12 46/25
 47/4 48/6 49/8 49/9 50/9 51/2 51/19
 51/20 51/24
knows [2] 12/11 33/15
KUNTZ [33] 1/14 3/8 4/6 7/25 10/10
 10/17 11/20 12/11 13/16 14/10 16/9
 17/24 18/3 18/10 18/13 19/1 20/17 21/24
 25/24 26/6 27/9 27/14 29/4 29/14 32/5
 37/24 42/3 42/9 43/18 47/9 49/8 51/17
 53/15
Kuntz's [1] 17/5

**L**

La [1] 43/23
lack [1] 35/12
land [1] 7/18
last [7] 8/19 12/20 13/13 26/22 28/4
 33/21 34/2
later [2] 50/6 50/16
LAUREN [1] 1/12
law [14] 3/11 7/14 7/14 8/9 8/21 20/14
 24/10 31/13 31/24 35/20 37/18 38/6
 44/16 44/16
law.com [2] 2/5 2/6
lawsuit [1] 11/12
lawyer [7] 7/6 10/5 13/7 16/2 16/3 25/16
 25/17
lawyers [6] 5/25 5/25 16/4 17/2 43/25
 49/23
lay [1] 7/17
least [17] 13/20 18/7 21/9 27/13 27/16
 27/21 29/8 29/10 38/23 40/1 40/2 40/5
 42/15 43/7 44/7 47/4 51/1
least-resistance [1] 29/8
led [1] 46/11
legal [1] 31/11
Lenard [2] 3/4 17/6
lends [1] 18/6
Leon [1] 1/16
Leonard [1] 45/16
let [10] 8/9 9/1 15/4 17/3 19/19 21/5 22/3
 28/1 29/17 49/20
Let's [1] 47/7
letter [1] 51/21
level [3] 14/8 20/16 20/19
licensed [1] 30/16
like [24] 6/13 7/10 12/16 13/25 18/4 23/8
 23/9 23/9 23/10 32/10 32/21 32/21 33/2
 35/9 35/18 39/4 39/17 41/5 42/23 43/5
 45/2 45/22 50/3 52/16
likewise [1] 48/21
limited [2] 7/9 10/23
limiting [1] 50/14
limits [1] 13/1
line [2] 36/7 46/20
lines [1] 36/5
listen [7] 17/10 28/20 29/2 34/15 41/22
 45/1 46/18
literate [1] 35/20
litigated [1] 13/18
litigating [3] 15/13 15/14 45/22
litigation [18] 5/4 5/7 7/2 11/12 11/16
 11/17 12/7 12/15 13/6 13/11 13/17 21/7
 22/6 22/8 35/13 38/22 44/10 44/10
little [6] 6/23 29/6 29/12 39/11 41/2 50/3
lived [1] 46/15
LLP [1] 1/15
local [6] 4/17 21/9 38/21 38/23 51/19
 51/21
log [64]

**L**

logged [6] 27/17 29/5 35/9 35/11 35/13 47/9
logs [26] 4/10 4/20 6/14 6/16 6/16 6/17 7/9 7/23 7/25 10/10 10/13 10/21 10/22 11/2 11/4 14/13 14/20 14/22 14/24 16/16 17/25 19/12 19/20 22/24 24/21 42/7
long [2] 32/22 40/24
longer [1] 42/2
look [12] 12/1 13/14 21/20 23/19 23/19 35/16 35/18 35/19 35/24 36/1 37/11 53/12
looked [5] 23/2 23/4 33/19 47/1 47/5
looking [7] 13/16 36/4 39/12 43/16 43/18 43/19 43/19
looks [4] 7/10 23/9 23/10 50/3
lot [10] 11/24 14/1 14/7 22/19 29/21 29/24 41/10 43/15 44/14 51/3
loud [1] 28/20
LOUIS [3] 1/12 13/9 35/25
love [1] 50/1
luck [1] 53/13

**M**

ma'am [4] 10/24 18/11 33/17 36/8
mad [1] 45/22
made [8] 5/14 6/23 8/12 8/12 12/24 19/10 42/18 46/1
magically [1] 15/23
MAGISTRATE [1] 1/12
magistrates [1] 50/1
mailing [1] 47/13
majority [1] 30/23
make [16] 11/25 12/2 17/2 17/3 18/2 19/5 19/19 21/19 29/16 34/21 34/22 41/25 47/2 50/15 50/25 51/15
makes [4] 8/6 14/7 49/5 49/6
making [1] 45/9
management [1] 28/9
Mancari [3] 2/13 54/12 54/12
many [9] 6/15 6/16 7/12 7/13 12/11 19/24 20/19 36/11 42/5
match [1] 16/18
materials [5] 4/19 11/21 14/3 14/8 14/12
matter [5] 5/10 5/11 11/18 18/18 54/10
may [5] 12/24 29/5 46/2 48/7 48/15
maybe [4] 30/11 36/2 45/6 46/14
MC [2] 1/2 3/3
me [48] 4/1 4/3 5/16 5/25 6/1 6/7 6/13 8/7 8/9 9/1 12/1 12/5 12/9 14/3 14/4 15/4 16/7 17/3 18/1 19/5 19/12 19/16 19/19 20/14 21/18 22/3 25/11 25/17 26/7 26/10 26/13 26/16 27/14 28/1 32/11 32/20 33/21 33/24 34/22 37/1 38/11 38/22 40/20 40/24 47/19 49/20 50/4 52/13
MEAGAN [2] 1/15 3/9
mean [10] 10/12 11/22 14/1 14/6 23/7 36/2 42/6 44/2 44/22 45/3
meaningful [6] 19/21 27/22 29/6 29/14 38/18 39/21
meaningfully [3] 39/24 51/10 51/20
means [4] 7/15 39/8 46/25 51/22
Medley [1] 2/9
meet [7] 5/15 5/20 5/22 5/23 26/2 26/8 26/16
meeting [1] 6/7
memorialize [1] 43/12
merits [1] 13/19
MESTRE [1] 1/15

met [1] 14/21
metadata [1] 49/16
Miami [2] 1/5 1/16
middle [2] 49/25 51/1
might [4] 3/14 8/1 44/11 50/5
million [1] 17/1
mind [1] 24/3
minute [1] 4/25
misinformation [1] 43/24
misplaced [1] 38/23
missing [1] 7/11
Missouri [13] 5/5 8/3 8/4 8/8 8/10 11/16 15/12 19/3 21/8 21/9 22/8 44/4 45/18
mnicholson [1] 1/18
money [1] 44/2
more [8] 18/4 28/16 29/12 36/13 37/14 39/21 40/19 41/3
most [2] 7/19 37/7
motion [22] 3/19 8/10 8/23 14/2 14/3 26/5 27/6 27/10 38/3 38/15 39/5 39/7 39/15 45/17 45/18 48/21 49/1 51/15 51/22 52/3 52/20 53/1
mouthing [1] 4/1
movant [1] 39/14
moved [1] 17/7
moving [4] 41/10 43/6 49/4 49/6
Mr. [152]
Mr. Careaga [53] 3/21 3/25 4/24 5/17 5/21 5/22 7/5 7/6 7/11 7/22 9/11 10/23 12/21 13/3 15/6 15/8 16/1 18/12 19/18 25/16 26/1 27/15 28/1 28/12 29/16 30/10 30/12 30/13 30/14 30/16 30/20 30/21 31/1 31/4 31/7 31/9 31/11 31/14 31/21 32/24 33/8 33/12 33/21 36/10 37/4 37/15 41/20 42/4 46/7 47/8 47/11 49/24 53/19
Mr. Careaga's [4] 6/15 7/3 15/19 15/24
Mr. Halpern [7] 6/6 8/10 25/5 26/9 26/13 26/16 26/25
Mr. Halpern's [8] 5/1 7/4 8/2 15/6 19/4 32/8 37/18 50/12
Mr. Kuntz [30] 4/6 7/25 10/10 10/17 11/20 12/11 13/16 14/10 16/9 17/24 18/3 18/10 18/13 19/1 20/17 21/24 25/24 26/6 27/9 27/14 29/4 29/14 32/5 42/3 42/9 43/18 47/9 49/8 51/17 53/15
Mr. Kuntz's [1] 17/5
Mr. Rodriguez [34] 5/16 8/19 10/7 10/9 13/25 17/13 19/3 20/10 21/6 22/3 23/21 24/5 24/20 27/24 29/3 32/10 32/16 33/1 36/7 37/11 38/21 39/14 41/8 41/18 45/8 46/9 46/20 47/22 48/11 48/20 50/12 51/6 51/19 53/23
Mr. Rodriguez's [5] 5/3 15/22 30/21 31/15 35/2
Mr. Santos [7] 3/17 25/23 26/22 26/25 36/24 41/8 52/19
Mr. Santos' [3] 13/7 25/5 37/13
much [4] 4/4 4/8 12/9 44/2
multiple [1] 41/11
must [1] 46/8
mute [1] 4/1
my [32] 6/9 9/16 10/17 15/14 17/7 20/14 20/19 24/6 24/12 25/12 25/16 26/17 26/18 28/1 28/5 33/18 35/19 35/20 35/20 39/14 39/15 39/16 40/23 43/2 43/6 48/6 48/10 48/12 49/14 50/7 50/14 54/9

**N**

named [1] 15/20
Napoli [3] 2/3 11/7 20/4

narrow [1] 34/9
native [1] 49/16
nature [4] 13/15 21/22 43/17 44/3
nay [1] 53/7
necessarily [1] 43/25
need [16] 15/18 17/17 27/12 36/1 38/17 38/18 38/25 40/10 40/23 46/21 46/21 51/15 52/1 52/4 52/13 53/7
needs [1] 51/22
never [1] 45/20
new [2] 33/23 45/9
NICHOLSON [2] 1/15 3/9
no [28] 1/2 3/3 7/15 8/9 9/21 10/11 13/12 16/7 18/11 18/13 26/12 26/12 26/13 27/25 29/17 31/2 31/20 33/7 35/10 36/13 37/19 41/8 41/9 41/10 43/10 46/9 47/5 47/10
nobody [1] 33/18
non [2] 15/25 25/7
none [3] 8/6 46/2 49/24
nonetheless [2] 23/2 45/13
nonprivileged [5] 18/22 18/24 18/25 27/18 41/19
nonrepresentative [1] 27/4
nonrepresentative/representative [1] 27/4
normal [1] 49/15
not [84]
note [2] 3/6 4/13
nothing [8] 13/15 27/18 29/23 43/17 46/1 53/16 53/20 53/24
notice [8] 6/12 14/7 15/1 15/2 16/11 38/14 39/3 39/5
noticed [2] 4/6 16/10
noticing [2] 16/13 16/15
now [25] 3/21 4/3 5/19 6/23 7/16 15/6 15/20 18/8 24/20 25/23 26/23 29/16 29/22 37/1 38/4 38/9 39/5 41/22 41/23 44/5 46/14 46/25 47/18 50/24 52/5
nuanced [1] 46/18
number [8] 6/14 9/18 9/20 21/12 28/17 32/18 35/1 36/9
numbered [3] 34/11 34/15 34/18
Nunez [8] 2/3 2/3 2/3 3/11 3/12 11/7 20/3 37/8
NW [1] 2/8

**O**

object [2] 25/4 50/20
objection [1] 26/18
objections [3] 49/23 50/19 51/10
obligation [1] 23/16
obtain [1] 15/15
obviously [1] 7/19
occurring [1] 31/12
October [10] 5/4 5/13 11/12 12/7 12/8 15/24 16/19 22/8 22/15 23/13
odd [1] 27/3
off [3] 7/14 9/3 13/1
office [1] 48/18
often [1] 21/11
Oh [2] 8/19 36/22
OK [56]
on [97]
once [6] 34/8 34/12 39/20 51/17 52/1 53/5
one [44] 4/24 5/16 5/18 7/22 9/17 9/22 11/9 13/2 13/15 16/7 19/22 20/17 21/9 21/15 21/23 22/25 22/25 23/6 23/10 24/16 24/23 25/19 25/23 27/21 32/21

## O

one... [19]  35/5 36/13 36/18 36/20 36/20 36/22 37/2 37/25 41/6 41/11 41/12 42/12 42/14 46/13 47/4 47/5 47/21 51/4 53/10
onerous [1]  21/14
ones [7]  4/13 12/22 23/15 28/24 33/19 42/7 42/8
ongoing [2]  14/17 44/10
only [22]  5/18 6/21 7/12 11/10 11/14 11/14 12/22 18/24 22/10 23/12 24/23 25/2 27/16 32/20 32/21 33/9 33/19 33/23 35/9 37/5 47/21 51/21
open [3]  4/14 43/9 47/16
opening [1]  49/1
opponents [4]  13/17 43/18 44/4 45/23
opportunity [3]  29/15 39/21 43/5
opposed [2]  35/22 39/3
or [44]  6/13 6/17 6/18 7/20 9/10 11/5 13/24 16/8 20/22 20/22 20/22 21/2 21/11 24/2 24/10 24/12 25/23 26/1 27/2 27/7 27/10 33/2 33/13 34/6 34/13 35/13 35/17 38/21 40/7 41/12 42/23 44/10 44/21 45/4 45/6 45/7 45/13 47/3 47/14 47/22 51/10 51/18 52/25 53/7
order [15]  4/11 9/15 25/4 27/12 34/9 34/21 38/10 39/17 42/10 45/2 45/3 45/5 45/25 51/16 53/14
ordered [1]  18/19
orders [2]  46/13 46/13
orient [1]  17/17
oriented [1]  30/8
original [2]  6/25 7/1
originally [1]  6/6
Oroya [1]  43/23
other [16]  11/4 11/9 15/11 17/14 23/10 23/15 23/16 25/23 31/3 32/21 32/23 45/7 46/7 48/14 50/19 50/21
others [2]  20/20 20/21
our [23]  5/20 6/12 8/19 11/16 13/9 21/9 23/15 23/15 23/18 28/11 30/12 30/12 30/19 30/25 31/3 39/20 40/11 40/18 43/12 43/19 43/22 49/2 53/5
out [16]  13/23 14/1 22/10 22/21 22/23 29/12 35/18 35/21 36/2 38/11 42/7 43/4 45/10 47/3 47/22 49/19
outfit [4]  28/8 28/9 32/9 32/10
outfits [1]  32/12
outside [1]  21/13
outstanding [1]  26/5
over [15]  10/7 15/16 18/5 19/1 19/7 19/13 28/25 35/1 36/10 41/19 41/20 41/23 41/24 42/9 50/17
overcome [1]  39/16
own [5]  15/8 19/12 32/12 38/6 38/9
owner [1]  31/1

## P

P.A [1]  2/3
package [1]  47/14
page [1]  36/5
pages [10]  1/9 12/11 12/17 19/24 20/7 23/25 32/21 34/1 35/6 36/5
papers [3]  42/13 43/6 43/23
paperwork [1]  31/22
paralegal [3]  13/10 28/9 33/14
pardon [1]  52/9
part [9]  7/2 11/21 14/15 14/15 15/5 19/6 29/14 43/21 46/23
participate [1]  52/23
participation [1]  9/16

particular [2]  10/15 38/20
particularly [1]  17/24
parties [5]  6/23 44/12 44/20 44/21 44/22
parts [1]  41/11
party [2]  21/14 49/4
past [1]  38/1
path [1]  29/8
paw [1]  15/6
PDF [2]  35/18 36/2
pending [6]  3/19 8/11 8/23 21/7 27/11 46/6
people [5]  34/3 34/5 38/7 44/14 46/7
per [1]  36/5
percent [1]  40/4
performed [1]  31/8
Perhaps [1]  4/18
period [4]  8/24 30/15 31/16 37/12
periods [1]  31/22
permitted [5]  6/5 7/7 25/10 25/18 52/22
Perry [3]  45/19 46/4 46/15
person [3]  7/12 39/6 52/6
personally [1]  34/21
perspective [1]  43/2
pertain [1]  31/10
pertaining [1]  8/16
Peru [3]  15/15 15/19 46/7
Peruvian [2]  15/21 23/22
petition [2]  5/10 15/14
Petitioner [2]  1/6 1/14
petitioners [1]  3/9
phone [2]  49/25 51/3
physical [6]  9/4 33/1 47/20 47/23 48/2 48/6
pick [1]  50/15
Pinkert [2]  3/19 25/1
pivoted [1]  16/10
placeholder [1]  14/9
PLAINTIFF [1]  2/2
plaintiffs [1]  47/3
plaintiffs' [2]  44/16 44/16
platform [3]  33/16 47/19 48/3
please [5]  3/6 21/19 31/18 33/1 37/6
plenty [1]  41/4
plural [1]  24/1
point [10]  5/16 7/18 22/10 22/21 22/23 25/11 25/12 37/5 39/13 42/7
pointed [1]  47/22
Ponce [1]  1/16
position [6]  43/12 47/2 47/6 48/21 50/25 53/7
positions [1]  46/22
possession [3]  34/13 48/7 48/10
possible [1]  49/22
possibly [1]  53/12
post [13]  5/4 5/7 7/2 12/15 21/21 22/6 22/7 22/25 23/6 27/25 28/12 35/13 48/13
post-2015 [1]  21/21
post-litigation [6]  5/4 5/7 7/2 12/15 22/6 35/13
posttrial [1]  11/19
practice [1]  17/20
pre [2]  22/25 23/13
pre-2015 [1]  22/25
pre-October [1]  23/13
precisely [1]  51/24
preclude [1]  45/13
predating [1]  37/12
predicated [1]  45/3
prepare [7]  7/25 8/5 9/6 9/15 12/5 13/3 25/23

prepared [10]  8/1 8/2 8/4 8/11 8/23 10/2 11/16 14/14 14/2/6
preparing [1]  49/12
present [3]  2/10 34/4 45/6
presented [1]  38/17
presumably [1]  41/3
presumption [1]  21/13
pretty [1]  12/25
previous [2]  27/15 45/3
primarily [1]  29/4
print [3]  35/18 35/21 36/2
printout [1]  23/10
prior [4]  11/11 12/6 39/13 53/2
privilege [102]
privileged [3]  18/25 45/13 47/24
privileges [1]  51/12
probably [1]  4/25
problem [14]  5/2 15/4 15/5 16/19 16/19 20/16 29/14 29/18 35/15 43/14 43/16 46/23 47/10 50/9
problems [5]  4/12 6/10 6/14 44/17 44/18
procedure [3]  7/8 14/24 17/17
proceeding [1]  15/20
proceedings [1]  3/2
process [4]  3/14 17/9 19/14 44/3
produce [6]  18/4 18/19 40/17 42/4 47/8 47/12
produced [6]  5/24 6/3 18/1 18/13 22/24 26/17
producing [2]  18/5 47/15
product [18]  6/21 6/22 11/19 12/3 12/16 22/6 23/18 28/25 29/1 30/25 31/3 31/6 35/13 38/4 38/9 44/3 44/9 44/22
production [5]  18/10 27/8 40/18 45/14 49/13
proffer [1]  25/25
progress [2]  5/15 6/23
pronouns [2]  8/17 20/14
proper [1]  20/23
propriety [1]  45/5
prosecutors [1]  15/17
protect [2]  11/15 31/3
protected [1]  31/5
protecting [1]  49/2
protection [2]  28/25 29/1
protective [3]  39/17 45/2 45/3
provide [5]  5/3 14/19 33/24 36/1 48/9
provided [10]  5/2 15/1 16/16 16/17 30/22 32/24 33/12 34/8 34/14 35/25
provides [1]  9/24
providing [2]  22/13 50/2
public [1]  15/2
purged [1]  37/19
purport [1]  11/5
purported [1]  27/7
purports [2]  25/6 25/8
pursuant [1]  11/10
put [6]  11/24 29/18 38/13 38/24 50/24 51/12
putting [1]  40/20

## Q

quarter [1]  28/13
question [12]  5/10 10/19 33/17 33/18 36/24 37/14 40/10 45/11 47/16 50/19 50/20 52/19
questions [3]  16/5 24/7 50/10
quick [1]  39/10
quite [3]  11/22 12/10 27/17

## R

raising [1] 17/24
rarely [1] 39/2
rather [3] 24/19 42/2 42/3
RE [3] 1/4 3/4 23/22
read [2] 12/3 28/3
ready [4] 18/14 19/7 19/14 19/15
really [16] 4/25 6/4 6/6 7/3 13/5 14/7
 25/9 35/17 35/19 35/23 37/25 45/3 45/9
 45/18 52/12 52/13
reason [5] 11/14 11/14 19/16 21/9 50/8
reasons [2] 13/2 21/4
recall [2] 12/24 38/5
receipts [1] 44/12
received [4] 6/18 8/15 34/6 36/9
recognizing [1] 39/24
reconsider [1] 46/15
reconsideration [1] 38/16
record [1] 3/7
recording [2] 1/11 54/10
refer [1] 44/15
referred [1] 11/17
referring [1] 7/25
reflected [2] 12/14 12/15
refusal [1] 7/20
refused [1] 26/7
regard [8] 14/19 14/22 14/23 15/19 22/5
 42/12 49/13 49/20
regarding [1] 30/10
rehash [1] 46/11
relate [3] 12/23 37/7 42/17
related [1] 11/18
relates [1] 28/11
relating [1] 13/1
relationship [3] 27/4 30/13 30/19
relatively [1] 42/10
released [1] 27/19
relevance [1] 45/4
reliance [2] 38/21 38/23
relying [1] 21/8
remaining [1] 14/23
remember [1] 12/22
removed [1] 6/19
RENCO [2] 1/4 3/4
reply [1] 51/7
Reporter [2] 2/13 54/13
represent [5] 29/19 30/12 31/7 47/6
 49/24
representation [2] 31/11 47/2
representative [1] 27/4
representing [3] 30/10 30/25 50/8
represents [1] 31/6
request [1] 12/12
requested [2] 9/15 34/12
require [3] 4/15 20/23 27/22
required [2] 11/10 23/12
requirement [2] 12/5 12/8
reserve [1] 40/22
reserved [1] 40/3
resistance [1] 29/8
resolve [1] 13/21
resolved [2] 17/23 40/21
RESOURCES [2] 1/4 3/5
respect [1] 5/21
respective [1] 32/12
respond [7] 28/19 30/4 30/7 33/13 49/9
 49/11 49/17
Respondent [2] 1/9 2/8
response [3] 9/2 44/25 49/19
responsive [12] 5/17 5/18 7/13 28/11

28/22 30/22 31/9 33/8 33/20 34/10 34/18
 34/25
responsiveness [2] 19/6 34/21
restricted [1] 20/17
resulted [1] 34/20
retained [1] 13/9
retrieve [1] 37/5
reveal [1] 39/10
review [11] 11/20 32/12 32/19 32/23
 33/5 33/9 34/21 42/3 42/24 47/19 48/3
reviewed [7] 19/5 19/13 32/17 33/7 33/9
 34/1 37/17
revised [4] 19/22 20/2 20/5 35/11
right [27] 7/23 10/6 10/25 17/3 17/4
 20/18 20/24 22/9 27/19 27/23 29/2 30/7
 36/16 37/1 37/3 40/9 41/22 41/23 42/21
 43/20 44/18 47/25 49/3 49/5 49/7 51/5
 54/2
rights [1] 11/15
RIVERO [1] 1/15
riveromestre.com [2] 1/17 1/18
rkuntz [1] 1/17
ROBERT [3] 1/14 3/8 37/24
RODRIGUEZ [42] 2/2 2/3 2/3 3/11 3/11
 5/16 8/19 10/7 10/9 11/7 13/25 17/13
 19/3 20/3 20/10 21/6 22/3 23/21 24/5
 24/20 27/24 29/3 32/10 32/16 33/1 36/7
 37/8 37/11 38/21 39/14 41/8 41/18 45/8
 46/9 46/20 47/22 48/11 48/20 50/12 51/6
 51/19 53/23
Rodriguez's [5] 5/3 15/22 30/21 31/15
 35/2
rolling [1] 40/18
roughly [1] 35/7
RPR [2] 2/13 54/12
rtgn [2] 2/5 2/6
rtgn-law.com [2] 2/5 2/6
rule [12] 4/17 11/10 11/17 15/25 21/9
 21/12 23/18 38/21 38/23 43/13 50/16
 51/21
rules [5] 14/19 15/3 49/14 51/2 51/20
ruling [3] 39/7 52/22 53/1
rulings [4] 12/2 18/2 39/13 42/15
RUN [2] 1/4 3/4

## S

said [16] 5/17 5/18 5/24 6/1 7/12 7/13
 12/1 12/20 14/10 14/19 16/10 17/10
 28/21 35/2 43/10 44/4
sake [1] 25/3
same [7] 13/17 19/5 23/22 35/15 36/24
 45/11 52/23
Santos [15] 2/10 3/17 3/18 3/19 24/25
 25/1 25/9 25/23 26/10 26/22 26/25 30/6
 36/24 41/8 52/19
Santos' [3] 13/7 25/5 37/13
saw [3] 3/21 38/14 38/14
say [16] 5/6 7/3 7/11 19/8 20/12 22/5
 23/22 29/16 34/15 38/12 39/4 39/22 40/1
 40/2 40/24 44/11
saying [5] 16/2 29/4 37/11 46/14 52/6
says [7] 25/16 25/17 39/15 40/21 41/23
 43/3 46/9
scanned [3] 48/3 48/7 48/16
scanner [1] 48/17
scanning [1] 47/14
schedule [5] 27/12 41/2 47/7 52/20
 52/23
Schlichter [2] 8/21 13/8
scope [1] 7/10

search [5] 13/24 32/11 34/14 34/17
 39/16
second [5] 5/14 16/22 28/13 29/8 40/23
see [13] 4/1 6/24 22/3 29/10 35/21 35/22
 35/22 35/23 40/1 48/8 50/9 51/16 53/7
seeking [1] 15/15
seem [2] 23/8 29/23
seemed [1] 12/5
seems [5] 21/16 29/13 38/11 38/22
 40/24
seen [3] 43/1 50/7 53/13
select [1] 7/13
self [4] 38/2 38/10 38/15 52/3
self-encapsulated [1] 52/3
self-help [3] 38/2 38/10 38/15
send [3] 31/24 33/23 37/17
sending [1] 4/15
sense [4] 8/7 49/5 49/6 51/18
sensitive [1] 45/7
sent [9] 6/23 7/14 9/3 10/17 31/14 33/8
 33/20 33/22 34/5
separate [5] 11/18 31/16 32/9 32/10
 46/10
sequitur [2] 15/25 25/7
serially [1] 5/12
seriatim [1] 6/13
serve [3] 10/9 10/13 10/22
served [6] 4/10 10/10 10/16 10/21 11/1
 11/2
services [2] 28/7 48/8
set [8] 7/8 26/8 31/13 40/25 40/25 41/2
 52/2 52/12
sets [1] 32/11
seven [1] 51/8
shape [2] 16/7 42/23
shared [1] 42/6
sheet [1] 26/10
shipped [1] 9/3
Shkolnik [3] 2/3 11/7 20/4
short [1] 42/10
shorter [1] 41/25
should [18] 6/21 11/16 14/1 16/18 17/9
 18/4 28/6 37/2 38/18 39/16 40/3 44/12
 45/13 46/5 46/12 46/14 46/16 52/3
shouldn't [4] 17/3 21/20 21/21 40/19
side [2] 12/10 22/12
Sign [1] 23/23
Sign-Up [1] 23/23
signed [1] 9/13
similar [1] 30/20
simply [5] 5/6 7/24 15/9 16/17 16/19
since [4] 5/20 31/2 49/21 51/19
singular [1] 24/1
Sippel [9] 12/24 43/8 45/17 45/19 45/24
 46/2 46/9 46/15 46/24
Sippel's [3] 42/15 45/25 46/12
sit [3] 50/10 51/11 51/23
six [3] 23/25 32/21 36/5
size [1] 36/3
slightly [1] 10/19
small [4] 4/21 32/18 35/17 35/23
smaller [1] 4/12
so [79]
software [1] 33/15
sole [1] 31/1
some [19] 3/14 5/7 5/14 6/24 12/2 14/7
 14/20 16/5 18/20 30/11 33/24 37/5 38/10
 40/22 41/3 42/23 49/21 49/22 50/4
somebody [3] 9/10 25/15 40/17
somehow [1] 15/23

**S**

someone [1] 26/7
something [5] 8/8 12/16 23/10 35/9 40/17
sometime [1] 28/13
sometimes [1] 17/2
somewhat [1] 28/5
son [1] 35/20
soon [1] 52/22
sorry [10] 8/6 10/20 11/8 23/7 26/15 28/1 33/18 35/6 35/10 36/14
sort [6] 6/10 12/19 14/8 38/2 39/16 52/3
sounds [4] 41/5 42/23 45/2 52/16
source [1] 4/19
SOUTHERN [3] 1/1 15/13 21/7
space [1] 46/21
spare [1] 50/4
speak [3] 15/23 25/15 42/10
speaking [1] 39/2
speaks [1] 7/21
specific [5] 14/7 20/21 21/19 22/18 46/23
specifically [1] 42/7
spending [1] 44/2
spirit [1] 51/21
spoke [2] 6/6 47/4
spreadsheet [1] 27/3
squishy [1] 50/7
St [1] 13/8
stake [1] 40/20
stamped [3] 6/15 12/12 12/12
standing [1] 30/17
standpoint [1] 39/19
start [4] 7/5 7/22 28/2 35/8
started [1] 5/23
STATES [2] 1/1 1/12
stay [1] 44/1
step [2] 19/15 53/10
Steph [1] 24/14
STEPHANIE [6] 2/3 3/11 35/25 36/12 36/17 36/19
steps [1] 13/20
stickler [1] 51/19
sticky [1] 39/11
still [4] 14/1 22/16 26/5 27/11
stn [1] 2/6
stop [3] 27/14 31/18 31/18
straight [2] 9/1 31/19
straightforward [1] 15/9
Strategies [1] 23/23
Street [1] 2/8
stuff [1] 27/18
Stylistically [1] 23/7
submissions [1] 53/12
submit [1] 12/22
submitted [1] 6/21
subpoena [11] 8/15 9/2 17/5 28/11 33/8 33/20 34/11 34/13 34/15 34/19 41/23
substantiate [1] 42/22
substantiated [1] 51/13
substantively [2] 6/20 7/10
sufficiency [1] 13/23
suggested [1] 12/4
suggestions [1] 47/17
suit [1] 5/12
suits [1] 5/12
summarize [1] 18/7
Super [1] 48/19
supplementing [1] 29/8
support [4] 10/13 10/22 38/19 39/9
supported [1] 53/6
supposed [1] 7/12
supposedly [1] 4/24
sure [13] 16/24 19/19 21/19 32/4 34/22 36/13 36/18 37/16 40/4 45/7 50/15 51/15 53/22
suspect [1] 52/21
sustain [1] 45/12
systemic [1] 6/10

**T**

table [3] 5/8 39/20 40/1
take [3] 23/19 44/19 44/25
taken [1] 7/19
talk [4] 25/16 25/17 40/6 40/8
talked [2] 42/14 47/13
talking [5] 12/17 18/25 26/6 30/9 50/11
team [1] 32/17
tell [15] 4/18 18/9 19/20 21/6 24/1 26/7 27/13 27/14 27/17 37/6 38/23 40/17 41/6 50/18 53/7
telling [3] 5/16 21/18 52/13
ten [1] 33/19
tens [7] 27/16 28/17 28/18 33/3 33/5 33/10 33/22
tent [1] 43/19
term [1] 35/12
terminology [1] 37/3
terms [5] 21/1 34/14 34/17 49/23 50/3
terribly [3] 12/9 35/16 35/20
testify [1] 33/13
testimony [2] 15/19 50/21
than [6] 32/24 41/3 42/2 44/23 50/19 50/21
Thank [12] 4/4 4/5 4/8 9/23 32/1 32/15 47/11 53/8 53/9 53/17 53/20 53/24
that [337]
that's [12] 5/6 9/8 10/1 13/18 17/14 21/25 31/6 35/4 39/22 41/7 46/23 47/16
their [11] 8/22 16/15 19/11 26/4 26/18 27/8 32/12 38/6 45/23 49/16 49/16
them [42] 4/15 6/13 6/18 8/12 8/12 8/14 8/16 8/18 8/25 10/14 10/17 11/24 13/15 14/20 16/17 19/7 19/9 23/6 23/19 23/20 32/7 33/15 33/22 33/23 35/16 35/18 35/19 35/22 35/22 35/23 35/24 36/2 41/22 41/24 41/24 42/4 42/5 43/1 44/1 45/7 47/18 49/24
themselves [2] 9/25 38/2
then [33] 5/20 5/21 6/9 6/12 10/9 11/4 13/9 16/10 17/10 19/19 21/24 22/3 24/23 28/10 28/19 28/23 30/22 34/8 34/14 34/21 35/1 39/20 39/20 40/2 40/18 41/4 43/12 48/20 49/8 51/17 51/17 52/2 53/6
there [39] 3/25 4/12 4/13 4/17 6/14 7/8 9/20 13/15 13/25 15/17 18/4 18/9 18/21 18/23 20/6 21/1 24/12 26/3 28/14 28/16 28/18 29/9 31/2 33/1 33/2 33/2 37/25 40/5 40/19 41/8 42/2 42/13 42/18 43/10 43/11 43/17 44/6 49/24 50/5
there's [25] 5/12 11/9 12/13 12/13 12/14 12/16 21/11 22/17 22/17 22/18 22/19 23/25 27/6 28/17 29/17 29/18 36/13 36/13 36/18 40/2 41/10 41/11 42/5 47/21 51/3
Thereupon [1] 2/16
these [30] 6/11 6/14 7/17 7/22 10/13 11/19 12/21 13/12 14/12 14/25 16/3 18/5 19/19 23/16 24/1 24/9 30/18 31/4 31/14 34/15 42/4 42/20 43/3 43/7 45/6 45/21
supported [1] 53/6
47/2 47/8 47/15 49/23
they [60]
they're [9] 11/6 11/22 35/17 35/17 43/24 44/5 44/22 46/14 51/13
they've [1] 19/13
thing [9] 5/14 13/13 15/11 17/11 22/10 23/22 27/21 37/25 46/10
things [15] 6/22 6/25 7/11 15/5 17/2 25/19 29/5 30/11 37/2 42/17 44/11 45/15 47/15 48/13 49/14
think [34] 4/3 4/7 7/4 11/16 12/9 17/12 18/4 18/7 18/8 21/2 21/10 21/17 29/2 29/3 29/18 36/17 37/1 39/18 40/11 41/1 42/9 42/15 42/18 42/23 43/25 46/16 47/21 48/14 48/15 52/1 52/5 52/13 52/14 52/20
thinking [1] 6/7
third [6] 6/23 24/23 44/12 44/20 44/21 44/21
this [76]
those [31] 4/21 6/10 7/15 10/22 14/22 21/22 22/7 22/16 22/18 22/20 23/13 23/24 24/10 24/11 24/19 24/20 28/14 28/14 28/23 30/23 30/25 31/9 33/2 33/9 40/4 41/16 41/19 46/8 48/1 48/6 48/13
though [3] 36/5 36/18 39/23
thought [7] 3/21 12/25 16/9 16/12 16/14 18/3 24/4
thousand [1] 33/19
thousands [10] 7/10 27/16 28/17 28/18 32/9 32/11 33/3 33/5 33/10 33/22
three [7] 4/9 4/12 4/19 6/10 6/16 6/17 7/23
through [12] 6/13 8/25 14/5 21/2 21/15 28/19 30/21 31/5 32/9 32/11 32/14 35/24
Thursday [3] 40/11 40/15 52/11
time [26] 5/4 6/17 7/9 8/24 11/3 13/17 18/20 20/17 28/12 30/15 31/16 31/22 34/2 35/5 37/12 40/21 40/22 44/14 46/25 49/9 50/4 50/14 52/15 53/10 53/17 53/21
times [2] 16/2 47/4
timing [2] 40/6 40/8
titled [1] 22/6
titles [1] 6/19
today [6] 16/8 16/13 16/15 21/2 40/12 53/17
together [1] 8/10
told [11] 5/25 6/7 15/9 26/10 26/12 26/13 26/16 32/20 33/21 47/19 51/11
took [2] 34/22 45/17
top [2] 20/16 20/19
top-level [2] 20/16 20/19
tort [1] 15/13
tortured [1] 17/25
totally [1] 16/6
tough [2] 35/19 43/23
town [1] 44/17
toxic [1] 15/13
track [1] 50/14
traditional [1] 23/13
train [1] 50/13
Tramont [6] 2/3 2/3 3/12 11/7 20/3 37/8
TRANSCRIBED [2] 1/11 2/13
transcript [2] 28/4 34/1
transcription [1] 54/9
travel [1] 6/24
tremendous [1] 16/6
tried [1] 51/1
trouble [1] 13/22
true [1] 40/2

## T

trusts [1]  51/4
truth [1]  51/11
try [5]  18/7 25/14 25/25 39/3 42/16
trying [12]  3/23 14/1 14/4 14/25 22/11
 22/11 25/13 26/8 44/5 45/10 50/9 50/13
turn [4]  19/1 19/7 19/12 41/20
turned [5]  10/7 28/23 35/1 41/18 42/9
turning [2]  41/22 41/24
two [13]  4/23 11/4 15/4 19/24 20/1 22/24
 24/21 31/22 31/24 45/15 45/20 47/13
 47/22
type [2]  27/7 39/17

## U

U.S [2]  23/22 44/16
unclear [1]  6/17
uncomfortable [1]  50/25
undated [1]  6/17
under [8]  14/18 15/16 23/11 35/9 43/7
 43/19 47/22 52/21
understand [9]  16/25 19/19 21/17 21/24
 22/1 44/7 50/6 51/12 51/23
understanding [3]  10/17 23/15 48/12
undertook [1]  19/11
UNITED [2]  1/1 1/12
universe [4]  34/3 34/5 34/10 34/16
unresolved [1]  49/21
until [1]  39/25
untimely [1]  26/20
unusual [1]  52/4
unwieldy [1]  39/1
up [20]  8/4 14/6 16/25 19/17 20/17
 22/22 23/23 26/8 30/11 31/21 32/5 37/21
 39/4 41/20 45/18 48/8 49/25 50/4 50/15
 52/11
uphold [1]  48/21
upholding [1]  39/7
us [21]  4/10 4/18 4/19 11/15 14/11 16/16
 17/8 27/17 28/13 28/23 30/10 30/22 31/3
 32/24 33/8 33/20 42/8 43/23 44/15 44/18
 50/24
use [2]  8/17 46/20
usually [1]  39/4

## V

V.A.C [1]  24/9
vacation [1]  17/10
vacuum [1]  40/7
variety [2]  6/22 21/3
various [1]  14/13
very [11]  4/8 11/25 13/18 28/21 29/5
 32/18 32/25 33/15 36/1 43/1 43/2
via [2]  3/2 34/4
victims [1]  15/15
VICTOR [8]  1/8 2/8 8/17 8/17 25/6 25/7
 37/6 48/17
videoconference [1]  3/2
viewing [1]  29/19
violates [1]  4/16
violating [2]  45/5 46/13

## W

Wait [3]  8/6 41/17 41/17
waiting [1]  18/17
waiving [1]  29/24
walk [2]  14/4 38/1
want [28]  4/13 4/20 5/8 13/13 14/11
 19/14 19/16 22/4 22/5 22/20 22/23 24/6
 31/18 39/1 39/25 42/10 43/8 43/11 43/11

43/19 44/7 44/18 46/12 46/13 46/20 49/6
49/24 52/10
wanted [7]  23/19 23/19 26/21 28/24
 38/12 50/22 50/23
wants [3]  7/17 8/18 46/3
warn [1]  52/5
warned [1]  52/24
was [54]  3/23 4/17 5/16 6/1 6/7 8/3 8/24
 9/13 9/14 10/17 10/22 11/2 11/12 11/25
 12/5 12/7 12/8 13/7 15/9 16/15 17/12
 18/17 19/10 22/8 22/16 23/15 23/16 26/3
 26/8 26/10 28/4 28/19 28/20 28/22 30/16
 31/8 31/12 32/25 33/15 33/23 34/4 34/5
 34/8 34/24 37/20 40/25 40/25 45/3 45/4
 45/7 45/24 45/25 46/23 47/22
wasn't [4]  5/19 11/1 12/8 26/2
waste [1]  52/15
way [13]  16/7 18/1 33/13 35/15 38/17
 39/18 40/24 42/23 43/14 44/6 46/1 51/4
 51/16
ways [1]  27/11
we [152]
we'll [2]  6/9 44/23
we're [25]  4/9 11/14 12/17 15/3 15/12
 15/13 15/22 17/1 22/11 36/22 40/3 42/24
 43/10 43/10 43/18 43/19 44/2 44/4 44/8
 44/12 45/22 45/23 49/4 49/21 52/5
we've [4]  5/19 17/11 18/24 42/13
weeds [1]  7/16
week [4]  41/3 49/11 49/17 51/8
weigh [1]  16/22
weirder [1]  29/12
well [15]  10/15 11/1 15/11 25/12 29/6
 31/5 33/15 38/4 41/5 44/11 45/1 46/18
 48/25 52/12 53/21
welter [1]  4/14
went [8]  10/3 13/4 17/6 27/23 28/3 34/2
 34/8 34/14
were [47]  3/2 4/10 5/11 5/17 5/18 11/11
 12/6 13/1 14/21 16/9 16/12 16/14 16/16
 17/9 18/3 19/5 21/6 21/10 22/19 23/11
 23/12 23/17 24/4 24/19 24/19 26/4 27/25
 28/12 28/14 28/16 28/18 30/9 30/17
 30/22 31/14 33/2 33/3 34/6 34/12 34/25
 35/2 37/19 45/6 45/8 47/6 48/9 50/16
weren't [3]  6/25 7/1 47/5
Westlaw [1]  39/10
what [76]
what's [2]  21/20 24/2
whatever [4]  29/3 49/17 50/5 50/15
when [23]  5/22 6/6 10/21 13/6 13/9 19/8
 20/12 25/14 26/6 26/8 27/14 27/25 29/5
 30/13 35/18 37/6 37/8 39/2 39/4 42/4
 45/22 50/1 50/10
where [15]  7/5 7/21 15/14 15/19 16/9
 17/24 18/3 18/7 24/12 25/16 29/13 38/24
 44/1 44/2 44/8
whether [15]  20/22 20/22 21/11 26/3
 27/10 29/7 29/18 40/21 45/10 45/12 46/3
 46/5 47/13 51/18 52/25
which [31]  4/16 6/5 6/21 7/3 8/1 9/18
 12/7 17/25 21/7 22/8 25/7 27/13 27/21
 28/8 28/11 28/13 28/19 33/13 34/10
 36/10 37/12 37/12 39/8 40/25 42/7 42/14
 42/16 44/8 45/20 46/6 52/21
who [23]  3/13 6/18 7/21 8/10 8/14 8/18
 10/2 11/5 15/7 16/1 24/19 24/19 26/6
 26/22 35/20 37/23 44/12 45/19 46/15
 47/3 50/8 50/8 51/24
whoever [2]  9/18 51/22

whole [2]  7/1 38/5
whose [1]  20/1
why [9]  13/2 19/16 21/9 23/5 39/15
 42/24 43/6 44/12 52/18
wide [1]  6/22
wildly [3]  5/13 21/16 38/11
will [37]  4/25 5/7 6/8 7/18 7/22 8/19
 33/13 33/13 38/5 39/10 39/14 39/25 41/3
 41/25 44/20 48/20 49/10 49/11 49/12
 49/14 49/18 50/16 51/4 51/7 51/17 51/20
 51/25 52/2 52/5 52/5 52/20 52/22 52/23
 53/1 53/12 53/14 54/3
wish [1]  51/6
within [1]  51/20
without [1]  27/8
wonder [1]  50/2
words [3]  4/1 12/23 15/8
work [30]  6/21 6/21 11/19 12/3 12/15
 13/5 13/10 13/14 14/17 15/24 22/6 23/18
 26/25 28/9 28/12 28/25 29/1 30/25 31/3
 31/5 31/8 31/10 35/13 38/4 38/9 43/15
 44/3 44/9 44/22 51/4
worked [2]  37/8 37/13
working [2]  28/1 33/14
works [1]  28/8
world [1]  43/4
world's [1]  43/25
worth [1]  29/3
would [21]  3/6 6/13 19/2 19/7 19/8 21/6
 21/14 22/10 26/18 29/23 34/10 34/18
 40/9 42/16 47/23 48/5 49/6 51/14 51/15
 52/14 52/14
wow [1]  27/5
writing [2]  29/18 46/22
writs [1]  45/17
wrong [1]  48/15

## Y

yay [1]  53/7
year [1]  25/13
years [3]  5/13 22/17 22/19
yes [41]  4/1 8/21 9/12 9/14 9/20 10/24
 17/19 17/22 19/23 19/25 20/20 20/25
 22/3 23/1 23/1 23/8 24/14 24/17 24/22
 25/2 31/23 32/2 32/8 32/8 36/8 36/15
 36/15 37/10 40/3 40/13 42/1 42/22 48/7
 48/24 48/25 49/1 49/5 49/6 49/11 52/16
 53/3
yet [8]  6/5 7/8 13/25 14/5 14/11 18/14
 27/18 28/25
you [203]
you'll [1]  51/8
you're [8]  17/10 41/1 41/5 47/1 47/13
 47/14 49/23 52/12
you've [5]  12/1 29/16 35/9 43/1 50/7
your [150]
yourself [1]  27/9

## Z

zero [4]  13/13 37/20 43/14 43/16
Zoom [5]  3/2 8/20 26/22 37/25 41/1