# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

J.Y.C.C., *et al.*,                                  Case No 15-cv-01704-RWS
                                                     (CONSOLIDATED)

       Plaintiffs,

v.

THE DOE RUN RESOURCES
CORPORATION, *et al.*,

       Defendants.

_____/

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO DENY AND REVOKE THE *PRO HAC VICE* ADMISSION OF ATTORNEYS REPRESENTING DEFENDANTS IN 28 U.S.C. § 1782 PROCEEDING

Defendants The Renco Group, Inc. and The Doe Run Resources Corporation (the "Companies"), oppose plaintiffs' Motion to Deny and Revoke Pro Hac Vice Admission (ECF 762) (the "Motion"):

### I.     INTRODUCTION

Instead of even attempting to address the serious (and proven) allegations of their serial misconduct in the RM Report,[1] plaintiffs' counsel attack the messenger, and stand that attack on obvious falsehood. Plaintiffs claim that the RM Report contained evidence obtained from a 28 U.S.C § 1782 proceeding in the Southern District of Florida (Motion at 3).[2] It did not, and could

---

[1] ECF 756-4; corrected report filed at 761-5; *A.O.A, et al v. Doe Run Resources Corp.,* Case No. 4:11-cv-44-CDP ("*Reid*"), ECF 1357; corrected report filed at ECF 1362-4.

[2] "To permit Mr. Kuntz and his law firm to wear two hats — wearing one hat in collecting evidence from the files of Plaintiffs' law firms, through the Section 1782 proceeding, ostensibly for use by the Peruvian authorities, and then switching hats ***to present that and other evidence***

1

not have. When the RM Report was submitted to the Court,[3] the Section 1782 proceeding had not yet yielded a single piece of evidence, not one document, not one word of testimony. In fact, the deposition sought under the Section 1782 proceeding had not (and still has not) occurred.[4] Nothing from the Section 1782 proceeding is or **could have been** included in the RM Report because, when the RM Report was filed, there was nothing **to** include.

The RM Report was submitted as an exhibit in support of defendants' Motion for Sanctions and Remedial Measures.[5] It extensively evidences a decade-long scheme of systematic fraud, cynical coercion, improper solicitation, industrial-scale forgery, and bribery of public officials by plaintiffs' legal team, including their plaintiff recruiters, document collectors and attorneys, dating back to the earliest days of this action. The RM Report is based on twenty sworn statements, witness interviews conducted by Peruvian criminal authorities, sworn investigator summaries of other interviews, and extensive supporting documents. It is the product of a full year of effort by attorneys and investigators gathering evidence **in Peru**. It contains

---

**related to events in Peru, to this Court** — would permit a profound misuse of a statute that was enacted by Congress *solely* to aid foreign tribunals in the gathering of evidence." Motion to Deny and Revoke Pro Hac Vice Admissions ECF 762 at 3 (emphasis added). None of this purported misconduct occurred. **Nothing** from the Section 1782 proceeding was (or could have been) included in the RM Report.

[3] The RM report was first submitted on July 31, 2023, then resubmitted in nearly identical form, by attorney Andrés Rivero, with a single limited change to the title and a footnote, on August 4, 2023.

[4] The deposition of Section 1782 discovery target Careaga is scheduled for Thursday, August 10, 2023. Late in the evening on Friday, August 4, 2023, after the RM Report was re-submitted to the Court, and a week after it was originally submitted, Careaga finally provided 100 pages of document discovery. None of those documents—produced long after the RM Report was prepared and filed—were (or could have been) included in the RM Report.

[5] ECF 761-1, *Reid*, ECF 1362-1.

***nothing*** from the Section 1782 proceeding designed to obtain evidence in the Southern District of Florida or for use in Peru.

Moreover, the RM Report vindicates directly the Court's repeated instruction that evidence of fraud on the Court must be brought before the Court, so the Court can address that evidence.

Plaintiffs offer no legal support for the proposition that the Companies' lawyers should not be permitted to continue to practice in this case. The Motion should be denied.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Nearly 16 months ago, on April 12, 2022, the Companies filed a Section 1782 application for an *Ex Parte* Order from the Southern District of Florida authorizing them to take discovery from Victor Careaga ("Careaga"), a disbarred Florida lawyer who resides in that district.[6] The petition sought ***discovery in aid of Peruvian criminal authorities*** **'** ***investigation*** into wrongdoing by Careaga and by agents of the law firms that have employed or worked with him over the years in connection with this matter and *Reid*.

On June 8, 2022, the Southern District of Florida granted the petition to depose Careaga and unsealed the petition. Section 1782 proceeding, ECF 8 and 9. On July 13, 2022, plaintiffs moved for an anti-suit injunction under the All-Writs Act, asking the Court to enjoin the Section 1782 proceeding in the Southern District of Florida, and to shut down discovery in a malicious prosecution action pending in a Florida court against Careaga and another law firm. ECF 671 and 672.

---

[6] *Ex Parte Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 and Incorporated Memorandum of Law*, Case No. 22-MC-21115-JAL (S.D.Fla.), ECF 1, (the "Section 1782 proceeding").

At the request of the Court, the Companies waited to serve Careaga with a subpoena for a second time until the Court disposed of the motion for anti-suit injunction under the All Writs Act. ECF 680.

The anti-injunction motion was fully briefed and argued in a joint hearing on October 28, 2022, before the Court and District Judge Perry ("the October 28 hearing"). The Court asked the Companies to provide a transcript to the Southern District of Florida, which they did. Section 1782 proceeding, ECF 12. The Court then denied the anti-suit injunction motion on January 26, 2023. ECF 718. At the Court's request, that order was also filed in the Section 1782 proceeding. That order held that the Companies "have the right to seek discovery in aid of the criminal investigation underway in Peru" in the Section 1782 proceeding. *Id*. at 4.

On January 30, 2023, the Companies informed Careaga of their intent to take his long-delayed deposition and asked him to provide a convenient date. Careaga responded with Tuesday, March 7th at 10:00 a.m. On February 1st, 2023, the Companies served Careaga with the subpoena *duces tecum* to testify at a deposition on his preferred date.[7] Careaga accepted service on February 9, 2023, reiterating his agreement to appear.

Meanwhile, on February 15, 2023 two of the plaintiffs' law firms moved to intervene in the Section 1782 proceeding, seeking protective orders. Section 1782 proceeding, ECF 15-18. Their motion was stricken, then refiled on February 27, 2023. *Id.*, ECF 20. On July 10, 2023, a motion to intervene was filed by a third law firm. *Id*. at ECF 45. Despite having failed to seek a protective order, Careaga failed to appear at his deposition.

---

[7] In accord with the Court's direction (ECF 718, at 5), the Companies also provided plaintiffs' counsel in the Missouri cases, including the law firms, with a copy of the Careaga subpoena in February 2023.

Since then, Magistrate Judge Louis, overseeing the Section 1782 proceeding, has permitted three of plaintiffs' firms to intervene, entertained extensive briefing on the issues, and held three hearings regarding, among other things, plaintiffs' attorneys' privilege assertions. At a hearing on June 15, 2023, Magistrate Judge Louis directed Careaga to appear for deposition. At a hearing on July 13, 2023 she ordered him to produce documents by August 4, 2023. Privilege assertions were also the subject of a third hearing on July 31, 2023. Late Friday evening on August 4, 2023, Careaga produced for the first time 100 pages of document discovery (most of those blank forms) in response to the Section 1782 subpoena.

While pursuing Section 1782 discovery in the United States to support the criminal prosecution in Peru, the Companies also, for more than a year, have independently sought evidence in Peru. As the RM Report and its exhibits set forth, those efforts—necessarily separate and apart from the Section 1782 process (which has so far produced no evidence)—have been fruitful.

On July 31, 2023, the Companies filed under seal—in this matter and in *Reid*—their motion for sanctions and remedial measures, to which the RM Report and its materials were attached as an exhibit. ECF 755 and 756 et seq. and ECF 1356 and 1357 et seq, respectively. The motion for sanctions and the RM Report ***did not*** contain—***nor could they have contained***—any information obtained through the Section 1782 proceeding, which had not yet produced any testimony or evidence.

This Court and the *Reid* Court struck the Companies' sanctions motions (ECF 758 and ECF 1359, respectively), on the basis that the motion was signed by Robert Kuntz, whose October 6, 2022, pro hac vice admissions (ECF 700; *Reid* ECF 1314) had been limited to appearing at the October 28 hearing. To remedy this, on August 4, 2023, the Companies re-filed

5

their motions for sanctions, along with the supporting RM Report and its extensive evidentiary exhibits (ECF 760 and 761 et seq.; *Reid* ECF 1361 and 1362 et seq), under the signature of attorney Andrés Rivero, whose June 13, 2023, pro hac vice admissions (ECF 746; *Reid* ECF 1349) **are without restriction**. ECF 747; *Reid* ECF 1350.

### III.  ARGUMENT

#### A.  The Standard for Denying and Revoking Pro Hac Vice Admission is not Met Here

In this district, a court may admit an attorney pro hac vice upon a motion to the court and proof that the attorney is a member in good standing of the bars to which he is admitted. L.R. 12.01.  Nothing more is required. A district court may deny an attorney's application for pro hac vice admission only when it is "not satisfied that he possesses good private and professional character, albeit he was previously admitted to practice in state court." *United States v. Gorman*, 661 F. Supp. 1087, 1088 (D. Minn. 1987*), aff'd sub nom. United States v. Stelten*, 867 F.2d 446 (8th Cir. 1989); *see United States v. Gonzalez-Lopez*, 399 F.3d 924, 930–31 (8th Cir. 2005), *aff'd and remanded*, 548 U.S. 140 (2006) (district court erred in denying pro hac vice motion of defendant's chosen attorney based on a perceived violation of ethical rules).

Though relatively easy to attain, pro hac vice admission is difficult to lose. *See, e.g., Mongler v. Knight*, 2017 WL 2931369, at *7 (E.D. Mo. 2017) (allowing attorneys admitted pro hac vice to remain in case despite "concerning" allegations of conflicts of interest and other unethical conduct). There is a material "distinction between denial of pro hac vice admission compared to revocation of pro hac vice admission." *Uptime Sys., LLC v. Kennard L., P.C.*, 2020 WL 13249087, at *4 (D. Minn. 2020). "While it is indeed true that admission pro hac vice is a privilege, not a right, revocation of that privilege, once bestowed, sends a strong message which works lasting hardship on an attorney's reputation." *Id.* (cleaned up).

To revoke a pro hac vice admission, courts typically require evidence that an attorney violated the rules of professional conduct, or other local rules, before revoking the attorney's pro hac vice admission. *Uptime*, 2020 WL 13249087, at *4 (granting motion to revoke following proof that attorney violated multiple rules of professional conduct and district court's local rules). In addition, courts generally require that the conduct supporting revocation be no less severe than that which would be required for disqualification of an attorney admitted to practice in the district court. *E.g., Belue v. Leventhal*, 640 F.3d 567, 576–77 (4th Cir. 2011). The Fourth Circuit aptly explained the reason for that rule in this way:

> While pro hac vice status was at one time . . . considered to be granted and held at the grace of the court, such an approach does not accord with the modern practice of law. The legal profession has become a national one, and justice in any true sense must transcend the parochial. If pro hac vice attorneys become subject to uniquely preemptory dismissals, then federal courts will be lesser bulwarks against local favoritism, and less able to perform the national task that has been theirs since Article III originally assigned it. In this era of interstate practice . . . courts have increasingly proved willing to conclude that pro hac vice attorneys should not be disqualified under standards and procedures any different or more stringent than those imposed upon regular members of the district court bar.

*Blue*, 640 F.3d at 577 (cleaned up); s*ee Martens v. Thomann,* 273 F.3d 159 (2d Cir. 2001) (without reaching the merits of the district court's decision to revoke pro hac vice status, Second Circuit noted that the grounds for such revocation should be substantially similar to the grounds for disqualifying admitted counsel); *United States v. Collins,* 920 F.2d 619, 626 (10th Cir.1990) ("Attorneys admitted *pro hac vice* are held to the same professional responsibilities and ethical standards as regular counsel. Once admitted, *pro hac vice* counsel cannot be disqualified under standards and procedures any different or more stringent than those imposed upon regular members of the district court bar.").

Thus, an alleged violation must be egregious to warrant revoking pro hac vice status. *See Mgmt. Registry Inc. v. A.W. Cos.*, 2019 WL 5388488, at *8 (D. Minn. 2019) (District court

declined to revoke attorney's pro hac vice admission despite "persistent misconduct," including violation of protective order, refusing to meet and confer with opposing counsel, and filing baseless motions. Instead, the court warned that its patience with him was "at its end"); *Tr. Int'l Corp. v. Nagy*, at *2 (S.D. Fla. 2017) (attorney's misleading translation of foreign language documents was not "so egregious" to warrant revocation of pro hac vice admission); *In re Davis*, 2012 WL 3782548, at *1–3 (Bankr. D.S.C. 2012) (denying motion to revoke attorney's pro hac vice admission for failing to disclose information on application, noting that revocation is a "harsh sanction" that "should be exercised sparingly and only in particularly egregious cases"); *United States Juice Corp. v. JMF Grp., LLC*, 2007 WL 9734651, at *1–2 (D. Nev. 2007) (denying motion to revoke pro hac vice status based on attorney's active representation of client before pro hac vice motion was granted, because that conduct did not involve "dishonesty or disdain for this Court or its rules," and was "not egregious enough" to warrant revocation).

Here, defendants' pro hac vice counsel have committed ***no violation*** at all. The sole basis for the Motion is the claim that the Rivero Mestre lawyers "improperly" are wearing "two hats" by using evidence collected in the Section 1782 proceeding to present to this Court. First, that is demonstrably false. Rivero Mestre has not submitted ***any*** evidence from the Section 1782 proceeding in this case – and Plaintiffs' counsel certainly knew this when they filed the Motion. Second, even if their false claim were true, that would not be remotely improper, unethical or otherwise be a basis for revoking pro hac vice admission. To the contrary, as officers of this Court the lawyers would be obligated to advise the Court of evidence establishing that Plaintiffs' counsel had committed a fraud on the court. Indeed, even without that obligation, the notion that officers of this Court should be barred from presenting the Court with evidence of misconduct, solely because that evidence was obtained in another matter, is patently unsupportable.

**B. Nothing Presented to this Court Came from the Section 1782 Proceeding in the Southern District Of Florida**

The "factual" foundation of the Motion is readily refuted. Plaintiffs assert that the Companies have submitted to the Court evidence obtained in the Section 1782 proceeding. That statement is necessarily false, because there *is no* Section 1782 evidence at this point.[8] Declaration of Robert J. Kuntz Jr. at 9-10, attached as Exhibit A ("**Kuntz Decl ##**"). From the investigation in Peru, however, the RM Report contains more than 2,000 pages of documentary evidence, witness declarations, information released by the Office of the Collective Provincial Prosecutor Specialized Against Organized Crime of Junín (the "Public Prosecutor"), along with the Public Prosecutor's Formalization, by which 12 persons have been provisionally charged with serious violations of Peruvian law. It is a damning catalog of a decade of widespread misconduct by agents of various plaintiff attorneys. But the report contains only evidence gathered by the Defendants overseas[9] – none of which is the product of a Section 1782 proceeding, by which evidence is gathered *in* the United States for *use* overseas.

**C. Counsels' Participation in the Section 1782 Proceeding Provides No Basis for Revoking Their Pro Hac Vice Admissions**

Not surprisingly, after performing a comprehensive nationwide search, we also located no case holding that participation in a Section 1782 proceeding in another district court is prohibited, improper, unethical or otherwise cause for any sanction, much less that of disqualification or revocation of pro hac vice admission. And, of course, plaintiffs cite none.

---

[8] That is to say, except for the 100 pages of inconsequential documents, 82 pages of which are blank forms, produced by Careaga *after* the RM Report was prepared and submitted. Kuntz Decl. at 15. Those documents have not been submitted to *any* court.

[9] Kuntz Decl. at 6-7.

The cases cited by plaintiffs stand for the unremarkable proposition that the Section 1782 applicant must show that the information requested to be obtained *through the Section 1782* is "for use" in a foreign proceeding, *Newbrook Shipping Corp. v. Global Mktg. Sys.*, 31 F. 4th 889, 894-95 (4th Cir. 2022), and that, a district court, **if it so chooses**, can limit the evidence collected through a Section 1782 proceeding to use in the foreign proceeding. *In re Application of Kegel*, 67 F. Supp. 3d 1054 (D.N.D. 2014). Far from misrepresenting matters to the Court, this is precisely what Mr. Kuntz stated at the October 28 hearing.[10]

No evidence from the Section 1782 proceeding has been presented to the Court. If defendants later attempt to submit such evidence to this or another court, that court will then decide whether to allow it.[11] But it is hard to imagine, should the Section 1782 proceeding produce evidence of fraud on the Court, that the Court would **not** want to assess and potentially admit that evidence, as it would be entirely free to do.[12]

---

[10] "This Court can certainly decide what evidence it's going to allow through those doors, but it doesn't have the authority, nor should it, to attempt to limit what facts and evidence the Peruvian justice system can gather or what evidence Doe Run is permitted to provide in that independent matter." ECF 709 at 40.

[11] The Motion falsely asserts that defense counsel misrepresented to the Court "that the Section 1782 proceeding would have no conceivable impact on the litigation pending before this Court." Motion at 4. That simply isn't true. The transcript of the October 28, 2022, hearing speaks for itself, and—just as the Companies' counsel told the Court at the October 28 hearing—the Court has discretion to decide whether to receive any evidence from the Section 1782 proceeding, if any is proffered at some future date.

[12]

> [W]e find nothing in the language of § 1782 that purports to limit later uses of evidence that have been properly obtained under § 1782. Had Congress intended to restrict the use of evidence previously obtained under § 1782 to proceedings in foreign or international tribunals, it easily could have expressed that intention in any number of ways, even by simply adding the word "only" or "solely" to the phrase "for use in a proceeding in a foreign or international tribunal." But it did not do that.

Rivero Mestre's simultaneous participation in this case and the Section 1782 proceeding gives rise to no conflict of interest, no violation of any other professional obligation, and no violation of any local rule. There is simply no rule or case law barring participation in both the Section 1782 proceeding and this matter. Consequently, the Motion is devoid of merit.

### D. Revocation or Denial of the Admissions Would Be to the Court's Disadvantage and Would Be Unjust

When the Jones Day Report was submitted to the Court nearly two years ago, Plaintiffs' counsel decried the veracity of that report because the Jones Day firm did not enter an appearance in this case. Now that Rivero Mestre has submitted its extensive report corroborating every allegation and entered its appearance—thereby depriving Plaintiffs' counsel of the ability to impugn the RM Report on that basis—they have taken a different, and inconsistent approach. Plaintiffs cannot in one breath complain that lawyers presenting evidence of fraud on the Court won't stand behind that evidence, then in the next breath seek to banish from the courtroom lawyers who are doing just that.

Moreover, the Rivero Mestre lawyers are and have been the attorneys familiar with the current events in Peru—both with respect to the Public Prosecutor's investigation and the Companies' own investigation. With the Rivero Mestre lawyers before the Court, the Court has transparency in those events, and Rivero Mestre is the legal team best suited to present such

---

*Glock v. Glock, Inc.*, 797 F.3d 1002, 1006 (11th Cir. 2015) (reversing order prohibiting party from using evidence obtained under Section 1782 in domestic RICO proceeding). In fact, "[a]s a general rule, in United States litigation, to help prosecute or defend their lawsuits, parties may use any evidence they lawfully possess." *Glock* at 1007.  But, as always, the Court is the gatekeeper of the evidence before it. *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) ("[W]e hold that Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise.").

11

evidence to Court and to seek the relief that evidence warrants. It would distinctly disadvantage the Court for the Rivero Mestre lawyers not to be answerable to it.

Furthermore, it would be profoundly unjust and work a manifold prejudice to bar, as plaintiffs request (Motion at 5), the Companies' lawyers who are investigating facts for its defense from sharing what they learn with the Companies' trial team.

### E. The Motion Misstates Other Crucial Facts

#### 1. *The Companies Are Not Misusing the Section 1782 Proceeding*

Plaintiffs argue that the Companies are abusing the Section 1782 proceeding, and acting under false pretenses. Motion at 4, 6. This is patently and plainly untrue.

As they have said from the beginning, the Companies brought the Section 1782 proceeding in the Southern District of Florida because that is where a key witness, central to the Peruvian Public Prosecutor's investigation, resides. The Companies were and are seeking evidence from Careaga that will be turned over to the Public Prosecutor, which is the Companies' right under Peruvian law, as victims of crimes in Peru.

Pursuing one set of remedies in Peru does not (and cannot) bar the Companies from seeking other remedies before this Court—particularly where the Court has expressly stated that it must be the one to determine whether and what misconduct have occurred in any matters conducted before it.

#### 2. *The Companies Have Not Impeded Plaintiffs' Assertions of Privilege in the Section 1782 Proceeding, and Plaintiffs are Vigorously Pursuing those Assertions*

Plaintiffs argue that counsel has "reneged on his assurance that Plaintiffs would be allowed to raise privilege objections to the 1782 Discovery." Motion at 2. The opposite is true. Plaintiffs are now on their third round of briefing and have had three lengthy hearings before Magistrate Judge Louis, all concerning their assertions of privilege over document production in

12

the 1782 proceeding. Kuntz Decl. at 11, 13. Plaintiffs' counsel also have made it clear they plan on attending Careaga's deposition, where they intend to raise privilege objections to any questions they believe would implicate privilege. Kuntz Decl. at 14. Meanwhile they steadfastly maintain **they do not represent** Careaga. Kuntz Decl. at 12.

In any event, it appears plaintiffs' counsel have—at least so far—not only raised but operationalized their claims of privilege in the documents Careaga was to produce. Despite having told Magistrate Judge Louis that he had ten thousand emails and hundreds of documents to review, Careaga, just before midnight on August 4, 2023, produced five pdf files amounting to 100 pages (82 pages of which were blank forms) he said were not subject to a privilege claim. All the rest were held back on the basis of alleged privilege claims. Kuntz Decl. at 15. There is simply no basis for the argument that plaintiffs' counsel have been denied the ability to raise privilege objections in the Section 1782 proceeding.

## IV.    CONCLUSION

The Court has stated that it takes allegations of fraud seriously and intends to deal with them. It is thus no wonder that plaintiffs' counsel hope to prevent the evidence of fraud from being presented by exiling the proponents of that evidence. But the RM Report is not the product of the Section 1782 proceeding. No evidence from that proceeding has been (or could have been) introduced here. And nothing about defendants' counsel's participation in that proceeding provides anything remotely resembling a legitimate basis for barring their participation in this one.

In sum, and for all the good and sufficient reasons set forth above, the Motion should be denied.

13

Dated: August 9, 2023

Respectfully submitted,

By: /s/ Andres Rivero
ANDRES RIVERO
Florida Bar.: 613819
(Admitted pro hac vice)


**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: receptionist@riveromestre.com

*Attorneys for Doe Run Resources Corp. and
The Renco Group, Inc.*

## CERTIFICATE OF SERVICE

I certify that on August 9, 2023, I electronically filed this document with the Clerk of the

Court using CM/ECF. I also certify that this document is being served today on all counsel of

record by transmission of Notices of Electronic Filing generated by CM/ECF.


By: /s/ Andres Rivero
ANDRES RIVERO

14

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

J.Y.C.C., *et al.*,

Plaintiffs,

v.

THE DOE RUN RESOURCES
CORPORATION, *et al.*,

Defendants.

Case No 15-cv-01704-RWS
(CONSOLIDATED)

## DECLARATION OF ATTORNEY ROBERT J. KUNTZ JR.

1. My name is Robert J. Kuntz Jr., I am licensed to practice law in the state of Florida, where I have been an attorney since 1996. I am a partner in the Rivero Mestre, LLP law firm, admitted to this court on a limited basis pro hac vice on October 7, 2023.

2. I represent Doe Run Resources Corporation and The Renco Group Inc. (the "Companies") in proceedings in the Southern District of Florida under the provisions of 28 U.S.C. § 1782, *Ex Parte Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 and Incorporated Memorandum of Law*, Case No. 22-MC-21115-JAL ("The Section 1782 Proceeding").

3. In that proceeding, the Companies are seeking discovery from Victor A. Careaga ("Careaga") in support of a foreign proceeding, specifically a criminal investigation by the Junín (Peru) District Public Prosecutor's Office of Against Organized Crime (the "Public Prosecutor") into wrongdoing in Peru by representatives of plaintiff's counsel, of which the Companies are the victims.

1

4.      The Southern District of Florida authorized service of a subpoena duces tecum for deposition upon Careaga upon granting the Companies' Section 1782 application on June 8, 2022.

5.      Despite seeking Careaga's deposition for more than a year, that deposition has not yet taken place. It is now scheduled to occur in Miami, Florida on Thursday, August 10, 2023.

6.      In addition to Rivero Mestre LLP's work on the Section 1782 proceedings, the firm also has been coordinating –working through investigators on the ground in Peru – an independent investigation into the plaintiffs' legal team's wrongdoing in Peru.

7.      The RM Report, re-filed on August 4, 2023 (ECF 761-4 in this proceeding and ECF 1362-4 in *A.O.A., et al v. Doe Run Resources Corporation, et al,* 4:11-CV-00044-CDP (Consolidated) ("*Reid*") is a product of that independent investigation.

8.      The RM Report and its extensive exhibits document the plaintiff's team's wholesale fraud, serial misrepresentation, assembly line forgery, bribery of public officials, improper solicitation and widespread corruption––all funded from the United States––in support of this action and *Reid.*

9.      **Not one piece of information or evidence contained in the RM Report or any exhibit to it is the result of the Section 1782 proceedings.**

10.     **Not one piece of information or evidence in the RM Report *could be* the result of the Section 1782 proceedings because, when the Report was filed, Careaga had not been deposed and had not produced a single document.**

11.     Within the Section 1782 proceeding in the Southern District of Florida, plaintiffs counsel have been extensively briefing privilege issues. Filings have included a motion to intervene in the Section 1782 proceeding, seeking protective orders from three law firms. The

2

Section 1782 Proceeding, ECF 15-18, motion to intervene and motion for protective order filed by the law firms of Rodriguez, Tramont, & Nunez, P.A. and Napoli Shkolnik PLLC. The motions were stricken, then refiled on February 27, 2023. The Section 1782 proceeding, ECF 20. On July 10, 2023, a Motion to Intervene was filed by the law firm of Halpern Santos Pinkert. The Section 1782 Proceeding, ECF 45. Magistrate Judge Louis has conducted three hearings at which plaintiffs' counsel presented argument on privilege issues: June 15, July 13, and July 31. She ruled on some aspects of plaintiffs privilege claims. The Section 1782 Proceeding, ECF 29. At the hearing on July 31, 2023, she offered plaintiffs another round of briefing on the subject, and they have filed additional papers. The Section 1782 Proceeding, ECF 57 and 58.

12. All this while all three intervening plaintiffs' counsel and Careaga have steadfastly maintained that they do not represent him, and that he is acting pro se.

13. The Companies' responses to the last set of briefing are due Friday, August 11, 2023.

14. In addition to the extensive briefing and argument on privilege issues related to document production, plaintiffs' attorneys have told me and stated to Judge Louis that they will attend the Careaga deposition to make objections there.

15. Although he told Judge Louis that he had as many as ten thousand emails and hundreds of pages of documents, Careaga produced only five pdf files, totaling 100 pages (82 pages of which are blank forms) for which he claims plaintiffs' counsel does not assert privilege. The rest were withheld on the basis of plaintiff's counsel privilege claims. Those documents were received in my office via email from Careaga at 11:41 p.m. Friday, August 4, 2023.

In accord with 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed:  9 August 2023

Robert J. Kuntz Jr.