**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:22-mc-21115-LENARD

IN RE: THE RENCO GROUP INC. AND
THE DOE RUN RESOURCES
CORPORATION

_____/

## ORDER REGARDING ASSERTIONS OF PRIVILEGE

**THIS CAUSE** is before the Court upon the Motion for Protective Order (ECF No. 57)

filed by Intervenor Halpern Santos & Pinkert P.A. ("Halpern"), and the Renewed Motion for a

Protective Order (ECF No. 58) jointly filed by Intervenor Rodriguez Tramont & Nuñez, P.A.

("Rodriguez Tramont") and Intervenor Napoli Shkolnik PLLC ("Napoli Shkolnik").[1] Petitioners

The Renco Group Inc. and The Doe Run Resources Corporation ("Petitioners") filed an Omnibus

Response in Opposition to both motions (ECF No. 63), to which Halpern filed a Reply (ECF

No. 66). Rodriguez Tramont and Napoli Shkolnik did not file a reply and the time to do so has

passed. Also before the Court is Petitioners' Motion to Seal a report prepared by Petitioners'

counsel, the law firm Rivero Mestre LLP (the "RM Report"). (ECF No. 65). Halpern filed a

Response in opposition to the motion to seal (ECF No. 71), to which Petitioners filed a Reply (ECF

No. 73). The Motions are now ripe for review.

The matter has been referred to the undersigned United States Magistrate Judge by the

Honorable Joan A. Lenard, United States District Judge, to resolve all pretrial non-dispositive

matters and for a Report and Recommendations on any dispositive matters. (ECF No. 11). Having

---

[1] Citations to documents within the Court's case management and electronic case filing system (CM/ECF) refer to the pagination assigned by CM/ECF to a document (*i.e.*, the page number assigned in the blue text imprinted across the top of the PDF) and not to a document's internal pagination.

reviewed the Motions, the briefing, the record as a whole, and being otherwise fully advised, the Motions are **DENIED** as set forth below.

## I.      BACKGROUND

Petitioners have instituted this action pursuant to 28 U.S.C. § 1782 to take discovery from a resident of the Southern District of Florida for use in criminal proceedings in the Republic of Peru.  Those proceedings relate to the investigative techniques allegedly practiced by counsel and their agents representing plaintiffs in a suit pending in the Eastern District of Missouri.

On April 12, 2022, Petitioners The Renco Group Inc. and The Doe Run Resources Corporation filed an *Ex Parte* Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 (ECF No. 1), seeking leave to take discovery from Victor Careaga, a former Florida attorney and resident of the Southern District of Florida who was retained as a paralegal on the consolidated mass tort litigation against Petitioners in the Eastern District of Missouri, where Rodriguez Tramont and Napoli Shkolnik are counsel for plaintiffs.  Until 2013, Careaga was also an attorney and co-counsel to Halpern, a law firm representing plaintiffs in related consolidated mass tort litigation, also in the Eastern District of Missouri.  Petitioners seek to submit discovery obtained from Careaga here in aid of ongoing criminal investigations and proceedings in Peru into alleged fraud that, according to Petitioners, underpins both consolidated mass tort actions.  On June 8, 2022, the District Court granted Petitioners' *Ex Parte* Application and authorized Petitioners to seek the discovery sought from Careaga.[2]

On February 1, 2023, Petitioners reissued a subpoena to Careaga, commanding his attendance at a deposition on March 7, 2023.  (ECF No. 20-7).  The subpoena also commanded production of 21 categories of documents in connection with that deposition, in large part related

---

[2]  Petitioners held off on pursuing the discovery pending resolution of a motion for anti-suit injunction filed in the Eastern District of Missouri, under the All Writs Act, 28 U.S.C. § 1651(a).

to Careaga's activities in Peru and the recruitment of Peruvian plaintiffs in the mass tort actions in the Eastern District of Missouri.[3]  (ECF No. 20-7 at 11–14).

Rodriguez Tramont and Napoli Shkolnik sought leave to intervene so that they could seek an order protecting privileged matters from disclosure.  (ECF No. 20).  This Court granted that request, in part, and permitted Rodriguez Tramont and Napoli Shkolnik to intervene to assert work product over documents sought from Careaga, because attorney work product protections are an interest held by Rodriguez Tramont and Napoli Shkolnik as law firms.  However, Rodriguez Tramont and Napoli Shkolnik were permitted to intervene to assert the attorney-client privilege on behalf of their clients only if the firms submitted sworn affidavits or declarations from their absent, former, unnamed clients invoking the attorney-client privilege and the client's intent to have Rodriguez Tramont and Napoli Shkolnik represent them in protecting that privilege.[4]  (ECF No. 29 at 14, 16) (citing *In re Sealed Search Warrant & Application for a Warrant*, No. 20-MJ-03278, 2020 WL 6274987 (S.D. Fla. Oct. 26, 2020)).  Rodriguez Tramont and Napoli Shkolnik sought reconsideration of the Court's Order limiting their intervention to the assertion of work product; the motion for reconsideration was denied.  (ECF No. 67).

Halpern also sought leave to intervene on similar grounds: to invoke work-product protections over documents held by Careaga as a former attorney at Halpern, and to assert attorney-client privilege on behalf of Halpern's absent, former, unnamed clients.  (ECF No. 45).  The motion to intervene was granted.  However, in granting the motion, the Court permitted Halpern to assert the attorney-client privilege on behalf of absent, former, unnamed clients, if Halpern submitted

---

[3]  At the June 15, 2023 hearing, Petitioners withdrew their request for production of "[a]ny and all video or audio recordings, transcripts or notes taken of meetings between you, any of the U.S. Law Firms or any recruiter and any potential plaintiff in Peru in which the possibility of participating in the Missouri lawsuits was first explained or discussed."  (ECF No. 20-7 at 14).
[4]  Rodriguez Tramont and Napoli Shkolnik did not do so within the timeframe set forth in the Court's Order.

sworn affidavits from those individuals asserting the attorney-client privilege and the client's intent for Halpern to represent them in protecting that privilege.  (ECF No. 59).  To the extent the absent, former, unnamed clients could not be contacted or located, the Court permitted Halpern to invoke the privilege on behalf of those individuals if Halpern submitted an affidavit identifying the clients and attesting to the efforts undertaken to locate them.  To that end, and in support of its Reply, the law firm Halpern has filed the Affidavit of Jay Halpern (ECF No. 66-1), wherein attorney Jay Halpern attests that the law firm Halpern is no longer in contact with the 49 plaintiffs whose cases have been dismissed in the *Reid*[5] consolidated actions in the Eastern District of Missouri.  Attorney Halpern attests that it is impracticable to locate those former clients.  His affidavit is accompanied by a list of the identities of the 49 absent, former clients on whose behalf Halpern has intervened to assert attorney-client privilege.

On June 23, 2023, Petitioners reissued their subpoena to Careaga following a hearing before this Court on Rodriguez Tramont and Napoli Shkolnik's initial motion for protective order.  (ECF No. 51-1).

On July 31, 2023, the Parties appeared for a discovery hearing on a dispute noticed by Petitioners.  (ECF Nos. 52, 56).  The dispute related to privilege logs produced to Petitioners by Rodriguez Tramont and Napoli Shkolnik, and by Careaga.  In their Notice of Hearing, Petitioners alleged various deficiencies with respect to the privilege logs, including: (i) failure to identify documents and assert privileges with particularity; (ii) improper assertion of work-product privileges over communications with or documents created by third parties; (iii) improper assertion of attorney-client privilege by Careaga; (iv) assertions of privilege based on the filing of the consolidated mass tort actions in the Eastern District of Missouri; and (v) missing documents.

---

[5] *A.O.A., et al., v. The Doe Run Resources Corporation, et al.*, Case No. 4:11-cv-44-DCP (E.D. Mo.) (the "*Reid*" actions).

Given the nature of the dispute, the Parties were directed to brief the issue of Intervenors' assertions of privilege and the sufficiency of the privilege logs advanced. The instant Motions for Protective Order followed.

## II.     DISCUSSION

In their Renewed Motion for a Protective Order, Intervenors Rodriguez Tramont and Napoli Shkolnik jointly move to assert the work product privilege over documents sought from Careaga. (ECF No. 58). Separately, Rodriguez Tramont and Napoli Shkolnik also renew their request for the Court to vacate the District Court's Order that authorized Petitioners to seek discovery from Careaga. Rodriguez Tramont and Napoli Shkolnik further renew their request that the Court require Petitioners to strictly comply with rulings in the Eastern District of Missouri limiting discovery into the files of plaintiffs in the Eastern District of Missouri whose cases have been dismissed.

In its Motion for Protective Order, Intervenor Halpern asserts that all of the documents that Careaga identified as responsive from when he was co-counsel at Halpern are attorney work product. Halpern also asserts that attorney-client privilege protects some of the documents identified from disclosure.

### A.     Rodriguez Tramont and Napoli Shkolnik's Request to Vacate the District Court's Order Authorizing Discovery

The Court first turns to Rodriguez Tramont and Napoli Shkolnik's renewed request to vacate the District Court's order authorizing discovery from Careaga in this Section 1782 proceeding and require Petitioners to instead seek the discovery in the Eastern District of Missouri.

Rodriguez Tramont and Napoli Shkolnik accuse Petitioners and their counsel of lack candor to this Court. They assert that, despite representations by Petitioners' counsel to this Court and to United States District Judge Rodney W. Sippel of the Eastern District of Missouri that the

discovery sought here in this Section 1782 proceeding is for use in the Peruvian criminal proceedings, Petitioners' counsel attempted on July 31, 2023 to file under seal in the Eastern District of Missouri discovery materials obtained here. Rodriguez Tramont and Napoli Shkolnik assert that, consequently, Judge Sippel ordered the materials stricken. Rodriguez Tramont and Napoli Shkolnik also again argue that this Section 1782 proceeding should be transferred to the Eastern District of Missouri or that it be dismissed so that it can be refiled in that court before Judge Sippel.

Petitioners oppose the request to vacate the District Court's Order authorizing discovery. Petitioners and their counsel assert that they have not misrepresented that the materials obtained here are for use in Peruvian criminal proceedings. Petitioners also note that it was not possible for them to have filed, on July 31, 2023, discovery materials obtained here in the Eastern District of Missouri, as no discovery had yet been produced in this proceeding at that time.

The Court has previously denied Rodriguez Tramont and Napoli Shkolnik's request to vacate the District Court's Order authorizing discovery in this Section 1782 proceeding. The Court notes now, as the Court noted then, that Rodriguez Tramont and Napoli Shkolnik have advanced no basis for vacating the District Court's Order. Rodriguez Tramont and Napoli Shkolnik again cite no authority from this Circuit or the district courts within this Circuit in support of their request to vacate the District Court's Order. Nor do they refer to any of the requirements of 28 U.S.C. § 1782 or the *Intel* factors. In any event, Careaga's representations at the July 31, 2023 hearing corroborate Petitioners' assertion now that it was not possible for Petitioners to have filed discovery materials obtained here in the Eastern District of Missouri on July 31: Careaga represented at the July 31 hearing that he had not, at that time, produced any documents to Petitioners. (ECF No. 64 at 18).

The Court has also previously denied Rodriguez Tramont and Napoli Shkolnik's request to transfer this proceeding to the Eastern District of Missouri for consolidation before Judge Sippel. Rodriguez Tramont and Napoli Shkolnik have not shown that the requirements for transfer are satisfied, *cf.* 28 U.S.C. § 1404(a), or that Section 1782 would even permit such a change of venue to a judicial district where the discovery target does not reside.

For these reasons, Rodriguez Tramont and Napoli Shkolnik's Renewed Motion for Protective Order (ECF No. 58) is **DENIED** to the extent it requests vacatur of the District Court's Order authorizing discovery, or transfer of this proceeding to the Eastern District of Missouri.

### B.  Rodriguez Tramont and Napoli Shkolnik's Request to Limit Petitioners' Discovery to Plaintiffs Whose Cases Have Been Dismissed

Next, the Court turns to Rodriguez Tramont and Napoli Shkolnik's request that the Court require Petitioners to honor representations made to Judge Sippel that discovery sought in the Southern District of Florida in this proceeding would be limited to the files of plaintiffs whose cases have been dismissed and which are no longer pending in the Eastern District of Missouri.

The request is moot.  This Court has previously determined that there is no conflict between the discovery sought in the Southern District of Florida and prior discovery orders issued in the Eastern District of Missouri.  As this Court noted in the Order memorializing the rulings made on the record at the June 15, 2023 hearing:

> Although the firms rely on Judge Sippel's March 24, 2022 Order granting a protective order, (ECF No. 37-6), to assert that the discovery sought here is in violation of court orders in the Eastern District of Missouri barring purportedly the same discovery sought there, Judge Sippel later, on January 26, 2023 and denying a motion for anti-suit injunction, did not enjoin Petitioners from pursuing discovery in this Section 1782 proceeding so long as Petitioners do not seek information related to *current* plaintiffs in the Missouri Litigation.  (ECF No. 13-1 at 5–6). Petitioners have reiterated in communications with the Law Firm Intervenors and with Careaga, in filings in this Court, and on the record in open court that they are seeking information related to plaintiffs who were dismissed from the Missouri

Litigation.  Indeed, the subpoena reissued after the June 15 hearing contained the
following notice in bold typeface:

> We do not seek from you discovery specific to any plaintiff whose claim is
> currently pending in either *A.O.A., et al., v. The Doe Run Resources
> Corporation, et al.*, Case No. 4:11-cv-44-DCP ("Reid") or *J.Y.C.C., et al.,
> v. Doe Run Resources Corporation, et al.*, ("Collins") Case No. 4:15-CV-
> 1704-RWS (the "Missouri Lawsuits").  We do seek documents that are
> specific to any plaintiff dismissed from the Missouri Lawsuits.  Where a
> document is otherwise responsive, but references individuals whose claims
> are now pending in the Missouri Lawsuits, you should redact all personally
> identifying information and produce the document.  You should not respond
> to Request No. 17, which is eliminated by agreement.

> (ECF No. 51-1 at 12) (June 23, 2023 reissued subpoena).  Accordingly, the Law
> Firm Intervenors have identified no true conflict between Judge Sippel's orders and
> the discovery sought here.

(ECF No. 70 at 9–10).  There has been no showing now that Petitioners have since failed to abide
by their representations above.  Accordingly, the Renewed Motion for a Protective Order (ECF
No. 58) is **DENIED, as moot**, to the extent it requests an order requiring Petitioners to limit
discovery in accordance with Petitioners' representations and limiting instructions presented in the
subpoena.

### C.    Intervenor Law Firms' Assertions of Privilege

The Court now turns to Rodriguez Tramont and Napoli Shkolnik's and to Halpern's
assertions of privilege.  As noted above, Rodriguez Tramont and Napoli Shkolnik in their joint
renewed motion, and Halpern in its motion, assert work product privilege over documents that
Careaga has identified as responsive to Petitioners' subpoena.  Halpern also asserts attorney-client
privilege.   Rodriguez Tramont and Napoli Shkolnik's assertion of work product privilege is
supported by two separate privilege logs: the Revised Privilege Log (ECF No. 58-4) and the Post-
Litigation Privilege Log (ECF No. 58-5).  Halpern's assertions of work product and attorney-client
privilege are likewise supported by a privilege log.  (ECF No. 57-1).

### 1.  Attorney-Client Privilege

For the reasons noted above, the Court finds that Halpern has now complied with the procedures this Court has set to permit Halpern, as a law firm, to intervene to assert attorney-client privilege on behalf of the firm's absent, previously-unidentified, former clients.  *See* (ECF Nos. 66-1, 66-2).  The Court reviews the privilege log and evidence submitted in support of Halpern's assertion of attorney-client privilege to determine whether the assertion of privilege should be sustained.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Id.*  However, "[b]ecause application of the attorney-client privilege obstructs the truth-seeking process, it must be narrowly construed."  *MapleWood Partners, L.P. v. Indian Harbor Ins.*, 295 F.R.D. 550, 583 (S.D. Fla. 2013).  Accordingly, "the argument that *any* communication between an attorney and client is protected by the privilege is overbroad."  *In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 997 (11th Cir. 1992).

The burden of demonstrating that the privilege applies rests with the party claiming the privilege, who must establish the privilege by a preponderance of the evidence.  *MapleWood Partners*, 295 F.R.D. at 583–84 (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993)).  To claim the attorney-client privilege, "the proponent of the privilege must prove that what is sought to be protected is (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client."  *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, 519 F. Supp. 3d 1184, 1197 (S.D.

Fla. 2021).  "Failing to prove any one element causes the entire privilege claim to fail."  *Payrange,*
*Inc. v. Kiosoft Techs., LLC*, No. 20-CV-20970, 2021 WL 1312939, at *2 (S.D. Fla. Mar. 10, 2021)
(citing *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1287 (S.D. Fla.
2012)).

Halpern has submitted a privilege log that lists 30 items.[6]  Some of those items appear to
be single documents, whereas other items identified in the log appear to be compilations or sets of
documents, or possibly even categories of documents.  For example, the item listed as "FILE 007"
is described as 4 pages of "List of Client Names" prepared by "a counsel of record or agent of
counsel," dated August 20, 2008, and sent to Careaga.  This item plausibly is a single document.
By contrast, the item listed as "FILE 030" is described in the log as 129 pages of "[e]xpense
receipts, blank attorney drafted client forms, attorney correspondence and notes regarding case
expenses" possibly bearing dates throughout 2012 up to January 2013, and sent from Careaga to
unidentified individuals at the law firm Schlichter Bogard LLP ("Schlichter Bogard").  (ECF No.
57-1 at 4).  It is possible that these materials are grouped together as "FILE 030" because that is
how the documents described were kept, but the grouping together of materials or items in
Halpern's log is neither explained in Halpern's briefing nor apparent from the face of Halpern's
log.

Notwithstanding, and as relevant here, Halpern's Motion and Reply suggest that the
attorney-client privilege might be applicable to only one item listed in the log: a compilation of
materials identified in the log as "FILE 027" dated from 2006 to 2007 and sent from "various

---

[6]  For each of the 30 numbered items listed in Halpern's log, Halpern has raised the same objection: "Objection based
on work product and attorney/client privileges: Communications between counsel of record regarding clients and
litigation against Doe Run and Renco; Attorney Work Product."  (ECF No. 57-1) (emphasis omitted).

counsel of record" to "various counsel of record."  This is corroborated by a review of the privilege log, which describes "FILE 027" as 118 pages comprising:

> List of client names or potential client, Declaration of Victor Careaga, Client Declarations, draft pleadings prepared by attorney.  Attorney correspondence exchanged among counsel of record, Schlichter Bogard, Jay Halpern, and Victor Careaga; *attorney correspondence with client*.  Petition for Appointment of Next Friend for Minor And Consent to Appoint – Already in Spanish and English with List of Cases.

(ECF No. 57-1 at 3) (emphasis added).  However, it is apparent that not all 118 pages of FILE 027 involve "attorney correspondence with client."  (ECF No. 57-1 at 3).  And as to any purported attorney-client communication, Halpern's log does not identify the client with whom the communication occurred: the privilege log identifies both the preparer/signer of and the recipient for all 118 pages of FILE 027 as "various counsel of record."  Moreover, the description of the subject matter of FILE 027 does not suggest that the attorney-client communication within FILE 027 was for the purpose of obtaining or providing legal advice to the unnamed client.  Review of Careaga's affidavit (ECF No. 54-1), attorney Jay Halpern's affidavit (ECF No. 66-1), and the record does not suggest otherwise.  Accordingly, though the privilege log asserts that FILE 027 contains attorney-client privileged communications, there has been no showing that FILE 027 actually contains communications between any attorney and a client, albeit an unnamed one, for the purpose of obtaining legal assistance.

      An attorney seeking to assert the attorney-client privilege on behalf of an absent client who cannot assert the privilege must do so on a document-by-document basis.  *See In re Grand Jury Subpoena*, 831 F.2d 225, 226–27 & n.1 (11th Cir. 1987); *see also Diamond Resorts*, 519 F. Supp. 3d at 1198 (quoting *Purdee v. Pilot Travel Centers, LLC*, No. CV407-028, 2008 WL 11350099, at *1 (S.D. Ga. Feb. 21, 2008)) ("The party asserting the privilege 'must demonstrate that each essential element of the privilege is present with respect to the specific communication or

document whose disclosure is sought.'").  Here, the privilege log entry for FILE 027 contains multiple documents created over a one-year period and sent among counsel.  No client is identified with respect to the attorney-client communication over which the privilege is sought.  Accordingly, the Court finds that Halpern has not met its burden of establishing the existence of any privileged communications between attorney and client.   Thus, Halpern's assertion of attorney-client privilege is **OVERRULED**.[7]

### 2.       Work Product

The Court next turns to the assertions of work product.  Rodriguez Tramont and Napoli Shkolnik in their joint motion, and Halpern in its motion, all assert that documents sought from Careaga are protected from disclosure under the attorney work-product doctrine.

#### a.       Legal Standard

Compared to the attorney-client privilege, the work-product doctrine is distinct and broader.  *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975); *see also Hickman v. Taylor*, 329 U.S. 495, 508 (1947) ("[T]the protective cloak of [the attorney-client] privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation.  Nor does this privilege concern the memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories.").  "Unlike the attorney-client privilege, it is not necessary that work product be intended to remain confidential, so disclosure to a third party does not necessarily destroy the privilege." *Diamond Resorts*, 519 F. Supp. 3d at 1201.

---

[7]  As noted above, there are no materials or compilations of materials identified in Halpern's log, apart from FILE 027, that from the face of the log are described as or resemble communications to which the attorney-client privilege could apply.

"The work-product doctrine reflects the strong 'public policy underlying the orderly prosecution and defense of legal claims.'" *United Kingdom v. United States*, 238 F.3d 1312, 1321 (11th Cir. 2001) (quoting *Hickman*, 329 U.S. at 510). "In performing his duties, it is essential for a lawyer to work 'with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel,' to and including assembling information and sifting through facts to separate what the lawyer considers to be relevant and irrelevant, to prepare a legal theory, and to plan strategy." *Regency of Palm Beach, Inc. v. QBE Ins.*, 259 F.R.D. 645, 649 (S.D. Fla. 2009). The work-product doctrine has been codified at Federal Rule of Civil Procedure 26(b)(3), which provides as follows:

> (A) Documents and Tangible Things.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) Protection Against Disclosure.  If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A)–(B).  "By the terms of Rule 26(b)(3), the Rule applies only to 'documents and tangible things' and only at the discovery stage.  Therefore, where a party invokes work-product protection as it involves non-tangible things, such as testimony, or it relates to a different stage of the litigation than discovery, courts must look to *Hickman v. Taylor*." *Stern v. O'Quinn*, 253 F.R.D. 663, 674 (S.D. Fla. 2008).

"Like assertions of attorney-client privilege, the burden is on the party withholding discovery to show that the documents should be afforded work-product immunity." *Milinazzo v. State Farm Ins.*, 247 F.R.D. 691, 698 (S.D. Fla. 2007). "The party claiming the privilege must provide the court with underlying facts demonstrating the existence of the privilege, which may be accomplished by affidavit." *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011). "The mere fact that the party seeking work product protection submits an affidavit is not necessarily sufficient to sustain the work product assertion." *Diamond Resorts*, 519 F. Supp. 3d at 1200 (citing *Fid. Nat'l Title Ins. v. Wells Fargo Bank, N.A.*, No. 12-22437, 2013 WL 12138558, at *2 (S.D. Fla. July 19, 2013), *aff'd*, No. 1:12-CV-22437-UU, 2013 WL 12138559 (S.D. Fla. July 29, 2013)). The proponent of the privilege must also produce a privilege log in accordance with Southern District of Florida Local Rule 26.1(e)(2)(C).

For the work-product doctrine to apply, the proponent of the privilege must "prove that it anticipated litigation at the time each document or communication was created." *Diamond Resorts*, 519 F. Supp. 3d at 1200 (citing *Holladay v. Royal Caribbean Cruises, Ltd.*, 333 F.R.D. 588, 592 (S.D. Fla. 2019)). The inquiry focuses on when the documents and tangible things sought were created and why they were created. *Id.*; *cf.*, *e.g.*, *Wyndham Vacation Ownership, Inc. v. Reed Hein & Assocs., LLC*, No. 618CV2171ORL31DCI, 2019 WL 9091666, at *14 (M.D. Fla. Dec. 9, 2019) ("With regard to determining whether documents were prepared 'in anticipation of litigation,' the law is clear that if documents are prepared for a business purpose – or for some other non-litigation purpose – they fall outside the protection of the work product doctrine."). Though, this determination is a highly fact-specific inquiry that depends on the circumstances of a given case. *See Holladay v. Royal Caribbean Cruises, Ltd.*, 334 F.R.D. 628, 631–33 (S.D. Fla. 2020) (noting the different tests that have been applied by district courts in the Eleventh Circuit to

determine whether documents created with multiple purposes were created in anticipation of litigation and therefore are work product).

b.       *Halpern's Assertion of Work Product*

Halpern asserts that all 30 "files" or items identified in its privilege log (ECF No. 57-1) are attorney work product and therefore are protected from disclosure.[8]  Halpern argues in its Motion that its log identifies the following general categories of documents to which work product protections extend:

> (1) internal correspondence among co-counsel for the *Reid* plaintiffs that reflects the substance of privileged and confidential attorney-client communications; (2) draft pleadings, forms, and other documents prepared by counsel; (3) records of Careaga's travel to Peru and travel-related expenses to meet with clients and prospective clients; (4) records generated by counsel reflecting payments to attorneys and their agents for litigation-related services and associated expenses; (5) lists of client names and names of other Peruvians, sometimes including other personal identifying information; and (6) handwritten notes of attorneys reflecting client and/or case-related information.

(ECF No. 57 at 8–9).  In support of the assertion of work product, Halpern's evidence consists of its privilege log and Careaga's affidavit (ECF No. 54-1).[9]  In that affidavit, Careaga asserts that he was acting in his capacity as a licensed attorney when the documents were created in anticipation of litigation against Petitioners in the Eastern District of Missouri.  Careaga attests to his belief that "*everything* [he] would do could be in anticipation of litigation that would be brought in the United States" from the time he began investigating the potential of bringing claims.  (ECF No. 54-1 at ¶ 8) (emphasis in original).

Careaga's affidavit does not provide an adequate factual basis to uphold the assertion of work product by Halpern over the 30 items identified in Halpern's log.  As to the relevant time

---

[8]  As noted above with respect to attorney-client privilege, Halpern has asserted work-product privilege over items that appear to contain multiple documents, possibly consistent with how the documents were kept, as opposed to asserting the privilege on a document-by-document basis.

[9]  Attorney Jay Halpern submitted an affidavit with respect to the assertion of attorney-client privilege.

period for Halpern—2006 until Careaga became unassociated from Halpern in 2013[10]—Careaga avers only that (i) he began to investigate the potential of bringing claims against Petitioners from 2006 on and (ii) he started to travel to Peru to sign up potential clients.  (ECF No. 54-1 at ¶¶ 9–10).  Careaga later brought suit in state court in Missouri with Halpern and Schlichter Bogard as co-counsel, after he and Halpern had, by late 2006, retained hundreds of clients.  (ECF No. 54-1 at ¶ 10).  This evidence is simply not sufficient to bring the 30 items identified in Halpern's log within the scope of attorney work product.

Indeed, many of the items listed in Halpern's log are undated and thus further frustrate the Court's ability to understand the context of their creation: FILES 013, 014, 015, 017, 024, and 025.  Though presumably a typographical error, one document is dated June 29, 1905: FILE 022.  For other items identified in Halpern's privilege log, it is not apparent what relation they have to Careaga's *client recruitment* trips to and in Peru that Careaga attests to in his affidavit.  *E.g.*, (ECF No. 57-1 at 2) (describing FILE 018 as attorney correspondence and FILE 019 as Careaga's declaration, both of which contain information "regarding confidential client information").  This is particularly so with respect to the draft pleadings, communications among attorneys, and lists of client names and other Peruvian individuals (to the extent those items are not undated).  Succinctly, Halpern here relies on an affidavit that in overly general terms states that Careaga traveled to Peru, for client recruitment trips, to support the assertion of work product over documents that have no apparent relation to those client recruitment trips.  *See Bridgewater*, 286 F.R.D. at 639 (quoting *Int'l Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 94 (D. Del. 1974)) ("Unless the affidavit is precise to bring the document within the rule, the Court has no basis on

---

[10]  In 2013, Careaga became unassociated from Halpern, but continued his overall association with the litigation against Petitioners as a paralegal or consultant for Louis Thaler, P.A. and later for Rodriguez Tramont and Napoli Shkolnik, where he worked on related consolidated actions.  (ECF No. 54-1 at ¶ 11).

which to weigh the applicability of the claim of privilege.  An improperly asserted claim of privilege is no claim of privilege at all.").

Halpern also asserts work product over documents that contain expense reports for Careaga's travel to Peru, receipts for that travel, and/or reimbursement checks issued to Careaga, as well as attorney correspondence regarding that travel and reimbursement: FILES 002, 003, 004, 005, 006, 011, 012, 021, 023, 028, 029, and 030.  Some of these documents were generated by unidentified third-party vendors.  Careaga's affidavit, to the extent it discusses his travel to Peru in general terms as noted above, describes that travel as being in furtherance of client recruitment. The evidence advanced thus reflects that Careaga's travel was for a business development purpose (*i.e.*, client acquisition).  No evidence or explanation has been advanced as to how any of the expense reports, expense receipts, reimbursement checks, or attorney correspondence regarding Careaga's travel to Peru were created for any purpose other than client acquisition/business development by the law firms, as opposed to in anticipation of litigation.  *Cf. Holladay*, 334 F.R.D. at 631–33.

Accordingly, the Court finds that Halpern's privilege log is deficient and otherwise unsupported by *facts* sufficient to bring the documents it identifies within the scope of attorney work product.  For these reasons, Halpern's assertions of work product are **OVERRULED**.

       *c.*    *Rodriguez Tramont's and Napoli Shkolnik's Assertion of Work Product*

In their Renewed Motion for Protective Order, Rodriguez Tramont and Napoli Shkolnik argue that all of the documents listed in their two privilege logs are protected from disclosure as attorney work product because they were created by or sent to a paralegal (Careaga) in anticipation of or in connection with the mass tort actions pending in the Eastern District of Missouri.  In support of their assertion of work product, Rodriguez Tramont and Napoli Shkolnik have

submitted two privilege logs.  (ECF Nos. 58-4, 58-5).  Though the headers for both privilege logs reflect that both logs identify the same information for a given document, the two logs contain documents created during different time periods: the privilege log titled as the "Revised Privilege Log" (ECF No. 58-4) contains materials created before the filing of the mass tort actions in the Eastern District of Missouri up to September 12, 2015, and the privilege log titled "RTN and Napoli Law Post-Litigation Privilege Log" (ECF No. 58-5) contains documents created after the filing of the mass tort actions.  More than 300 documents are identified in the two privilege logs.

In support of the assertion of work product, Rodriguez Tramont and Napoli Shkolnik like Halpern rely on the July 28, 2023 Affidavit of Victor Careaga filed in anticipation of the July 31, 2023 discovery hearing.  (ECF No. 54-1).  As noted above, in that affidavit Careaga asserts that "*everything* [he] would do could be in anticipation of litigation that would be brought in the United States" from the time he began investigating the potential of bringing claims.  (ECF No. 54-1 at ¶ 8) (emphasis in original).  Careaga avers that, after he became unassociated from Halpern in 2013 when he continued his association with the overall litigation as a paralegal or consultant for Louis Thaler, P.A. and later for Rodriguez Tramont and Napoli Shkolnik, Careaga "knew that all efforts and activities [he] would undertake would be in anticipation of what was already *ongoing* litigation in the Eastern District of Missouri."  (ECF No. 54-1 at ¶ 12) (emphasis in original).  Careaga's affidavit, which is the only evidence Rodriguez Tramont and Napoli Shkolnik rely on in support of their assertions of work product and which predates the filing of the Renewed Motion, describes what Careaga's role and responsibilities were as a paralegal and/or consultant to Rodriguez Tramont and Napoli Shkolnik from 2013 or 2014 onward.  *See* (ECF No. 54-1 at ¶¶ 13–14).  His role, as recounted in his affidavit, consisted largely of coordinating the efforts of and paying for a ground team in Peru to recruit potential clients, communicate with and obtain

documents from existing clients; arranging the logistics and security for travel to Peru by other members of the law firms so that those individuals could meet with potential or existing clients; and communicating with local counsel in Peru.  (ECF No. 54-1 at ¶ 14).

However, the two paragraphs in Careaga's affidavit that amount to a general job description for Careaga's role, (ECF No. 54-1 at ¶¶ 13–14), are not sufficient to establish that more than 300 documents identified in two separate privilege logs, and created over a period of more than 7 years, are attorney work product.  *See Bridgewater*, 286 F.R.D. at 639 (quoting *Int'l Paper Co.*, 63 F.R.D. at 94).  Indeed, as to the more than 300 documents, the Renewed Motion argues generally that the documents are presumptively protected from disclosure.  But unlike Halpern's Motion, Rodriguez Tramont and Napoli Shkolnik's Renewed Motion makes no effort to defend the assertion of work product by identifying even *categories* of documents within the two privilege logs to which the protection may extend (to the extent categories can be drawn).  Nor does the Renewed Motion make any effort to contextualize the assertion of work product over any type or category of document in light of Careaga's earlier-filed affidavit.  In essence, Rodriguez Tramont and Napoli Shkolnik have put before this Court two privilege logs identifying more than 300 documents, pointed to an earlier-filed affidavit in support of the assertion of work product, but have not explained how those documents are protected from disclosure in light of the facts advanced in that affidavit.

Accordingly, the Court **OVERRULES** the assertion of work product over the documents identified in the two Rodriguez Tramont and Napoli Shkolnik privilege logs.

### D.    Petitioners' Provisional Motion to Seal the RM Report

Petitioners move, out of an abundance of caution and in light of a June 15, 2023 Memorandum and Order entered in the Eastern District of Missouri, to provisionally seal the RM

Report and its exhibits so that this Court can review the report before deciding whether the report should be unsealed and made public.  Petitioners seek to file the RM Report in support of Petitioners' Response in Opposition to both motions for protective order.[11]  Petitioners assert that the RM Report contains more than sufficient evidence for the application of the crime-fraud exception to overcome Intervenors' assertions of privilege.

Halpern asserts that Petitioners have not demonstrated why the RM Report and related materials should be filed.  In addition, Halpern opposes the unsealing of the RM Report if the Court permits Petitioners to file the report under seal.

In their Response in Opposition to both motions for protective order, Petitioners acknowledge that arguments regarding the crime-fraud exception are premature at this time. Petitioners expressly state that "[a]rgument over the applicability of the crime fraud exception is not ripe this point given that the Intervenor Law Firms have failed to establish that any privilege applies in the first place."  (ECF No. 63 at 3 n.6).  Petitioners express that "[i]f the Court sustains Careaga's and the Intervenor Law Firms' assertions of privilege, Petitioners will bring a motion to overcome any such privileges based on the crime fraud exception."  (*Id.*).

Petitioners likewise acknowledge in their Reply in support of the instant Motion to Seal that consideration of the RM Report is premature.  In their Reply, Petitioners represent that their "position is that the [crime-fraud exception] is not ripe for consideration, as Halpern has failed to establish any privileges (work-product or attorney-client) apply in the first place, such that they would have to be overcome by the crime-fraud exception."  (ECF No. 73 at 6–7); *see also* (ECF

---

[11]  Though, Petitioners claim in their Reply that they have "attached the RM Report to their Omnibus Response to address multiple arguments *Intervenors* made in the two motions for protective order," (ECF No. 73 at 6) (emphasis in original).  No such document has been attached to the Response in Opposition.  The RM Report is only discussed in the Response, and Petitioners noted that they would be concurrently filing the instant Motion to Seal so that they may file the RM Report and its exhibits.  (ECF No. 63 at 6 n.9).

No. 73 at 7 n.5) (emphasis omitted) ("That said though, the RM Report is evidence the Court can consider if and when the crime-fraud exception is under consideration.").

Given Petitioners' acknowledgment that the crime-fraud exception was not ripe at the time the motion was filed, and in light of Petitioners' representations that the RM Report would be filed in support of their unfiled motion regarding the application of the that exception, there is no basis at this time for filing the RM Report under seal or otherwise.  In any event, the Court has overruled the Intervenors' assertions of privilege.

Accordingly, the Motion to Seal (ECF No. 65) is **DENIED, as moot**, notwithstanding that it was premature at the time it was filed.

## III.    CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion for Protective Order (ECF No. 57), filed by Intervenor Halpern Santos & Pinkert P.A, is **DENIED**.

2. The Renewed Motion for a Protective Order (ECF No. 58), jointly filed by Intervenor Rodriguez Tramont & Nuñez, P.A. and Intervenor Napoli Shkolnik PLLC, is **DENIED**.

3. All documents for which assertions of privilege have been overruled as set forth above shall be produced within **FOURTEEN (14) DAYS** of the entry of this Order.

4. Petitioners' Motion to Seal the Rivero Mestre Report (ECF No. 65) is **DENIED, as moot**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 29th day of November, 2023.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

Copies to:
Honorable Joan A. Lenard
Counsel of Record